UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **KENNETH PUND,** | Case No. |
| and | Judge |
| **JOHN DIEZIC** | |
| Plaintiffs, | **VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT, TEMPORARY RESTRAINING ORDER, AND PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF** |
| v. | |
| **CITY OF BEDFORD, OHIO,** | |
| and | **VERIFYING AFFIDAVIT OF PLAINTIFF KENNETH PUND** |
| **ROB BROWN, in his official capacity as "Building Inspector," City of Bedford, and in his individual capacity.** | **EXHIBIT A:** *City of Bedford Point of Sale Inspection – General Information* |
| Defendants. | **EXHIBIT B:** *City of Bedford Inspection Ordinances* |
| | **EXHIBIT C:** *Correspondence between Plaintiffs and Defendants* |
| | **EXHIBIT D:** *City of Bedford Inspection Checklist* |

1

Plaintiffs KENNETH PUND, and JOHN DIEZIC, for their Verified Complaint against Defendants CITY OF BEDFORD, OHIO and ROB BROWN hereby allege as follows:

## INTRODUCTION

1. This is an action brought pursuant to 42 U.S.C. §1983 for declaratory judgment, temporary restraining order, preliminary and permanent injunction, actual and nominal damages, and other relief arising from the unconstitutional policies, practices, and threats of Defendants City of Bedford and enforcement agent Rob Brown. Defendants' policies, practices, and conduct threaten Plaintiffs with irreparable harm to their rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. The harm may only be remedied by a ruling from this Court.

2. Defendants have impeded and threaten to further unconstitutionally impede Plaintiffs in their right to be free from unlimited warrantless searches without probable cause by maintaining, implementing and enforcing vague policies that (i) threaten Plaintiffs and others with subjection to unduly broad warrantless searches of their houses without probable cause; (ii) violates Plaintiffs' reasonable expectation of privacy; and (iii) retaliate against Plaintiffs for exercising their Fourth Amendment rights by either (a) pressing criminal charges against them, or (b) depriving them of their property rights, including but not limited to the right to sell their houses to others.

3. As a result of the policies, practices, and customs of the Defendants, as well as certain conduct by one or more Defendants, Plaintiffs have suffered and will suffer irreparable harm unless the Defendants are immediately enjoined from restricting their Fourth Amendment rights in this manner.

4. For the reasons above, Plaintiffs seek, amongst other things, declaratory judgment and injunctive relief determining that the offending provisions empowering the City to search a resident's home without a warrant simply because it happens to be "for sale" are unconstitutional on their face and as applied to them, and further, that the pre-sale inspection schematic is insufficient to support the issuance of a warrant.

## PARTIES

5. The Plaintiffs are owners and past owners of residential homes in the City of Bedford.

6. Plaintiff KENNETH PUND owns 27 properties, consisting of 44 separate addresses, within the city limits of Bedford.[1]

7. Mr. Pund's properties are primarily single family homes, and/or duplexes or triplexes, other than 91 Solon Road, which is a twelve unit apartment building.

8. Mr. Pund has agreed to convey his property at 15 Mapledale Avenue to his daughter, Denise Lane, for approximately $50,000, at some point in May of 2016.

9. Mr. Pund has agreed to convey his property at 234 Wandle Avenue to Mr. Manu Banner, the tenant who currently lives in that home, for approximately $100,000, at some point in July of 2016.

10. Mr. Pund has agreed to convey his property at 546 Northfield Road to Mr. Jason Hawley, the tenant who currently lives in that home, for approximately $40,000, at some point in October of 2016.

11. Mrs. Lane, Mr. Banner, and Mr. Hawley have each already provided Mr. Pund with some payment in anticipation of the property conveyances specified above.

12. Plaintiff JOHN DIEZIC has been subjected to several point of sale inspections by Defendants City of Bedford and Rob Brown.

13. Pursuant to point of sale inspection requirements, coercively and without a warrant, Defendants searched Mr. Diezic's houses at 261 Columbus Road and 56 Charles Street, both in Bedford, Ohio, in 2015.

14. In 2015, Mr. Diezic paid inspection fees to the City of Bedford, pursuant to the City's point of sale search mandates.

15. Mr. Diezic now desires to sell his building at 333 Northfield Road in Bedford, Ohio, and is therefore threatened with subjection to an additional point of sale inspection.

---

[1] Mr. Pund owns the following residences in Bedford, Ohio: 131 Avalon Drive, 12 Charles Street, 375 Center Road, 175 Columbus Road, 306 Columbus Road, 574 Darlington Road, 23 Eldred Avenue, 103 Gould Avenue, 17 Grand Boulevard, 245 John Street, 487 Lamson Avenue, 15 Magnolia Drive, 15 Mapledale, Avenue, 734 McKinley Avenue, 22 Powers Road, 546 Northfield Road, 91 Solon Road, 213 Talbot Drive, 421 Turney Road, 234 Wandle Avenue, 144 Warrensville Center Road, 395 Warrensville Center Road, 729 Washington Court, 855 Washington Street, 94 Willard Avenue, 155 William Street, and 177 Willis Avenue.  Mr. Pund also owns a garden center, his primary business, located at 43 Willis Avenue.

16. Defendant CITY OF BEDFORD, OHIO is a municipal corporation located within Cuyahoga County, Ohio; it is created and existing under and by virtue of the laws of the State of Ohio. In fulfilling its duties, the City acts by and through various commissions and public officials, including, without limitation, code enforcement officers.

17. Defendant City of Bedford requires, without a warrant, that Mr. Pund's homes be searched by government before they can be sold to a willing buyer.

18. Defendant ROB BROWN is, and has been at all times relevant to the facts at issue in this case, a City Building Inspector for the City of Bedford.

19. Defendant Brown, as part of his official duties and responsibilities with the City of Bedford, implements the Point of Sale Inspection Requirements and/or enforces the unconstitutional intrusions accomplished through the City's policies and practices (as described herein).

20. Defendant Brown is an individual who undertook specific action so as to deprive and/or violate the constitutional rights of the Plaintiffs and did so in his individual capacity, as part of his official duties and responsibilities as an employee and/or agent of the City of Bedford, and in his official capacity of adopting and implementing a policy, practice or custom of the City of Bedford.

21. Defendant Brown searched, without a warrant and pursuant to the point of sale inspection mandates, Mr. Diezic's homes at Columbus Road and Charles Street in 2015.

22. Defendants threatened Plaintiffs with loss of property and criminal charges as a consequence to any attempt to assert a constitutional right to be free from unreasonable searches of their houses.

23. All actions by the Defendants described herein were undertaken under color of state law which caused the deprivation of Plaintiffs' rights protected by the United States Constitution.

24. All acts herein of the Defendant City of Bedford, its officers, agents, servants, employees or persons acting at their behest or direction, were done and are continuing to be done under the color or pretense of state law.

## JURISDICTION AND VENUE

25. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, as this action arises under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution; under 28 U.S.C. § 1343(a)(3), in that it is brought to prevent imminent deprivations, under color of state law, of rights, privileges and immunities secured by the United States Constitution; under 28 U.S.C. § 1343(a)(4), in that it seeks to recover damages and secure equitable relief under an Act of Congress, specifically, 42 U.S.C. § 1983, which provides a cause of action for the protection of civil and constitutional rights; under 28 U.S.C. § 2201(a), to secure declaratory relief; under 28 U.S.C. § 2202, to secure preliminary and injunctive relief and damages; and under 42 U.S.C. § 1988 to grant Plaintiffs' prayer for relief regarding the recovery of costs, including damages, restitution, and reasonable attorney fees.

26. Venue is proper within this judicial district and division pursuant to 28 U.S.C. § 1391(b) and Local Rule 82.1 as (i) Defendants are situated within this judicial district and division, (ii) the Defendants transact business within this District, and (iii) the conduct complained of occurred within this District.

## FACTUAL ALLEGATIONS

***The City of Bedford "Point of Sale" Inspection Requirement: Prohibition on Selling One's Home Without Consenting to a Warrantless General Search***

27. Plaintiffs incorporate by reference all of the foregoing paragraphs as if fully restated herein.

28. In Bedford, Ohio, no person can sell his or her home without first enduring a warrantless government search of the entire property.

29. The City of Bedford forbids any person from selling his or her house, no matter what type of house or how well it has been cared for, without first undergoing a coerced warrantless government inspection without probable cause.

30. The City explains the realities of its warrantless search mandates on its website: it asserts that "Owners of residential or commercial real estate, including single-family and 2-family dwellings, duplexes, apartments, and condominiums and all commercial and industrial properties <u>are required to obtain</u>

a Certificate of Inspection (Point of Sale) *prior to* entering into an agreement to sell or convey an interest in such property (including sales through Land Contracts)."[2]

31. Any sale of property in Bedford is entirely forestalled until the warrantless search is completed by government, since "Sellers must provide the prospective buyer with a copy of the Certificate of Inspection or a copy of a Certificate of Occupancy prior to the execution or a contract of sale."[3]

32. The inspection mandates are codified in Sections 1311.18-1311.22 of the City of Bedford Municipal Code.

33. Section 1311.18 broadly prohibits the sale, or even an agreement to sell, any property within the city without an "Certificate of Inspection": "No person shall sell or enter into an agreement to sell or convey by land contract or otherwise, any interest in any dwelling, building or structure as defined in the Zoning Code without furnishing the buyer, prior to such sale, a current Certificate of Inspection."

34. Section 1311.21(a) requires the property owner to proactively contact the City to seek a certificate of inspection, and further specifies that to acquire such a certificate, "[t]he building official may require the submission of an affidavit stating such information, and he shall thereafter cause a general inspection to be made."

35. Section 1311.21(b) chronicles the astounding scope and breadth of the required searches, whereby every inch of the property is inspected by government: Section 1311.21(b) specifies that searches are conducted of basements, piping, stairways, plumbing fixtures, bathrooms, doors, windows, all electrical equipment, gutters and downspouts, masonry, siding, fences, kitchens, bathroom cabinet and countertops, and numerous other private spaces within and surrounding the home.

36. Much of the search is for features having nothing to do with health, safety, or the structural integrity of the property, and instead emphasizing the fastidious tastes of the inspector in the field: the code explicates "[i]t is the intent of Bedford City Council to preserve this architectural style and detail of its

---

[2] See Exhibit A, "Points of Sale Inspections – General Information," available online at City's website, *http://www.bedfordoh.gov/site.cfm/city-departments/building-department/point-of-sale-inspections.cfm*

[3] Id.

existing housing stock. In the repair or alteration of a dwelling or accessory structure, particularly for the purposes of satisfying the Point of Sale requirements, existing <u>architectural details, materials and styles</u> shall be preserved, repaired, matched or reproduced and not removed, altered, destroyed or replaced with alternate materials." See Section 1311.21. To this end, "concrete walks and drives must be free of cracking," "repairs must match the existing surface in color," hedges must be "trimmed in such a way as to be structurally sound and present an <u>orderly appearance</u>," "exterior painted surfaces must be free of cracking, blistering, peeling, or other signs of deterioration, and "floor coverings" must be "free of stains." See 1311.21(b)(2)(Emphasis added).

37. Only after the broad inspection specified in Section 1311.21 is completed and the condition of the home approved by the City inspector may a homeowner sell his or her house: "[w]hen it is determined by the Division of Building that a dwelling, building or structure is in compliance with the provisions of these Codified Ordinances and all other applicable rules and regulations applicable thereto, the Building Official shall issue a Certificate of Point of Sale Compliance for the premises." See Section 1311.21.

38. Bedford homeowners maintain no choice as to whether the governmental search of their property is performed because failure to comply with the warrantless search is a serious crime for which one can be fined, prosecuted, and imprisoned: The City of Bedford explains to residents that "Any person violating any provision Chapter 1311.18 of the Building and Housing Code will be guilty of a <u>misdemeanor of the first degree</u> and shall be punished as provided in Chapter 1311.28 of the Building and Housing Code of the City.[4]

39. Section 1311.28 supplies additional penalties that are imposed on those who refuse the City's warrantless searches: "Whoever violates any of the provisions of this Chapter or any rule or regulation promulgated under authority of this Chapter, or fails to comply therewith or with any written notice or written order issued hereunder, shall be fined not less than fifty dollars ($50.00) nor more than five hundred dollars ($500.00) for the first offense, and, for a second or subsequent offense, shall be fined not less than

---

[4] Id.

7

one hundred dollars ($100.00) nor more than <u>one thousand dollars ($1,000.00) or imprisoned not more than six (6) months, or both, and each day such violation occurs or continues and each violation shall constitute a separate offense</u>."

40. The City of Bedford maintains the authority to impose additional punishments beyond six months of imprisonment and thousands of dollars in fines, claiming: "Whoever causes or permits the continuation of any violation of this Chapter or any rule or regulation promulgated hereunder or fails to comply therewith or with any written notice or written order issued hereunder, subsequent to conviction therefore, shall be liable for further prosecution, conviction and punishment upon the same order or notice without the necessity of issuing a new order or notice, until full compliance has been had on such order or notice upon which the original conviction was had." See 1311.28(a).

41. Further, the City can forcibly render a home vacant and valueless until the search is complied with: "The imposition of any penalty shall not preclude the Director of Law from instituting an appropriate action or proceeding in a court of proper jurisdiction to prevent an unlawful repair or maintenance, or to restrain, correct or abate a violation, or <u>to prevent the occupancy of a building, structure or premises</u>, or to require compliance with the provisions of this Chapter, or other applicable laws, ordinances, rules or regulation, or the orders or determinations of the Building Inspector, the Board of Building Code Appeals and the Board of Zoning Appeals." See 1311.28(b).

42. Bedford homeowners are forced to *fund* the unlawful warrantless governmental inspections of their private homes: "The fee for the Point of Sale inspection varies from $50 for single-family dwelling plus $25 for each additional rental unit; commercial buildings are a minimum fee $75 and maximum fee $200."[5]

---

[5] Id. See also Section 1311.22.

*Bedford's Enforcement of the Point of Sale Inspection requirement against Plaintiffs and Plaintiffs' Status*

43. Plaintiffs maintain standing to bring this action because if they do not consent to a warrantless search of their houses they are faced with (1) criminal charges and fines; and/or (2) the inability to inhabit their houses or market and/or convey them as habitable.

44. On March 17, 2016, Bedford Building Department representative Peggy Zelasko responded to an inquiry from Plaintiff Ken Pund by indicating "[y]ou need rental inspections at the time of tenant change. You need a point of sale inspection prior to any title transfer."[6]

45. Point of Sale Inspections were performed on properties owned by Plaintiffs at time Plaintiffs owned them: in 2015, Defendants searched, without a warrant or consent, Mr. Diezic's homes at 261 Columbus Road and 56 Charles Street.

46. Plaintiff Ken Pund maintains plans to convey three of his Bedford houses in 2016, and has taken specific steps to effectuate those conveyances, including agreement on terms of sale and exchange of money.

47. Defendants continue impose harm on Plaintiff John Diezic as they wrongfully hold approximately $4,000 in Mr. Diezic's personal funds stemming from a 2015 point of sale inspection on a home Mr. Diezic sold and no longer owns.

48. Pursuant to information derived from point of sale inspections, Defendants ordered Mr. Diezic to make numerous unnecessary and undesirable alterations to his property before it could be sold to an already-identified willing buyer.

49. The City of Bedford coerced each and every such inspection of Plaintiffs: (1) Plaintiffs consented to the searches only to avoid criminal liability and preserve their right to market and sell their Bedford houses; and (2) no Plaintiff voluntarily consented to any search of any of his or her properties.

---

[6] The day before, Mr. Pund had emailed the following to Ms. Zelasko, as part of an ongoing conversation regarding the point of sale and rental inspection requirements in Bedford: "Thank you for your response. I have new tenants moving into 144 Center Road up & down and 91 Solon Apt. 4 in mid-April. Do I need to have inspections on those? Also, what about that pre-sale inspection that I asked about? (I'm not putting that house up on the market, since the tenants are just buying it directly from me)."

50. Plaintiffs now intend to refuse all further efforts by the City to (1) inspect their properties; and (2) collect fees from them to fund the inspection of their properties and others.

51. As a consequence of this abstention, each Plaintiff is in imminent risk of facing criminal charges and/or loss of their property rights in response to this assertion of his or her Fourth Amendment rights.

52. No tenant or neighbor of either of the Plaintiffs' homes has ever complained to the City of Bedford regarding code violations or other nuisances at any of these properties, or by any of the Plaintiffs at other properties.

53. Plaintiffs maintain no conditions at their properties that would (1) give rise to the need for an emergency entry into those properties; or (2) vest the City with probable cause to believe that any Plaintiff maintains an interior code violation or other nuisance at this time.

54. None of the Plaintiffs have ever been prosecuted or fined by the City of Bedford for maintaining interior code violations or other nuisances.

55. No inspection of any home belonging to any Plaintiff has resulted in the observation of any significant threats to public health or safety.

56. Neither Plaintiff has voluntarily and knowingly consented to any of the point of sale inspections performed on their properties.

57. Each inspection of each parcel of Plaintiffs' property was coerced through the implied threat of loss of property or liberty; and plaintiffs continue to be coerced into providing involuntary consent to such inspections.

### DECLARATORY JUDGMENT AND INJUNCTION
### (28 U.S.C. § 2201, *et seq.*)

58. Plaintiffs hereby incorporate by reference the allegations in the foregoing paragraphs as if set forth fully herein.

59. An actual controversy has arisen and now exists between Plaintiffs and Defendants concerning Plaintiffs' rights under the United States Constitution. A judicial declaration is necessary and appropriate at this time.

60. A state actor is liable under 42 U.S.C. § 1983 if it took "action pursuant to official policy of some nature [that] caused a constitutional tort."[7]

61. "[Governmental] liability may be imposed for a single decision by [government] policy makers under appropriate circumstances."[8]

62. Plaintiffs desire a judicial determination of their rights against Defendants as they pertain to Plaintiffs' right to be free from unlawful searches, coerced surrender of property rights and/or privileges, and vague licensing requirements.

63. In order to prevent violation of Plaintiffs' constitutional rights by Defendants, it is appropriate and proper that a declaratory judgment be issued, pursuant to 28 U.S.C. § 2201 and FED. R. CIV. P. 57, declaring unconstitutional, facially and as-applied here, all relevant portions of the City of Bedford, Ohio point of sale inspection requirements, as well as Defendants' enforcement policies, practices, and actions related to the requirements.

64. Furthermore, pursuant to 28 U.S.C. § 2202 and FED. R. CIV. P. 65, it is appropriate and hereby requested that this Court issue preliminary and permanent injunctions prohibiting the Defendants from enforcing their search policies and all policies, practices, and conduct reliant on and related to the point of sale search policies, including but not limited to the point of sale inspection requirement's search fees and permitting process, to the extent they are unconstitutional, in order to prevent the ongoing violation of Plaintiffs' constitutional rights.

---

[7] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).
[8] *Id.* at 480.

## COUNT I
## VIOLATION OF RIGHT TO DUE PROCESS AND FREEDOM FROM UNCONSTITUTIOTIONAL SEARCHES PURSUANT TO THE FOURTH, FIFTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION
### (42 U.S.C. § 1983)

65. Plaintiffs incorporate by reference all of the foregoing paragraphs as if fully restated herein.

### *Violation of the Unconstitutional Conditions Doctrine*

66. The Supreme Court's "Unconstitutional Conditions" Doctrine arises from the Due Process guarantees articulated in the Fifth and Fourteenth Amendments to the United States Constitution.

67. A state actor cannot constitutionally condition the receipt of a benefit, such as a sale or occupancy permit, liquor license, or an entertainment permit, on an agreement to refrain from exercising one's constitutional rights, particularly one's right to be free from unlimited warrantless searches of private property without probable cause.[9]

68. The Supreme Court of the United States has confirmed in a variety of contexts that "government may not deny a benefit to a person because he exercises a constitutional right."[10]

69. The Supreme Court has further explained that "[t]hose cases reflect an overarching principle, known as the unconstitutional conditions doctrine, that vindicates the Constitution's enumerated rights by preventing the government from coercing people into giving them up."[11]

70. The Supreme Court has consistently applied the Unconstitutional Conditions Doctrine within the context of land use permitting.[12]

---

[9] *Perry v. Sindermann,* 408 U.S. 593, 597 (1972) ("For at least a quarter-century, this Court has made clear that even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests . . .").

[10] *Regan v. Taxation With Representation of Wash*., 461 U.S. 540, 545 (1983). See also, e.g., *Rumsfeld v. Forum for Academic and Institutional Rights, Inc*., 547 U.S. 47, 59–60 (2006); *Rutan v. Republican Party of Ill*., 497 U.S. 62, 78, 110 S.Ct. 2729 (1990). In *Perry v. Sindermann*, 408 U.S. 593 (1972), for example, a public college would violate a professor's freedom of speech if it declined to renew his contract because he was an outspoken critic of the college's administration. And in *Memorial Hospital v. Maricopa County*, 415 U.S. 250 (1974), a county impermissibly burdened the right to travel by extending healthcare benefits only to those indigent sick who had been residents of the county for at least one year.

[11] *Koontz v St. Johns River Water Management Dist*., 133 S.Ct. 2586, at 2594 (2013).

[12] *Id*. (explaining that "land-use permit applicants are especially vulnerable to the type of coercion that the unconstitutional conditions doctrine prohibits because the government often has broad discretion to deny a permit that is worth far more than property it would like to take."), citing *Lingle v. Chevron U.S.A. Inc*., 544 U.S. 528, 547, 125 S.Ct. 2074, 161 L.Ed.2d 876 (2005); *Dolan*, 512 U.S., at 385, 114 S.Ct. 2309 (invoking "the well-settled doctrine of 'unconstitutional conditions' ").

71. "[R]egardless of whether the government ultimately succeeds in pressuring someone into forfeiting a constitutional right, the unconstitutional conditions doctrine forbids burdening the Constitution's enumerated rights by coercively withholding benefits from those who exercise them."[13]

72. Further, in Ohio, the right to sell and/or occupy one's residential home in Ohio is not merely a "government benefit," but rather, is an extension of one's private property rights - - rights recognized by the Ohio Constitution and Ohio Supreme Court as "fundamental."

73. Defendants imminently threaten to pressure Plaintiffs into forfeiting their Fourth Amendment rights by, in response to the exercise of those rights, (1) withholding required permits needed to sell and/or occupy one's home in Oakwood and (2) prosecuting Plaintiffs for criminal violations, should they sell their home without first consenting to a warrantless search.

74. Defendants burden Plaintiffs' Fourth Amendment rights by operation of law, through maintaining and enforcing the point of sale inspection requirements.

### *Violation of the Fourth Amendment's Search and Seizure Clause*

75. The Fourth Amendment provides in relevant part that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."

76. The Amendment establishes a simple baseline, one that for much of our history formed the exclusive basis for its protections: When "Government obtains information by physically intruding" on persons, houses, papers, or effects, "a 'search' within the original meaning of the Fourth Amendment" has "undoubtedly occurred."[14]

77. The Supreme Court has declared warrantless searches "*per se* unreasonable."[15]

78. Since *Camara v. Mun. Court of City and County of San Francisco* and *See v. City of Seattle*, each decided in 1967, building code search statutes have been held unconstitutional unless they require a search warrant supported by administrative probable cause.[16]

---

[13] *Koontz*, supra.
[14] *United States v. Jones,* 132 S.Ct. 945, 950–951, n. 3 (2012).
[15] *Mincey v. Arizona,* 437 U.S. 385, 390 (1978) (internal quotation marks omitted); see *Groh v. Ramirez,* 540 U.S. 551, 559 (2004).

79.     *Camara* held that administrative inspections are significant intrusions on Fourth Amendment rights for which warrants generally are required.

80.     *Camara* further held that warrantless searches of residential property by municipal inspectors violated the Fourth Amendment protection against unreasonable searches and seizures.[17]

81.     In *See v. City of Seattle*,[18] the Supreme Court held that, like the search of a private home, the search of a business is presumptively unreasonable if conducted without a warrant, as a businessman's Fourth Amendment guarantees are "placed in jeopardy if the decision to enter and inspect for violation of regulatory laws can be made and enforced by the inspector in the field without official authority evidenced by a warrant,"[19] as, "[i]t is untenable that the ban on warrantless searches was not intended to shield places of business as well as of residence."[20]

82.     In *Hodgins v. U.S. Department of Agriculture,* the Sixth Circuit Court of Appeals held "for *warrantless* searches to be justifiable under a regulatory scheme, the object of the search must be something that can be *quickly hidden*, moved, disguised, or altered beyond recognition, so that only a surprise inspection could be expected to catch the violations.  On the other hand, if a regulation is *similar to a building code* (as in *See v. Seattle*), where violations will be harder to conceal, the need for surprise will be less pressing, and warrantless searches will more likely be unconstitutional."[21]

83.     An exception to the warrant requirement has been recognized for searches of pervasively or closely regulated industries.[22]

84.     Plaintiffs are not doing business in a "pervasively or closely regulated industry."

---

16      387 U.S. 523 (1967).
17      Id., at 528.
18      Id., at 541.
19      Id., at 543.
20      *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 312 (1978).
21      238 F.3d 421 (2000).  Emphasis added.
22      *See New York v. Burger,* 482 U.S. 691 (1987) (junkyard industry); *Donovan v. Dewey,* 452 U.S. 594 (1981) (coal mining); *United States v. Biswell,* 406 U.S. 311 (1972) (firearms); *Colonnade Catering Corp. v. United States,* 397 U.S. 72 (1970) (liquor); *see also United States v. Acklen,* 690 F.2d 70 (6th Cir.1982) (pharmacies); *Marshall v. Nolichuckey Sand Co.,* 606 F.2d 693 (6th Cir.1979) (sand and gravel industry), *cert. denied,* 446 U.S. 908 (1980).

85. In *Patel v. City of Los Angeles,* the United States Supreme Court reaffirmed the necessity of the warrant requirement, as well as the narrow and finite nature of the "closely regulated business" exception.

86. The City of Bedford's Point of Sale Inspection Requirement is coercive.

87. The City of Bedford's Point of Sale Inspection Requirement does not require a warrant or probable cause as a prerequisite to a government search of residential homes.

88. The houses owned by plaintiffs are each (1) a "house," as specified in the Fourth Amendment; and (2) at least equivalent to the "commercial property" held to be entitled to Fourth Amendment protection.

89. The City of Bedford's Point of Sale Inspection Requirement, as a physical intrusion into a home to collect information that can later be used in a criminal prosecution, is a "search," as contemplated by the Fourth Amendment.

90. The warrantless inspection of homes located within the City of Bedford is not "necessary to further the regulatory scheme"[23] here: the City could operate a complaint-driven scheme, one that relies upon probable cause, or one that enlists property owners' use of private building inspectors.

91. City of Bedford point of sale searches violate Plaintiffs' right to be free from unreasonable searches by coercing property owners' consent to such searches while failing to maintain a warrant requirement.

92. The actions of Defendants were the direct and proximate result of the policy, practice, and custom of the City of Bedford, as adopted and implemented by the Defendants.

### COUNT II
### UNJUST ENRICHMENT AND RESTITUTION

93. Plaintiffs incorporate by reference all of the foregoing paragraphs as if fully restated herein.

94. Defendant City of Bedford has acquired and/or is in possession of funds that it is not entitled to retain, including at minimum, point of sale inspection fees paid to it by Plaintiff John Diezic.

---

[23] See *McLaughlin v. Kings Island, Div. of Taft Broadcasting Co*. 849 F.2d 990 (6th Cir. 1988).

95. A suit seeking the return of specific funds wrongfully collected or held by a state actor may be maintained in equity. *Santos v. Ohio Bur. of Workers' Comp.,* 101 Ohio St.3d 74, syllabus. *Accord Judy v. Ohio Bur. of Motor Veh.,* 100 Ohio St.3d 122; *Ohio Hosp. Assn. v. Ohio Dept. of Human Serv.,* 62 Ohio St.3d 97 (1991).

96. Unjust enrichment exists when there is: (1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment (i.e., the "unjust enrichment" element).

97. Ohio law does not require that the benefitted party act improperly in some fashion before an unjust enrichment claim can be upheld; instead, unjust enrichment can result "from a failure to make restitution where it is equitable to do so. That may arise when a person has passively received a benefit which it would be unconscionable for him to retain" without paying compensation. (Citations omitted.) *Advantage Renovations, Inc. v. Maui Sands Resort, Co., L.L.C.,* 2012-Ohio-1866, ¶ 33.

98. Through its point of sale inspection and permitting fee assessments, Defendant City of Bedford has acquired funds rightfully belonging to Plaintiffs and others.

99. Defendant acquired these funds to fund unconstitutional searches of Plaintiffs' properties.

100. In 2015, Defendant unconstitutionally extracted in excess of $100 from Plaintiffs to perform unnecessary and unconstitutional inspection on homes located at 261 Columbus Road and 56 Charles Street.

101. It would be unconscionable for the City of Bedford to retain and/or abstain from returning the permitting fees acquired from Plaintiffs and others.

102. In *Baker v. Portsmouth,* the United States District Court for the Southern District of Ohio concluded that claims for the refund of inspection fees associated with unconstitutional inspections are equitable in nature, meaning that the law of restitution requires that such fees be returned to those who have paid them. See Case No. 1:14-CV-512.

103. The City of Portsmouth was required to return unconstitutionally-collected fees in *Baker v. Portsmouth*.

104. Plaintiffs are entitled to a refund of all unlawfully-coerced inspection fees paid to Defendants.

## CONCLUSION

105. Criminal punishment is an irreparable harm.

106. Loss of constitutionally-protected Fourth, Fifth, and Fourteenth Amendment rights and constitutionally-protected property rights causes irreparable harm.

107. Enforcement of the constitutional rights specified herein is in the public interest.

108. Defendants' enforcement of the Point of Sale Inspection Requirements violates the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution by imposing an unconstitutional condition upon Plaintiffs' lawful exercise of their property rights.

109. The point of sale search requirement is unconstitutional as applied to Plaintiffs - - property owners who have not created any dangerous conditions, emergencies on their property, or other facts sufficient to give rise to probably cause or any other justification for inspection with or without a warrant.

110. The point of sale search scheme is unconstitutional on its face.

111. The warrantless point of sale search requirement cannot be severed from the fee or other permitting requirements.

112. The unconstitutional portions of the point of sale search scheme cannot be severed from the scheme's lawful portions.

113. The point of sale search requirement fails to meet the requirements necessary to obtain a search warrant.

114. As a proximate result of Defendants' policies and practices described above, Plaintiffs face imminent threat of irreparable injury and will continue to suffer irreparable injury, in that they will be deprived of their rights under the Fourth, Fifth, and Fourteenth Amendment of the Constitution.

115. In order to prevent further violation of Plaintiffs' constitutional rights by Defendants, it is appropriate and proper that a declaratory judgment be issued, pursuant to 28 U.S.C. 2201 and Fed. Rule of

Civil Procedure 57, declaring the City of Bedford's enforcement of the point of sale search requirements against Plaintiffs to be unconstitutional.

116. Pursuant to 28 U.S.C. 2202 and Fed Rule of Civil Procedure 65, it is appropriate and hereby requested that this Court issue a Temporary Restraining Order and preliminary and permanent injunction enjoining the City of Bedford, Ohio from enforcing the point of sale search requirements against Plaintiffs.

117. As a direct and proximate result of the point of sale search scheme's mandates and punishments, alongside the threats made by Defendants, Plaintiffs' constitutional rights under the Fourth, Fifth, and Fourteenth Amendments have been violated and Plaintiffs have suffered injury and damages, insofar as they have been forced to endure and fund unlawful government searches of their houses.

118. The actions of Defendants were the direct and proximate result of the policy, practice and custom of the City of Bedford as adopted and implemented by Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants, and that the Court:

(1) Declare that the City of Bedford's Point of Sale Search Requirement, authorizing warrantless searches without probable cause, is unconstitutional, both facially and as applied to Plaintiffs;

(2) Declare that provisions of the Point of Sale Search Requirement scheme wholly reliant upon the unconstitutional search, including but not limited to the monetary extraction for inspections and the permit requirement, violate Plaintiffs' Fourth Amendment rights;

(3) Declare that the existence of the Point of Sale Search Scheme is an insufficient basis, without more, to obtain a warrant to search a private residential home;

(4) Declare that through the imposition of monetary assessments on Plaintiffs and others, precipitated by the City's desire to fund the costs of the Point of Sale Search Requirements, Defendant City of Bedford has been and continues to be unjustly enriched;

(5) Enjoin Defendants from directly enforcing the warrantless Point of Sale Search requirement;

(6) Enjoin Defendants from indirectly enforcing the warrantless Point of Sale Search requirement by criminally prosecuting Plaintiffs, stripping them of the right to occupy or rent their property, or otherwise;

(7) Enjoin Defendants from attempting to seek and obtain a warrant, predicated on Point of Sale Search requirement alone, to search Plaintiffs' properties;

(8) Mandate the return of Point of Sale Inspection fees paid by Plaintiffs and others to Defendant City of Bedford, to the extent that the City has been unjustly enriched;

(9) Pursuant to 42 U.S.C. §1988 and other applicable law, award Plaintiffs their costs and expenses incurred in bringing this action, including their reasonable attorneys' fees;

(10) Award nominal damages against Defendants and in favor of Plaintiffs to compensate Plaintiffs for violations of their constitutional rights;

(11) Reimburse Plaintiffs for amounts they have paid to the City of Bedford in inspection fees related to unconstitutional inspections;

and

(12) Grant such other and further relief as the Court deems equitable, just, and proper.

Respectfully submitted,

*/s/ Maurice A. Thompson*
Maurice A. Thompson (0078548)
1851 Center for Constitutional Law
208 E. State Street
Columbus, Ohio 43215
Tel: (614) 340-9817
Fax: (614) 365-9564
*MThompson@OhioConstitution.org*

Sheldon Berns (0000140)
Gary Werner (0070591)
Berns, Ockner & Greenberger, LLC
3733 Park East Drive, Suite 200
Beachwood, Ohio 44122
Tel: (216) 831-8838, Ext. 205
Fax: (216) 464-4489
*SBerns@BernsOckner.com*
*GWerner@BernsOckner.com*

Christopher Finney (0038998)
Finney Law Firm, LLC
4270 Ivy Pointe Boulevard, Suite 225
Cincinnati, Ohio 45245
(513) 943-6660 phone
(513) 943-6669 fax
*Chris @FinneyLawFirm.com*

20