# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| **KENNETH PUND,** | : | **Case No. 16-CV-1076** |
|  | : |  |
| **JOHN DIEZIC,** | : | **Judge Benita Y. Pearson** |
|  | : |  |
| **SCOTT JOWERS** | : |  |
|  | : | **FIRST AMENDED CLASS ACTION** |
| **STEPHANIE JOWERS** | : | **COMPLAINT FOR DECLARATORY** |
|  | : | **JUDGMENT, INJUNCTIVE RELIEF,** |
| **AND ALL OTHER SIMILARLY SITUATED** | : | **AND RESTITUTION** |
| **PARTIES** | : |  |
|  | : | **EXHIBIT F:**  *City of Bedford Rental* |
| **Plaintiffs,** | : | *Inspection Ordinance* |
|  | : |  |
| **v.** | : | **EXHIBIT G:**  *City of Bedford "Rental* |
|  | : | *Program" Overview* |
| **CITY OF BEDFORD, OHIO,** | : |  |
|  | : | **EXHIBIT H:**  *Revenue derived from* |
| **and** | : | *Point of Sale Inspection and Rental* |
|  | : | *Inspection Fees* |
| **ROB BROWN, in his official capacity as** | : |  |
| **"Building Inspector," City of Bedford, and in** | : | **EXHIBIT I:**  *April 24, 2015 Certificate of* |
| **his individual capacity.** | : | *Inspection of the Home of Scott and* |
|  | : | *Stephanie Jowers* |
| **RICHARD HICKMAN, in his official capacity** | : |  |
| **as "Building Inspector," City of Bedford, and** | : |  |
| **in his individual capacity.** | : |  |

**Defendants.**

Plaintiffs KENNETH PUND, JOHN DIEZIC, and SCOTT AND STEPHANIE JOWERS, for their

First Amended Complaint against Defendants CITY OF BEDFORD, OHIO, ROB BROWN, and

RICHARD HICKMAN, hereby allege as follows:

## <u>INTRODUCTION</u>

1.      This is an action brought pursuant to 42 U.S.C. §1983 for declaratory judgement, temporary

restraining order, preliminary and permanent injunction, actual and nominal damages, and other relief

arising from the unconstitutional policies, practices, and threats of Defendants City of Bedford and building

inspector Rob Brown.  Defendant's policies, practices, and conduct threaten Plaintiffs with irreparable

1

harm to their rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. The harm may only be remedied by a ruling from this Court.

2.      Defendants have impeded and threaten to further unconstitutionally impede Plaintiffs and others similarly situated in their right to be free from unlimited warrantless searches without probable cause by maintaining, implementing, and enforcing vague policies that (i) threaten Plaintiffs and others with subjection to unduly broad warrantless searches of their houses and properties without probable cause; (ii) violates Plaintiffs' reasonable expectation of privacy; and (iii) retaliate against those exercising their Fourth Amendment rights by either (a) pressing criminal charges against them, or (b) depriving them of their property rights, including but not limited to the right to sell or rent their properties to others.  In doing so, Defendants have imposed financial exactions on Plaintiffs and others that fund the unconstitutional searches.

3.      As a result of the policies, practices, and customs of the Defendants, as well as certain conduct by one or more Defendants, Plaintiffs have suffered and will suffer harm unless the Defendants are enjoined from restricting their Fourth Amendment rights in this manner.

4.      For the reasons stated above, Plaintiffs seek, amongst other things, declaratory judgement and injunctive relief determining that offending provisions empowering the City to search a resident's property without a warrant simply because it happens to be "for rent" or "for sale" are or were unconstitutional on their face and as applied to them, and that restitution, in the form of the return of unconstitutional inspection fees, is owed to Plaintiffs and others whose properties were searched without a warrant.

5.      Plaintiffs respectfully incorporate Exhibits A, B, C, and D, as attached in their original complaint.  Doc. 1-1, 1-2, 1-3, 1-4.  Page ID 21-30.

## PARTIES

6.      The Plaintiffs are past and current owners of residential homes in the City of Bedford.

7.     Plaintiff KENNETH PUND owns 27 properties, consisting of 44 separate addresses, within the city limits of Bedford.[1]

8.     Mr. Pund's properties are primarily single family homes, and/or duplexes or triplexes, other than 91 Solon Road, which is a twelve unit apartment building.

9.     Mr. Pund has been subjected to at least seven warrantless rental inspections of his properties since September 1, 2014, at a total cost of $550.

10.    Mr. Pund desires to continue making these properties available for rent, and is therefore threatened with subjection to additional rental inspections.

11.    Plaintiff JOHN DIEZIC has been subjected to several point of sale inspections by Defendants City of Bedford and Rob Brown.

12.    Pursuant to Point of Sale Inspection Requirements, coercively and without a warrant, Defendants searched Mr. Diezic's houses at 261 Columbus Road and 56 Charles Street, both in Bedford, Ohio, in 2015.

13.    In 2015, Mr. Diezic paid inspection fees to the City of Bedford, pursuant to the City's point of sale search mandates.

14.    Plaintiffs SCOTT AND STEPHANIE JOWERS own and occupy a home located at 90 Berwyn Drive in Bedford, Ohio.

15.    The Jowers' home was searched, without the Jowers' voluntary consent and without a warrant, pursuant to the City's point of sale inspection program on April 24, 2015.

16.    The Jowers paid the regular inspection fee to the City of Bedford in conjunction with this search.

---

[1]     Mr. Pund owns the following residences in Bedford, Ohio:  131 Avalon Drive, 12 Charles Street, 375 Center Road, 175 Columbus Road, 306 Columbus Road, 574 Darlington Road, 23 Eldred Avenue, 103 Gould Avenue, 17 Grand Boulevard, 245 John Street, 487 Lamson Avenue, 15 Magnolia Drive, 15 Mapledale, Avenue, 734 McKinley Avenue, 22 Powers Road, 546 Northfield Road, 91 Solon Road, 213 Talbot Drive, 421 Turney Road, 234 Wandle Avenue, 144 Warrensville Center Road, 395 Warrensville Center Road, 729 Washington Court, 855 Washington Street, 94 Willard Avenue, 155 William Street, and 177 Willis Avenue.  Mr. Pund also owns a garden center, his primary business, located at 43 Willis Avenue.

3

17.     As a result of the City of Bedford point of sale inspection of their home, the City ordered the Jowers to make numerous expensive and unnecessary updates to their home, requiring them to remove it from the market, and causing them to be unable to sell their home for over one year.

18.     The Jowers now desire to attempt to sell their home again, and are actively exploring listing it for sale, however, the deleterious consequences of the point of sale program continue to hinder their efforts to sell their home and leave the City of Bedford.

19.     Defendant CITY OF BEDFORD, OHIO is a municipal corporation located within Cuyahoga County, Ohio; it is created and existing under and by virtue of the laws of the State of Ohio.  In fulfilling its duties, the City acts by and through various commissions and public officials, including, without limitation, code enforcement officers.

20.     Defendant City of Bedford requires that Mr. Pund's homes be searched by government before they can be rented to a willing tenant, and that the homes continue to be searched every two years as long as they remain occupied by a tenant.  See Exhibits A and B, herein.

21.     Defendant City of Bedford conducted 3,029 warrantless rental inspections and 1,521 warrantless "point of sale" inspections from 2010 to 2015.  See Exhibit C.

22.     Defendant City of Bedford extracted $83,150 in fees from 2010 to 2015 through the enforcement of its warrantless rental inspection scheme.  See Exhibit C.

23.     Defendant City of Bedford extracted $80,550 in fees from 2010 to 2015 through the enforcement of its warrantless "point of sale" inspection scheme.  See Exhibit C.

24.     Defendant ROB BROWN is, and has been at all times relevant to the facts at issue in this case, a City Building Inspector for the City of Bedford.

25.     Defendant Brown, as part of his official duties and responsibilities with the City of Bedford, implements the Point of Sale Inspection Requirements and Rental Inspection Requirements and/or enforces the unconstitutional intrusions accomplished through the City's policies and practices (as described herein).

4

26.     Defendant Brown is an individual who undertook specific action so as to deprive and/or violate the constitutional rights of the Plaintiffs and did so in his individual capacity, as part of his official duties and responsibilities as an employee and/or agent of the City of Bedford, and in his official capacity of adopting and implementing a policy, practice or custom of the City of Bedford.

27.     Defendant Brown searched, without a warrant and pursuant to the point of sale inspection mandates, Mr. Diezic's homes at Columbus Road and Charles Street in 2015.

28.     Defendant RICHARD HICKMAN is, and has been at all times relevant to the facts at issue in this case, a City Building Inspector for the City of Bedford.

29.     Defendant Hickman, as part of his official duties and responsibilities with the City of Bedford, implements the Point of Sale Inspection Requirements and Rental Inspection Requirements and/or enforces the unconstitutional intrusions accomplished through the City's policies and practices (as described herein).

30.     Defendant Hickman is an individual who undertook specific action so as to deprive and/or violate the constitutional rights of the Plaintiffs and did so in his individual capacity, as part of his official duties and responsibilities as an employee and/or agent of the City of Bedford, and in his official capacity of adopting and implementing a policy, practice or custom of the City of Bedford.

31.     Defendant Hickman searched, without a warrant and pursuant to the City of Bedford's Rental Inspection Requirement mandates, numerous houses owed by Mr. Pund, including 245 John St., 306 Columbus Ave., 91 Solon Rd., 234 Wandle Ave., 175 Columbus Rd., 22 Powers Rd., 574 Darlington Dr., and 131 Avalon Dr.

32.     Defendants threatened Plaintiffs with loss of property and criminal charges as a consequence to any attempt to assert a constitutional right to be free from unreasonable searches of their houses.

33.     All actions by the Defendants described herein were undertaken under color of state law which caused the deprivation of Plaintiffs' rights protected by the United States Constitution.

34.     All acts herein of the Defendant City of Bedford, its officers, agents, servants, employees or persons acting at their behest or direction, were done and are continuing to be done under the color or pretense of state law.

## JURISDICTION AND VENUE

35.     This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, as this action arises under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution; under 28 U.S.C. § 1343(a)(3), in that it is brought to prevent imminent deprivations, under color of state law, of rights, privileges and immunities secured by the United States Constitution; under 28 U.S.C. § 1343(a)(4), in that it seeks to recover damages and secure equitable relief under an Act of Congress, specifically, 42 U.S.C. § 1983, which provides a cause of action for the protection of civil and constitutional rights; under 28 U.S.C. § 2201(a), to secure declaratory relief; under 28 U.S.C. § 2202, to secure preliminary and injunctive relief and damages; and under 42 U.S.C. § 1988 to grant Plaintiffs' prayer for relief regarding the recovery of costs, including damages, restitution, and reasonable attorney fees.

36.     Venue is proper within this judicial district and division pursuant to 28 U.S.C. § 1391(b) and Local Rule 82.1 as (i) Defendants are situated within this judicial district and division, (ii) the Defendants transact business within this District, and (iii) the conduct complained of occurred within this District.

## FACTUAL ALLEGATIONS

***The City of Bedford "Point of Sale" Inspection Requirement: Prohibition on Selling One's Home Without Consenting to a Warrantless General Search***

37.     Plaintiffs incorporate by reference all of the foregoing paragraphs as if fully restated herein.

38.     Plaintiffs originally filed this lawsuit against Defendants on May 4, 2016.

39.     In response to Plaintiffs' original Complaint, the City of Bedford amended its point of sale mandates to, *inter alia,* include a warrant requirement on August 1, 2016.[2]

40.     Prior to its amendment of the ordinance, no person in Bedford, Ohio could sell his or her home without first enduring a warrantless government search of the entire property.

41.     From January 1, 2010 to December 31, 2015, the City of Bedford conducted 1,521 point of sale inspections and extracted $80,550 in inspection fees.

42.     Prior to August 1, 2016, the City of Bedford forbade any person from selling his or her house, no matter what type of house or how well it had been cared for, without first undergoing a coerced warrantless government inspection without probable cause.

43.     The City explained the realities of its warrantless search mandates on its website:  it asserts "Owners of residential or commercial real estate, including single-family and 2-faimly dwellings, duplexes apartments, and condominiums and all commercial and industrial properties are required to obtain a Certificate of Inspection (Point of Sale) *prior to* entering into an agreement to sell or convey an interest in such property (including sales through Land Contracts)."[3]

44.     The inspection mandates were codified in Sections 1311.18-1311.22 of the City of Bedford Municipal Code.[4]

45.     Section 1311.18 broadly prohibited the sale, or even an agreement to sell, any property within the city without a "Certificate of Inspection":  "No person shall sell or enter into an agreement to sell or convey by land contract or otherwise, any interest in any dwelling, building or structure as defined in the Zoning Code without furnishing the buyer, prior to such sale, a current Certificate of Inspection."

46.     Section 1311.21(a) required the property owner to proactively contact the City to seek a certificate of inspection, and further specified that to acquire such a certificate, "[t]he building official may

---

[2]     See Exhibit B to Defendant's Motion in Opposition to Plaintiff's Motion for Summary Judgement, Doc # 17-1, PageID 113-116, City of Bedford Ordinance No. 9411-16.
[3]     See Exhibit A of Plaintiff's Original Complaint, "Points of Sale Inspections – General Information," available online at City's website, *http://www.bedfordoh.gov/site.cfm/city-departments/building-department/point-of-sale-inspections.cfm*.  Doc 1-2, Page ID 22.
[4]     See Exhibit B of Plaintiff's Original Complaint, City of Bedford Inspection Ordinances. Doc. 1-3, Page ID 23-29.

require the submission of an affidavit stating such information, and <u>he shall thereafter cause a general inspection to be made</u>."

47.     Section 1311.21(b) chronicled the astounding scope and breadth of the required searches, whereby every inch of the property was to be inspected by government:  Section 1311.21(b) specified that searches were conducted of basements, piping, stairways, plumbing fixtures, bathrooms, doors, windows, all electrical equipment, gutters and downspouts, masonry, siding, fences, kitchens, bathroom cabinet and countertops, and numerous other private spaces within and surrounding the home.

48.     Searches included many features having nothing to do with health, safety, or the structural integrity of the property, and instead emphasizing the fastidious tastes of the inspector in the field:  the code explicated "[i]t is the intent of Bedford City Council to preserve this <u>architectural style and detail</u> of its existing housing stock.  In the repair or alteration of a dwelling or accessory structure, particularly for the purposes of satisfying the Point of Sale requirements, existing <u>architectural details, materials and styles</u> shall be preserved, repaired, matched or reproduced and not removed, altered, destroyed or replaced with alternate materials."  See Section 1311.21.  To this end, "concrete walks and drives must be free of cracking," "repairs must match the existing surface in color," hedges must be "trimmed in such a way as to be structurally sound and present an <u>orderly appearance</u>," "exterior painted surfaces must be free of cracking, blistering, peeling, or other signs of deterioration, and "floor coverings" must be "free of stains." See 1311.21(b)(2)(Emphasis added).

49.     Only after the broad inspection specified in Section 1311.21 was completed and the condition of the home approved by the City inspector could a homeowner sell his or her house:  "[w]hen it is determined by the Division of Building that a dwelling, building or structure is in compliance with the provisions of these Codified Ordinances and all other applicable rules and regulations applicable thereto, the Building Official shall issue a Certificate of Point of Sale Compliance for the premises." See Section 1311.21.

50.     Bedford homeowners had no choice as to whether the governmental search of their property was performed because failure to comply with the warrantless search was a serious crime for which one could be fined, prosecuted, and imprisoned:  The City of Bedford explained to residents that "Any person violating any provision Chapter 1311.18 of the Building and Housing Code will be guilty of a <u>misdemeanor of the first degree</u> and shall be punished as provided in Chapter 1311.28 of the Building and Housing Code of the City.[5]

51.     Section 1311.28 supplied additional penalties that are imposed on those who refuse the City's warrantless searches:  "Whoever violates any of the provisions of this Chapter or any rule or regulation promulgated under authority of this Chapter, or fails to comply therewith or with any written notice or written order issued hereunder, shall be fined not less than fifty dollars ($50.00) nor more than five hundred dollars ($500.00) for the first offense, and, for a second or subsequent offense, shall be fined not less than one hundred dollars ($100.00) nor more than <u>one thousand dollars ($1,000.00) or imprisoned not more than six (6) months, or both, and each day such violation occurs or continues and each violation shall constitute a separate offense</u>."

52.     The City of Bedford maintained the authority to impose additional punishments beyond six months of imprisonment and thousands of dollars in fines, claiming:  "Whoever causes or permits the continuation of any violation of this Chapter or any rule or regulation promulgated hereunder or fails to comply therewith or with any written notice or written order issued hereunder, subsequent to conviction therefore, shall be liable for further prosecution, conviction and punishment upon the same order or notice without the necessity of issuing a new order or notice, until full compliance has been had on such order or notice upon which the original conviction was had."  See 1311.28(a).

53.     Further, the City could forcibly render a home vacant and valueless until the search was complied with:   "The imposition of any penalty shall not preclude the Director of Law from instituting an appropriate action or proceeding in a court of proper jurisdiction to prevent an unlawful repair or

---

[5]       Id., at Page ID 29.

maintenance, or to restrain, correct or abate a violation, or <u>to prevent the occupancy of a building, structure or premises</u>, or to require compliance with the provisions of this Chapter, or other applicable laws, ordinances, rules or regulation, or the orders or determinations of the Building Inspector, the Board of Building Code Appeals and the Board of Zoning Appeals." See 1311.28(b).

54.     Bedford homeowners were forced to *fund* the unlawful warrantless governmental inspections of their private homes.  The fee for the Point of Sale inspection varied from $50 for single-family dwellings to $75 for two-family dwellings.[6]

55.     From 2010 to 2015 the City of Bedford extracted $80,550 in fees through this program.[7]

### *Bedford's Enforcement of the Point of Sale Inspection Requirement Against Plaintiff and Plaintiffs' Status*

56.     Point of Sale Inspections were imposed on properties owned by Plaintiffs at times Plaintiffs owned them: in 2015, Defendants searched, without a warrant or consent, Mr. Diezic's properties at 261 Columbus Road and 56 Charles Street and Mr. and Mrs. Jowers' home at 90 Berwyn Drive.

57.     Defendants continue impose harm on Plaintiff John Diezic as they wrongfully hold approximately $4,000 in Mr. Diezic's personal funds stemming from a 2015 point of sale inspection on a home Mr. Diezic sold and no longer owns.

58.     Pursuant to information derived from point of sale inspections, Defendants ordered Mr. Diezic to make numerous unnecessary and undesirable alterations to his property before it could be sold to an already-identified willing buyer.

59.     Pursuant to information derived from point of sale inspections, Defendants ordered Mr. and Mrs. Jowers to make numerous unnecessary and undesirable alterations to their property before it could be listed for sale, much less sold to a willing buyer, forcing them to remain in their home even though they would prefer to move from the City of Bedford.

---

[6]     Id.  See also Section 1311.22.
[7]     See Exhibit C, Email containing Inspection Program Revenue

60.     The City of Bedford coerced each and every such inspection of Plaintiffs:  (1) Plaintiffs consented to the searches only to avoid criminal liability and preserve their right to market and sell their Bedford houses; and (2) no Plaintiff voluntarily consented to any search of any of his or her properties.

61.     No tenant or neighbor of either of the Plaintiffs' homes has ever complained to the City of Bedford regarding code violations or other nuisances at any of these properties, or by any of the Plaintiffs at other properties.

62.     Each inspection of each parcel of Plaintiffs' property was coerced through the implied threat of loss of property or liberty; and plaintiffs continue to be coerced into providing involuntary consent to such inspections.

### The City of Bedford Rental Inspection Requirement: Prohibition on Renting One's Property Without Consenting to a Warrantless General Search

63.     The City of Bedford forbids any person from renting his or her house, no matter what type of house or how well it has been cared for, without first undergoing a coerced warrantless government inspection without probable cause.

64.     The City explains the realities of its warrantless rental property search mandates on its website:  it asserts that "All rental units, (apartments-residential dwellings-commercial properties), including 'land contract' agreements are required to register with the City of Bedford prior to occupancy… **Under the code, you are required to call for a rental inspection** whenever there is a change in tenant, or a 2-year period, whichever is more frequent."[8]

65.     The Rental Inspection Requirement mandates are codified in Sections 1311.29-1311.32 of the City of Bedford Municipal Code.

66.     Section 1311.30(a) requires the property owner to proactively contact the City to seek a certificate of rental license, and 1311.30(b) further specifies that to acquire such a certificate, "[t]he

---

[8]     See Exhibit B, "Rental Program – Property Rental," available online at City's website, *http://www.bedfordoh.gov/site.cfm/City-Departments/Building-Department/Rental-Program.cfm.*

building official may require the submission of an affidavit stating such information, and **he shall thereafter cause a general inspection to be made.**"

67.     Section 1311.31 broadly prohibits the rental, or even an offering as a rental, of any property within the city without "Certificates of Rental Licensure and Inspection":  "No person shall reside in any unit(s) or structure until all required certificates have been issued. The owner(s) of all properties which are offered for rent or lease shall obtain a new Certificate of Rental Inspection each time a new tenant occupies the unit(s) or structure."

68.     The term **"general inspection"** is defined in section 1311.21(b) as including a search of all basements, piping, stairways, plumbing fixtures, bathrooms, doors, windows, all electrical equipment, gutters and downspouts, masonry, siding, fences, kitchens, bathroom cabinet and countertops, and numerous other private spaces within and surrounding the home.

69.     Only after the broad inspection specified in Section 1311.21 is completed and the condition of the home approved by the City inspector may a homeowner rent his or her house.

70.     Bedford landlords and tenants have no choice as to whether the governmental search of their property is performed, because failure to comply with the warrantless search is a serious crime for which one can be fined, prosecuted, and imprisoned.  The City of Bedford explains to residents that **"[a]ny person who… refuses to permit entry by the building official or his duly authorized representatives at a reasonable hour…shall be guilty of a misdemeanor of the first degree and, upon conviction thereof, shall be fined not more than one thousand dollars ($1,000.00)** nor imprisoned for a period exceeding six (6) months for each offense.  Each day such a violation occurs or continues to occur shall be deemed a separate offense."[9]

71.     Section 1311.28 supplies additional penalties that are imposed on those who refuse the City's warrantless searches:  "Whoever violates any of the provisions of this Chapter or any rule or regulation promulgated under authority of this Chapter, or fails to comply therewith or with any written

---

[9]      Section 1311.06(d)

12

notice or written order issued hereunder, shall be fined not less than fifty dollars ($50.00) nor more than five hundred dollars ($500.00) for the first offense, and, for a second or subsequent offense, shall be fined not less than one hundred dollars ($100.00) nor more than one thousand dollars ($1,000.00) or imprisoned not more than six (6) months, or both, and each day such violation occurs or continues and each violation shall constitute a separate offense."

72.     The City of Bedford maintains the authority to impose additional punishments beyond six months of imprisonment and thousands of dollars in fines, claiming:  "Whoever causes or permits the continuation of any violation of this Chapter or any rule or regulation promulgated hereunder or fails to comply therewith or with any written notice or written order issued hereunder, subsequent to conviction therefore, shall be liable for further prosecution, conviction and punishment upon the same order or notice without the necessity of issuing a new order or notice, until full compliance has been had on such order or notice upon which the original conviction was had."  See 1311.28(a).

73.     Further, the City can forcibly render a home vacant and valueless until the search is complied with:   "The imposition of any penalty shall not preclude the Director of Law from instituting an appropriate action or proceeding in a court of proper jurisdiction to prevent an unlawful repair or maintenance, or to restrain, correct or abate a violation, or to prevent the occupancy of a building, structure or premises, or to require compliance with the provisions of this Chapter, or other applicable laws, ordinances, rules or regulation, or the orders or determinations of the Building Inspector, the Board of Building Code Appeals and the Board of Zoning Appeals."  See 1311.28(b).

74.     Bedford property owners have been and continue to be forced to *fund* the unlawful warrantless governmental inspections of their private homes:  The fee for the rental inspection varies from "fifty dollars ($50.00) for a single family dwelling, Seventy-five Dollars ($75.00) for a two-family dwelling or One Hundred Dollars ($ l00.00) for a three-family dwelling structure. For four or more dwelling units this yearly fee shall be Twenty Dollars ($20.00) per each dwelling unit"."[10]

---

[10]     Id.  See also Section 1311.32(a).

13

75.     From 2010 to 2015, the City of Bedford conducted 3209 such searches of residents' homes and collected $83,150 in fees while doing so.[11]

### *Bedford's Enforcement of the Rental Inspection Requirements Against Plaintiffs and Plaintiffs' Status*

76.     Plaintiffs maintain standing to bring this action because if they do not consent to a warrantless search of their properties they are faced with (1) criminal charges and fines; and/or (2) the inability to inhabit their houses or rent and/or convey them as habitable.

77.     On March 17, 2016, Bedford Building Department representative Peggy Zelasko responded to an inquiry from Plaintiff Ken Pund by indicating "[y]ou need rental inspections at the time of tenant change.  You need a point of sale inspection prior to any title transfer."[12]

78.     Rental Inspections were imposed on properties owned by Plaintiff Ken Pund at times Mr. Pund owned them: between September 1, 2014 and October 29, 2015 Defendants searched, without a warrant or consent, properties owned by Mr. Pund located at 15 Mapledale Avenue, 91 Solon Road #2 and #5, 144 Warransville Center Road, 131 Avalon Drive, 574 Darlington Road, 175 Columbus Road #3, 22 Powers Road, 234 Wandle Avenue, 306 Columbus Road, and 245 John Street.

79.     Defendants continue to impose harm on Plaintiff Kenneth Pund as they wrongfully hold at least $550 in Mr. Pund's personal funds stemming from Rental Inspection fees.

### DECLARATORY JUDGEMENT AND INJUCTION
### (28 U.S.C. §2201, et seq.)

80.     Plaintiffs incorporate by reference all of the foregoing paragraphs as if fully restated herein.

81.     An actual controversy has arisen and now exists between Plaintiffs and Defendants concerning Plaintiffs' rights under the United States Constitution.  A judicial declaration is necessary and appropriate at this time.

---

[11]     See Exhibit C, Public Records Request for Inspection Program Revenues.

[12]     The day before, Mr. Pund had emailed the following to Ms. Zelasko, as part of an ongoing conversation regarding the point of sale and Rental Inspection Requirements in Bedford:  "Thank you for your response.  I have new tenants moving into 144 Center Road up & down and 91 Solon Apt. 4 in mid-April.   Do I need to have inspections on those?  Also, what about that pre-sale inspection that I asked about?  (I'm not putting that house up on the market, since the tenants are just buying it directly from me)."

14

82.     A state actor is liable under 42 U.S.C. § 1983 if it took "action pursuant to official policy of some nature [that] caused a constitutional tort."[13]

83.     "[Governmental] liability may be imposed for a single decision by [government] policy makers under appropriate circumstances."[14]

84.     Plaintiffs desire a judicial determination of their rights against Defendants as they pertain to Plaintiffs' right to be free from unlawful searches, coerced surrender of property rights and/or privileges, and vague licensing requirements.

85.     In order to prevent violation of Plaintiffs' constitutional rights by Defendants, it is appropriate and proper that a declaratory judgment be issued, pursuant to 28 U.S.C. § 2201 and FED. R. CIV. P. 57, declaring unconstitutional, facially and as-applied here, all relevant portions of the City of Bedford, Ohio Rental Inspection Requirements and Point of Sale Inspection Requirements, as well as Defendants' enforcement policies, practices, and actions related to the requirements.

86.     Furthermore, pursuant to 28 U.S.C. § 2202 and FED. R. CIV. P. 65, it is appropriate and hereby requested that this Court issue preliminary and permanent injunctions prohibiting the Defendants from enforcing their inspections policies and all policies, practices, and conduct reliant on and related to the Rental Inspection and Point of Sale Inspection policies, including but not limited to the Rental Inspection Requirements and Point of Sale Inspection Requirement's search fees and permitting process, to the extent they are unconstitutional, in order to prevent the ongoing violation of Plaintiffs' constitutional rights.

## COUNT I

### VIOLATION OF RIGHT TO DUE PROCESS AND FREEDOM FROM UNCONSTITUTIOTIONAL SEARCHES PURSUANT TO THE FOURTH, FIFTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION (42 U.S.C. § 1983)

87.     Plaintiffs incorporate by reference all of the foregoing paragraphs as if fully restated herein.

---

[13]     *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).
[14]     *Id.* at 480.

### *Violation of Unconstitutional Conditions Doctrine*

88.     The Supreme Court's "Unconstitutional Conditions" Doctrine arises from the Due Process guarantees articulated in the Fifth and Fourteenth Amendments to the United States Constitution.

89.     A state actor cannot constitutionally condition the receipt of a benefit, such as a sale or occupancy permit, liquor license, or an entertainment permit, on an agreement to refrain from exercising one's constitutional rights, particularly one's right to be free from unlimited warrantless searches of private property without probable cause.[15]

90.     The Supreme Court of the United States has confirmed in a variety of contexts that "government may not deny a benefit to a person because he exercises a constitutional right."[16]

91.     The Supreme Court has further explained that "[t]hose cases reflect an overarching principle, known as the unconstitutional conditions doctrine, that vindicates the Constitution's enumerated rights by preventing the government from coercing people into giving them up."[17]

92.     The Supreme Court has consistently applied the Unconstitutional Conditions Doctrine within the context of land use permitting.[18]

93.     "[R]egardless of whether the government ultimately succeeds in pressuring someone into forfeiting a constitutional right, the unconstitutional conditions doctrine forbids burdening the Constitution's enumerated rights by coercively withholding benefits from those who exercise them."[19]

---

[15]     *Perry v. Sindermann,* 408 U.S. 593, 597 (1972) ("For at least a quarter-century, this Court has made clear that even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests . . .").

[16]     *Regan v. Taxation With Representation of Wash*., 461 U.S. 540, 545 (1983). See also, e.g., *Rumsfeld v. Forum for Academic and Institutional Rights, Inc*., 547 U.S. 47, 59–60 (2006); *Rutan v. Republican Party of Ill*., 497 U.S. 62, 78, 110 S.Ct. 2729 (1990). In *Perry v. Sindermann*, 408 U.S. 593 (1972), for example, a public college would violate a professor's freedom of speech if it declined to renew his contract because he was an outspoken critic of the college's administration. And in *Memorial Hospital v. Maricopa County*, 415 U.S. 250 (1974), a county impermissibly burdened the right to travel by extending healthcare benefits only to those indigent sick who had been residents of the county for at least one year.

[17]     *Koontz v St. Johns River Water Management Dist*., 133 S.Ct. 2586, at 2594 (2013).

[18]     *Id*. (explaining that "land-use permit applicants are especially vulnerable to the type of coercion that the unconstitutional conditions doctrine prohibits because the government often has broad discretion to deny a permit that is worth far more than property it would like to take."), citing *Lingle v. Chevron U.S.A. Inc*., 544 U.S. 528, 547, 125 S.Ct. 2074, 161 L.Ed.2d 876 (2005); *Dolan*, 512 U.S., at 385, 114 S.Ct. 2309 (invoking "the well-settled doctrine of 'unconstitutional conditions' ").

[19]     *Koontz*, supra.

94.     Further, in Ohio, the right to sell, rent, and/or occupy one's residential home in Ohio is not merely a "government benefit," but rather, is an extension of one's private property rights - -  rights recognized by the Ohio Constitution and Ohio Supreme Court as "fundamental."

95.     Through the point of sale requirements, Defendants pressured Plaintiffs into forfeiting their Fourth Amendment rights by, in response to the exercise of those rights, threatening to (1) withhold required permits needed to sell or rent one's home in Bedford and/or (2) prosecute Plaintiffs for criminal violations, should they sell or rent their home without first consenting to a warrantless search.

96.     Defendants continue to burden Plaintiffs' Fourth Amendment rights by operation of law, through maintaining and enforcing the Rental Inspection Requirements and Point of Sale Inspection Requirements.

### *Violation of the Fourth Amendment's Search and Seizure Clause*

97.     The Fourth Amendment provides in relevant part that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."

98.     The Amendment establishes a simple baseline, one that for much of our history formed the exclusive basis for its protections: When "Government obtains information by physically intruding" on persons, houses, papers, or effects, "a 'search' within the original meaning of the Fourth Amendment" has "undoubtedly occurred."[20]

99.     The Supreme Court has declared warrantless searches "*per se* unreasonable."[21]

100.     Since *Camara v. Mun. Court of City and County of San Francisco* and *See v. City of Seattle*, each decided in 1967, building code search statutes have been held unconstitutional unless they require a search warrant supported by administrative probable cause.[22]

---

[20]     *United States v. Jones,* 132 S.Ct. 945, 950–951, n. 3 (2012).

[21]     *Mincey v. Arizona,* 437 U.S. 385, 390 (1978) (internal quotation marks omitted); see *Groh v. Ramirez,* 540 U.S. 551, 559 (2004).

[22]     387 U.S. 523 (1967).

101.     *Camara* held that administrative inspections are significant intrusions on Fourth Amendment rights for which warrants generally are required.

102.     *Camara* further held that warrantless searches of residential property by municipal inspectors violated the Fourth Amendment protection against unreasonable searches and seizures.[23]

103.     In *See v. City of Seattle*,[24] the Supreme Court held that, like the search of a private home, the search of a business is presumptively unreasonable if conducted without a warrant, as a businessman's Fourth Amendment guarantees are "placed in jeopardy if the decision to enter and inspect for violation of regulatory laws can be made and enforced by the inspector in the field without official authority evidenced by a warrant,"[25] as, "[i]t is untenable that the ban on warrantless searches was not intended to shield places of business as well as of residence."[26]

104.     In *Hodgins v. U.S. Department of Agriculture,* the Sixth Circuit Court of Appeals held "for *warrantless* searches to be justifiable under a regulatory scheme, the object of the search must be something that can be *quickly hidden*, moved, disguised, or altered beyond recognition, so that only a surprise inspection could be expected to catch the violations.  On the other hand, if a regulation is *similar to a building code* (as in *See v. Seattle*), where violations will be harder to conceal, the need for surprise will be less pressing, and warrantless searches will more likely be unconstitutional."[27]

105.     An exception to the warrant requirement has been recognized for searches of pervasively or closely regulated industries.[28]

106.     Plaintiffs are not doing business in a "pervasively or closely regulated industry."

---

[23]     Id. at 528.
[24]     Id. at 541.
[25]     Id. at 543.
[26]     *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 312 (1978).
[27]     238 F.3d 421 (2000).  Emphasis added.
[28]     *See New York v. Burger,* 482 U.S. 691 (1987) (junkyard industry); *Donovan v. Dewey,* 452 U.S. 594 (1981) (coal mining); *United States v. Biswell,* 406 U.S. 311 (1972) (firearms); *Colonnade Catering Corp. v. United States,* 397 U.S. 72 (1970) (liquor); *see also United States v. Acklen,* 690 F.2d 70 (6th Cir.1982) (pharmacies); *Marshall v. Nolichuckey Sand Co.,* 606 F.2d 693 (6th Cir.1979) (sand and gravel industry), *cert. denied,* 446 U.S. 908 (1980).

107.    In *Patel v. City of Los Angeles,* the United States Supreme Court reaffirmed the necessity of the warrant requirement, as well as the narrow and finite nature of the "closely regulated business" exception.

108.    The City of Bedford's Point of Sale Inspection Requirement was coercive, and the Rental Inspection Requirement continues to be coercive.

109.    Neither the Point of Sale Inspection Requirement nor the Rental Inspection Requirement involved a warrant or probable cause as a prerequisite to a government search of residential homes.

110.    The properties owned by plaintiffs are each (1) a "house," as specified in the Fourth Amendment; and (2) at least equivalent to the "commercial property" held to be entitled to Fourth Amendment protection.

111.    The City of Bedford's Rental Inspection Requirement, as a physical intrusion into a home to collect information that can later be used in a criminal prosecution, is a "search," as contemplated by the Fourth Amendment.

112.    The warrantless inspection of rental untis located within the City of Bedford is not "necessary to further the regulatory scheme"[29] here:  the City could operate a complaint-driven scheme, one that relies upon probable cause, or one that enlists property owners' use of private building inspectors.

113.    City of Bedford point of sale searches violated Plaintiffs' right to be free from unreasonable searches by coercing property owners' consent to such searches while failing to maintain a warrant requirement.

114.    City of Bedford rental searches violated and continue to violate Plaintiffs' right to be free from unreasonable searches in the same way.

115.    The actions of Defendants were the direct and proximate result of the policy, practice, and custom of the City of Bedford, as adopted and implemented by the Defendants.

---

[29]    See *McLaughlin v. Kings Island, Div. of Taft Broadcasting Co.* 849 F.2d 990 (6th Cir. 1988).

## COUNT II

### UNJUST ENRICHMENT AND RESTITUTION

116. Plaintiffs incorporate by reference all of the foregoing paragraphs as if fully restated herein.

117. Defendant City of Bedford has acquired and/or is in possession of funds that it is not entitled to retain, including at minimum, point of sale inspection fees and Rental Inspection fees paid Plaintiffs.

118. A suit seeking the return of specific funds wrongfully collected or held by a state actor may be maintained in equity. *Santos v. Ohio Bur. of Workers' Comp.,* 101 Ohio St.3d 74, syllabus. *Accord Judy v. Ohio Bur. of Motor Veh.,* 100 Ohio St.3d 122; *Ohio Hosp. Assn. v. Ohio Dept. of Human Serv.,* 62 Ohio St.3d 97 (1991).

119. Unjust enrichment exists when there is: (1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment (i.e., the "unjust enrichment" element).

120. Ohio law does not require that the benefitted party act improperly in some fashion before an unjust enrichment claim can be upheld; instead, unjust enrichment can result "from a failure to make restitution where it is equitable to do so. That may arise when a person has passively received a benefit which it would be unconscionable for him to retain" without paying compensation. (Citations omitted.) *Advantage Renovations, Inc. v. Maui Sands Resort, Co., L.L.C.,* 2012-Ohio-1866, ¶ 33.

121. Through its Point of Sale Inspection and Rental Inspection fee assessments, Defendant City of Bedford has acquired funds rightfully belonging to Plaintiffs and others.

122. Defendant acquired these funds to fund unconstitutional searches of Plaintiffs' properties.

123. Since September 1, 2014, Defendant unconstitutionally extracted $550 from Plaintiffs to perform unnecessary and unconstitutional rental inspections on homes located at 15 Mapledale Avenue, 91

Solon Road #2 and #5, 144 Warransville Center Road, 131 Avalon Drive, 574 Darlington Road, 175 Columbus Road #3, 22 Powers Road, 234 Wandle Avenue, 306 Columbus Road, and 245 John Street.

124.     It would be unconscionable for the City of Bedford to retain and/or abstain from returning the permitting fees acquired from Plaintiffs and others.

125.     In *Baker v. Portsmouth,* the United States District Court for the Southern District of Ohio concluded that claims for the refund of inspection fees associated with unconstitutional inspections are equitable in nature, meaning that the law of restitution requires that such fees be returned to those who have paid them.  See Case No. 1:14-CV-512.

126.     The City of Portsmouth was required to return unconstitutionally-collected fees in *Baker v. Portsmouth.*

127.     Plaintiffs are entitled to a refund of all unlawfully-coerced inspection fees paid to Defendants.

128.     Also entitled to a refund of unlawful inspection fees is the proposed class of all individuals and businesses that have (1) sold or rented residential property within the City of Bedford since September 1, 2014; and (2) paid pre-sale or rental inspection fees in conjunction with the sale or lease of their property.

### *Class Action Allegations*

129.     This action is brought, and may be properly maintained, as a class action, pursuant to the provisions of Fed. R. Civ. P. 23(a), 23(b)(1), 23(b)(2), and 23(b)(3).

130.     Named Plaintiffs bring this class action on behalf of themselves and all other similarly situated sellers and leasers of homes within Bedford who have been coerced into paying inspection fees.

131.     A plaintiff must meet the Rule 23(a) prerequisites and fall within one of the three types of class actions listed in Rule 23(b) to receive class certification. *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537 (6th Cir. 2012).

132.  To meet the Rule 23(a) requirements, (1) the class must be "so numerous that joinder of all members is impracticable"; (2) there must be "questions of fact or law common to the class"; (3) "the claims or defenses of the representative parties" must be "typical of the claims or defenses of the class"; and (4) the named plaintiff must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). *Young*, 693 F.3d at 537.

133.  Pursuant to Rule 23(C)(4)(b), the members of the class are as follows:  **All individuals and businesses that have (1) been subjected to Point of Sale Inspection Requirements and Rental Inspection Requirements by the City since September 10, 2014; and (2) paid pre-sale or rental inspection fees to the City of Bedford.**

134.  This class definition can easily be divided into two separate sub-classes focusing on Point of Sale Inspection Requirements and Rental Inspection Requirements, as follows:  **<u>Subclass A</u>:  All individuals and businesses that have (1) been subjected to Point of Sale Inspections since May 4, 2014; and (2) paid pre-sale inspection fees to the City of Bedford.  <u>Subclass B</u>:  All individuals and businesses that have (1) been subjected to rental inspections since September 10, 2014; and (2) paid rental inspection fees to the City of Bedford.**

135.  Named Plaintiffs are members of Class specified above, and they possess the requisite standing to represent the class.

136.  Named Plaintiffs have already been represented the interest of the class, having filed a Complaint and Motion for Preliminary Injunction and Temporary Restraining Order against the City of Bedford on May 4, 2016, resulting in the City of Bedford amending its point-of-sale inspection requirements as to all sellers of Bedford homes.

137.  The members of the class specified above are unambiguous and are easily identifiable and ascertainable by public records and other records within Defendants' possession.

138.  The exact number of the proposed class is easily ascertainable through records within the possession of Defendants.

139.    Named Plaintiffs and all members are "similarly situated" insofar as their private property has been unconstitutionally searched, they have been forced to pay an unlawful fee to fund the search, and they are now entitled to a return of the fee.

140.    The Claims of the Named Plaintiffs are typical of the claims of the class, insofar as Plaintiffs, like class members, have been property owners within the City of Bedford who paid unlawful Point of Sale Inspection and/or Rental Inspection fees and now seek recovery of the unlawful fees that they paid to the City of Bedford.

141.    The questions of law and fact are common to all class members, insofar as Plaintiffs, like class members, have been property owners within the City of Bedford who paid unlawful Point of Sale Inspection fees and/or Rental Inspection fees and now seek recovery of the unlawful fees that they paid to the City of Bedford.

142.    Named Plaintiffs will fairly and adequately protect the interests of the class specified above, because their interests are aligned, and are not antagonistic to those of other class members.

143.    That the named Plaintiffs and their legal counsel will fairly and adequately protect the interests of the class specified above is proven by the fact that the Plaintiffs and their legal counsel are substantially the same parties responsible for having diligently sought injunctive relief applicable to all present and future sellers of Bedford houses.

144.    Plaintiffs' counsel is sufficiently experienced in relevant litigation, including class action litigation, and will adequately protect the interests of the class.

145.    Further, Plaintiffs' legal counsel from the 1851 Center for Constitutional Law, which is a non-profit public interest law firm organized as a public charity under Section 501(c)(3) of the Internal Revenue Code, are not motivated by pecuniary gain or other self-interest.

146.    The 1851 Center's mission, the protection of constitutional, civil, and human rights of Ohioans, reinforces legal counsels' capacity to adequately represent the interest of the class of property owners whose rights have been violated in this matter.

23

147.    Upon information and belief, and based upon preliminary information provided by the City of Bedford, the class specified above includes approximately 2,400 members. See Exhibit C.

148.    Pursuant to Rule 23(A)(1), the class specified above is sufficiently numerous, with approximately 2,400 members, so as to render joinder of each individual seller impracticable.

149.    The amount in controversy for each individual class member, which may only be $50 in many if not most cases, is too small to warrant that class member's hiring and payment of his or her own legal counsel, for the purposes of recovering these funds.

150.    The claims of Named Plaintiffs are typical of the claims of the class, in that all of their claims are based upon the same legal theories, and no express conflict exists between the proposed class representatives and other class members.

151.    Certification is further appropriate under Rule 23(B)(1)(a) and Rule 23(B)(1)(b) because the prosecution of separate actions by individual members of the proposed class would create a risk of inconsistent or varying adjudications and results, including different amounts being refunded at different rates, or amounts not being refunded at all.

152.    Certification is appropriate under Civ. R. 23(B)(2) and Civ. R. 23(B)(3) because Defendants have acted on grounds generally applicable to the class (through imposing, in conjunction with the forced inspections of private houses, Point of Sale Inspection fees and Rental Program Inspection fees), the plaintiffs seek qualifying declaratory, injunctive, and equitable relief on behalf of the class, which possesses the requisite cohesiveness, and the only questions presented by this are questions of law and fact which are entirely common to the class as a whole, rather than questions unique to individual members, thereby rendering declaratory and/or injunctive relief appropriate for the class as a whole.

153.    The potential difficulties associated with management of this case as a class action are minimal: the largest factual issue will likely be determining the most appropriate way to return improperly-collected funds to each past seller and lessor.

154.    Named Plaintiffs hereby affirm that, to the best of their knowledge, there is no other pending litigation involving any member of the proposed class under the same legal theories as those presented herein.

155.    Defendants maintain records, such as pre-sale inspection applications and payments, which demonstrate the total amount collected in unconstitutional inspection fees, and from whom those fees have been collected.

## CONCLUSION

156.    Criminal punishment is an irreparable harm.

157.    Loss of constitutionally protected Fourth, Fifth, and Fourteenth Amendment rights and constituiontuionally protected property rights causes irreparable harm.

158.    Enforcement of the constitutional rights specified herein is in the public interest.

159.    Defendants' enforcement of the Point of Sale Inspection Requirements and Rental Inspection Requirements violates the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution by imposing an unconstitutional condition upon Plaintiffs' lawful exercise of their property rights.

160.    The Point of Sale Inspection Requirements' and Rental Inspection Requirements' search schemes are unconstitutional as applied to Plaintiffs - - property owners who have not created any dangerous conditions or other emergencies on their property, and also unconstitutional on their face.

161.    The warrantless search requirements cannot be severed from the fees that fund the searches, or other permitting requirements.

162.    As a proximate result of Defendants' policies and practices described above, Plaintiffs face imminent threat of irreparable injury and will continue to suffer irreparable injury, in that they will be deprived of their rights under the Fourth, Fifth, and Fourteenth Amendment of the Constitution.

163.    In order to prevent further violation of Plaintiffs' constitutional rights by Defendants, it is appropriate and proper that a declaratory judgment be issued, pursuant to 28 U.S.C. 2201 and Fed. Rule of

Civil Procedure 57, declaring the City of Bedford's enforcement of the search schemed against Plaintiffs to be unconstitutional.

164.    Pursuant to 28 U.S.C. 2202 and Fed Rule of Civil Procedure 65, it is appropriate and hereby requested that this Court issue a preliminary and permanent injunction enjoining the City of Bedford, Ohio from enforcing the rental search requirements against Plaintiffs.

165.    As a direct and proximate result of the search schemes' mandates and punishments, alongside the threats made by Defendants, Plaintiffs' constitutional rights under the Fourth, Fifth, and Fourteenth Amendments have been violated and Plaintiffs have suffered injury and damages, insofar as they have been forced to endure and fund unlawful government searches of their houses.

166.    The actions of Defendants were the direct and proximate result of the policy, practice and custom of the City of Bedford as adopted and implemented by Defendants.

167.    Despite having amended their Complaint, Plaintiffs' overriding concern in this case continues to be the seeking and obtaining of a declaratory relief addressing the constitutionality of the City of Bedford's Point of Sale Inspection Requirements and Rental Inspection Requirements as they existed on the date of the original Complaint, May 4, 2016, and now injunctive relief against the City's unconstitutional inspection mandates.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants, and that the Court:

(1) Declare that the City of Bedford's Point of Sale Inspection Requirements and Rental Inspection Requirements, as they existed on May 4, 2016, authorizing warrantless searches without probable cause, are unconstitutional, both facially and as applied to Plaintiffs;

(2) Declare that provisions of the original Point of Sale Inspection Requirements and current Rental Inspection Requirements wholly reliant upon the unconstitutional search, including but not limited to the monetary extraction for inspections and the permit requirement, violated Plaintiffs' Fourth Amendment rights;

26

(3) Declare that the existence of the Point of Sale Inspection Requirements or Rental Inspection Requirements is an insufficient basis, without more, to obtain a warrant to search a private residential home;

(4) Declare that through the imposition of monetary assessments on Plaintiffs and others, precipitated by the City's desire to fund the costs of the Point of Sale Inspection Requirements and Rental Inspection Requirements, Defendant City of Bedford has been and continues to be unjustly enriched;

(5) Enjoin Defendants from directly enforcing the warrantless rental search requirement;

(6) Enjoin Defendants from indirectly enforcing the warrantless rental search requirement by threatening to or actually criminally prosecuting Plaintiffs, stripping them of the right to occupy or rent their property, or otherwise;

(7) Enjoin Defendants from hindering or interfering with the sale or transfer of a house within the City of Bedford in response to evidence obtained through any prior warrantless Point of Sale Inspection.

(8) Enjoin Defendants from attempting to seek and obtain a warrant, predicated solely on the Rental Inspection Requirements or the Point of Sale Inspection Requirements, to search Plaintiffs' properties;

(9) Mandate the return of Point of Sale Inspection and Rental Inspection fees paid by Plaintiffs and others to Defendant City of Bedford;

(10)    Certify the Class(es) of Bedford homeowners specified herein and return inspection fees to all class members.

(11)    Pursuant to 42 U.S.C. §1988 and other applicable law, award Plaintiffs their costs and expenses incurred in bringing this action, including their reasonable attorneys' fees;

(12)    Award nominal damages against Defendants and in favor of Plaintiffs to compensate Plaintiffs for violations of their constitutional rights;

(13)    Reimburse Plaintiffs for amounts they have paid to the City of Bedford in inspection fees

related to unconstitutional inspections;

*and*

(14)    Grant such other and further relief as the Court deems equitable, just, and proper.

Respectfully submitted,

*/s/    Maurice A. Thompson*
Maurice A. Thompson (0078548)
1851 Center for Constitutional Law
122 E. Main Street
Columbus, Ohio 43215
Tel: (614) 340-9817
*MThompson@OhioConstitution.org*

Sheldon Berns (0000140)
Gary Werner (0070591)
Berns, Ockner & Greenberger, LLC
3733 Park East Drive, Suite 200
Beachwood, Ohio 44122
Tel: (216) 831-8838, Ext. 205
Fax: (216) 464-4489
*SBerns@BernsOckner.com*
*GWerner@BernsOckner.com*

Christopher Finney (0038998)
Finney Law Firm, LLC
4270 Ivy Pointe Boulevard, Suite 225
Cincinnati, Ohio  45245
(513) 943-6660 phone
(513) 943-6669 fax
*Chris @FinneyLawFirm.com*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served on Defendants' Counsel on September 9, 2016.

Respectfully submitted,
/s/ Maurice A. Thompson
Maurice A. Thompson (0078548)

28

**EXHIBIT F - City of Bedford Rental Inspection Ordinance**

**1311.29  GENERAL.**

No owner(s), agent or person in charge of any dwelling unit(s) or structure, used or designed or intended to be used as a single or a multi-family dwelling, shall rent or lease such unit(s) or structure or any part thereof for residential occupancy unless the owner(s) thereof holds current Certificates of Rental License and Inspection issued by the Building Commissioner for such unit(s) or structure, which certificates have not expired, been revoked or otherwise become null and void, except licensed rooming houses.
(Ord. 9162-14.  Passed 4-21-14.)

**1311.30  APPLICATION; ISSUANCE; REVOCATION.**

   (a)   Application for a Certificate of Rental License required by the provisions of this Building Code shall be made annually by supplying the information and data to determine compliance with all applicable laws, ordinances, rules and regulations for the existing use or occupancy or the intended use or occupancy on forms supplied by the Building Commissioner.

   (b)   The Building Commissioner may require the submission of an affidavit stating such information, and he shall cause a general inspection of the structure or premises to be made.

   (c)   If it is found that a building or other structure is in compliance with the provisions of this Building Code, and all applicable laws, ordinances, rules and regulations thereto, the Building Commissioner shall issue a Certificate of Rental License for such building or structure, which shall contain the following information:

      (1)   The street address or other identifying characteristics of the building or other structure,

      (2)   The name and address of the owner(s) and, if the owner(s) does not reside on the premises, the name and address of the resident in charge of the building or structure, and the name and address of the nonresident agent, if any,

      (3)   The exact nature and extent of the use or occupancy authorized,

      (4)   The period for which such certificate of rental license is issued.

   (d)   Such certificate shall not be valid beyond the last day of December of the calendar year for which the certificate is issued.

   (e)   The Building Commissioner shall have the power to revoke a Certificate of Rental License if:

      (1)   Any statement made by the applicant in connection with the issuance of such certificate is determined to be false,

      (2)   Or if it is determined that a unit(s) or structure or its use are not in compliance with the requirements of this Building Code,

      (3)   Or if the owner(s), agent or person in charge of a unit(s) or structure shall refuse to comply with any provisions of this Building Code.
         (Ord. 9162-14.  Passed 4-21-14.)

**1311.31  TIME FOR COMPLIANCE.**

The owner(s) of an occupied single-family dwelling not occupied by the owner(s) or any multi-family structure requiring a Certificate of Rental License shall apply for such Certificate for the calendar year by December 31st of the prior year, on a form provided by the Building Commissioner, if such structure is proposed to be occupied or will be available for occupancy by January 1st. The owner(s) of a dwelling unit(s) or structure which will be completed and available for occupancy subsequent to January 1st, and which requires Certificates of Rental License and Inspection, shall apply for such certificates as soon as practicable, but in no event shall the unit(s) or structure be occupied in whole or in part until such Certificates have been issued. Failure to apply will be deemed to be a violation of this Building Code and will subject the owner(s) of the unit(s) or structure to the legal action and penalty prescribed herein. No person shall reside in any unit(s) or structure until all required certificates have been issued. The owner(s) of all properties which are offered for rent or lease shall obtain a new Certificate of Rental Inspection each time a new tenant occupies the unit(s) or structure.
(Ord. 9162-14.  Passed 4-21-14.)

**1311.32  CERTIFICATE OF INSPECTION FOR RENTAL UNITS; FEES.**

   (a)   An application for a Certificate of Rental License as described in Section 1311.31 of the Codified Ordinances shall be required for each single or multi-family dwelling unit(s) not occupied by said owner(s).  Applications shall be submitted to the Building Commissioner at the beginning of each calendar year and shall be accompanied by a non-refundable fee in the amount of fifty dollars ($50.00) for a single family dwelling, Seventy-five Dollars ($75.00) for a two-family dwelling or One Hundred Dollars ($ l00.00) for a three-family dwelling structure. For four or more dwelling units this yearly fee shall be Twenty Dollars ($20.00) per each dwelling unit. The deadline to submit yearly rental license applications and corresponding fees is March 31st; payments received after this date will be doubled.

   (b)   All rental properties (or units of) within the City shall be required to receive a new Certificate of Rental Inspection on a biennial basis or at a change in tenant. The fee for a certificate of rental inspection is Fifty Dollars ($50.00) to include an initial inspection and one follow up inspection; if additional inspections are required there will be an additional charge of fifty dollars ($50.00) per inspection.
(Ord. 9162-14.  Passed 4-21-14.)

**1311.33  CHANGES; NEW CERTIFICATES; FEES.**

   (a)   In the event there is a change in the resident or nonresident agent as shown by the Certificate of Rental License, the owner shall notify the Building Commissioner in writing within thirty (30) days of such change, giving the name and address of the new resident agent or nonresident agent. Failure to notify the Building Commissioner within the specified time shall constitute a violation of the Building Code.

   (b)   In the event there is a change in ownership of record, the Certificate of Rental License issued under the provisions of this Building Code to the former owner(s) shall become null and void within thirty (30) days of the recorded date of such change of ownership, and a new certificate of rental license must be obtained by the new owner(s).

   (c)   Any change in the nature or extent of the use or occupancy as specified on the Certificate of Rental License shall render the certificate null and void upon the happening of such change. No such change is permissible under this Building Code unless such change has been approved by the proper City authorities pursuant to this Building Code, and unless a new certificate incorporating such change has been issued. Any such change, without the approval of the proper City authorities will subject the owner(s), operator or agent to the penalties provided in the Building Code.
(Ord. 9162-14.  Passed 4-21-14.)

**1311.34  CODE ADOPTED; COPIES.**

Under provision of Ohio R.C. 731231, there is adopted by the City for the purpose of regulating the construction, alteration, addition, repair, removal, demolition, use location, occupancy and maintenance of one, two and three-family dwellings in the City, certain Codes known as the City of Bedford Dwelling House Code which is comprised of the "Residential Code of Ohio for One, Two and Three-Family Dwellings, 2013 Edition, the International Property Maintenance Code, 2012 Edition, the National Electrical Code, 2011 Edition and the Ohio Plumbing Code, 2011 Edition, save and except such

portions as may be hereinafter deleted, modified or amended.  A complete copy of such Codes shall be kept on file at the office of the Clerk of Council, the office of the Building Commissioner and in the Law Library of the County.  The Clerk of Council shall keep copies available for distribution to the public at cost.

(Ord. 9239-15.  Passed 1-20-15.)

**1311.35  OTHER LAWS AND REGULATIONS NOT AFFECTED.**

  Where the provisions of this Building Code shall conflict with other provisions of the Codified Ordinances of the City of Bedford, the provisions of this code shall control. Where this Code imposes a restriction in conflict with a statute of the State of Ohio upon the same subject, the provisions of the statutes shall control.

(Ord. 7215-00.  Passed 3-6-00.)

**1311.36  DEFINITIONS.**

  (a)  <u>Building/Code Official.</u>  In such Codes where the term "Building Official" or "Code Official" is used, the same shall refer to the Building Commissioner and/or the other official agent or employee designated by the Building Commissioner or City Manager.

(Ord. 7215-00.  Passed 3-6-00.)

  (b)  <u>Board of Building Standards and Appeals.</u>  In such Codes, where the term "Board of Building Standards and Appeals" or "Board of Appeals" are used, the same shall refer to the Board of Building Standards and Appeals of the City of Bedford.

(Ord. 7668-04.  Passed 1-3-05.)

  (c)  <u>City.</u>  In such Codes, when the term "City" is used, the same shall refer to the City of Bedford.

  (d)  <u>City of Bedford.</u>  The name "City of Bedford" is inserted in any and all blank spaces provided in such Codes for the name of the City adopting such Code. Words and terms used in such Code shall be construed to mean the words, terms and titles applicable to the City of Bedford.

(Ord. 7215-00.  Passed 3-6-00.)

Case: 1:16-cv-01076-BYP  Doc #: 21  Filed: 01/30/17  31 of 34.  PageID #: 204

**EXHIBIT G - City of Bedford  Rental Program  Overview**

# RENTAL PROGRAM

**PROPERTY RENTAL**

All rental units, (apartments-residential dwellings-commercial properties), including "land contract" agreements are required to register with the City of Bedford prior to occupancy.  You must schedule an inspection prior to each NEW tenant(s). Please call the Building Department to schedule a rental inspection to be performed by the City of Bedford. Tenants need to be issued a Certificate of Occupancy prior to inhabitation.  The fee for this Inspection is $50.00.

1. Under the code, you are required to call for a rental inspection whenever there is a change in tenant, or a 2-year period, which ever is more frequent. A rental inspection insures to the City that the unit is clean and safe, that both the interior and exterior areas are being well-maintained, and that the tenant is not of a nature that they are inflicting damage that impacts their overall safety or that of other tenants or close neighbors. This inspection should be done while the suite is still empty, or in the case of a 2-year period, you must make the necessary arrangements with the tenant to open their suite to the inspector on a pre-arranged date.

2. The code requires you, as the owner, to make the proper application each and every December for a new Certificate of Occupancy for each rental unit on a site. The application must be made on the City's own application form, and it must contain the name and social security number of every adult person whose name is on the lease or rental agreement.

A yearly fee of **$50 per SINGLE-family, $75 for TWO-family, $100 for THREE-family dwelling** unit is due at that time, or the amount of **$20 per suite in a structure with FOUR or more apartments**.

**Annual fees not collected by the Building Department by March 31st shall be DOUBLED. The owners of all rental properties in the City shall arrange for the City to inspect all units on a bi-annual basis. (Ord. 1311.32) Passed 4-21-14**

.....................
**Downloads**
.....................
Application for
Yearly Rental
License

Application for
Rental
Certificate

Rental
Inspection
Guidelines

**EXHIBIT H - Revenue Derived From Point of Sale Inspection and Rental Inspection Fees**

| YEAR | NUMBER OF RENTAL INSP. | FEE PAID | NUMBER OF POINT OF SALE INS. | FEE PAID |
|------|------------------------|----------|------------------------------|----------|
| 2010 | 571 | $ 12,350.00 | 228 | $ 12,075.00 |
| 2011 | 591 | $ 12,825.00 | 221 | $ 10,975.00 |
| 2012 | 549 | $ 11,250.00 | 227 | $ 11,900.00 |
| 2013 | 480 | $ 11,125.00 | 286 | $ 14,725.00 |
| 2014 | 535 | $ 17,125.00 | 275 | $ 15,200.00 |
| 2015 | 483 | $ 18,475.00 | 284 | $ 15,675.00 |

**EXHIBIT I - April 24, 2015 Certificate of Inspection of the Home of Scott and Stephanie Jowers**

165 CENTER ROAD

CITY OF BEDFORD – BLDG DEPARTMENT
(440) 735-6530

BEDFORD, OHIO 44146

**9433**

# CERTIFICATE OF INSPECTION
### VALID FOR ONE YEAR

| | | | |
|---|---|---|---|
| Address: | 90 Berwyn Dr. | Date: | April 24, 2015 |
| Perm. Parcel No: | 811-34-028 | Use District: | R-2 |
| Present Occupancy: | 1 Dwelling Unit | Permitted Occupancy: | 1 Dwelling Unit |
| Owners Name: | Scott Jowers | Maximum Occupancy: | 6 persons |
| Mail: | same | Property: | Legal Conforming [X] |
| Phone: | | | Legal Non-Conforming [] |
| | | | Illegal [] |

Upon inspection, we find that said property is in need of repairs as follows:

## REQUIRED MAINTENANCE ITEMS:
1. Remove all trash, rubbish, garbage or debris on property, especially in driveway.
2. Roofs must be free of holes, deterioration, leaks or missing shingles and be structurally sound. Remove the existing roofing shingles and install a new roof on the dwelling (and adjacent garage). Use Ice and water Shield where required. Make all necessary repairs to the existing roof. Materials used for repairs must match the existing in type, quality and color. A maximum of two layers of roofing are permitted on roof.

## GARAGE:
1. Roofs must be free of holes, deterioration or leakage. Completely replace the garage roof.
2. Scrape and paint overhead door trim and window trim.

## EXTERIOR ITEMS:
1. Clean, repair or replace all gutters and downspouts as needed on house and garage, also divert 3' away from structure, not to cause a nuisance for neighboring property.
2. Remove the dead trees, including the stump, [Remove the tree stumps] in the rear yard. (2 trees)
3. Repair the damage to the rear lawn using top soil if necessary and seed the area.
4. Trim all trees, bushes and/or shrubbery on the property especially around the garage and along fence.
5. Power wash and re-stain back deck.
6. Locate where driveway drain and sump-pump drains are going and insure that they are draining properly, it might be draining into a drywell and it may need to be replaced.

**NOTICE**: THIS IS A VISUAL INSPECTION. THE CITY ASSUMES NO LIABILITY OR RESPONSIBILITY FOR FAILURE TO REPORT VIOLATIONS THAT MAY EXIST AND MAKES NO GUARANTEE WHATSOEVER THAT FUTURE VIOLATIONS CANNOT, OR WILL NOT OCCUR.

---

# NOTICE
**Violations identified as REQUIRED MAINTENANCE VIOLATIONS, must be corrected and inspected no later than SIX MONTHS from date of transfer (weather permitting). An escrow account shall be established with an amount of money equal to 150% of the value of the work required to correct ALL outstanding violations. Corrections will be the responsibility of the individual named on the Escrow Hold Statement.**

---

| CITY OF BEDFORD BUILDING DEPARTMENT |
|---|
| Inspector: **Robert Brown** |

PERMITS ARE REQUIRED FOR   HVAC, PLUMBING, ELECTRICAL AND MAJOR CARPENTRY.

POINT OF SALES ARE ON-LINE AT
www.bedfordoh.gov (Building Dept.)

Certificate of Inspection
**90 Berwyn Dr.**
Scott Jowers
April 24, 2015

## GENERAL GARAGE ITEMS:
1. Exterior walls must be free of cracks, holes, damaged or missing siding, damaged or missing trims.  Repair vinyl siding corners.
2. Scrape and paint the door, window and/or roof trims on this garage.
3. Make all necessary repairs to the garage window(s) and related frames and trims.

## GENERAL ELECTRICAL ITEMS:
**Note:** New panel no permit or inspection. – Get permits and inspections.

## GENERAL PLUMBING ITEMS:
**Note:** New hot water tank no permit or inspection. – Get permit.
1. Add a vacuum breaker (backflow preventer) at all faucets with threaded hose connections such as laundry tub and hose bibs, but not at washing machine faucets.
2. Install a p-trap under kitchen sink.  S trap not permitted.

## GENERAL HVAC ITEMS:
**Note:** New furnace no permit or inspection.  Have Mr. Fixit come n and get permits and inspections.
1. Insure that the flue piping from the furnace and hot water tank is sealed tightly @ chimney.  Flu piping must be secured by using sheet metal screws or rivet and reattach flue support strap.

## BASEMENT ITEMS:
1. A smoke detector is required:  or 110 v. type for open joist ceiling.
2. Secure sump-pump line to wall.

## BATH ITEMS:
1. Wall and ceiling surfaces must be free of cracks and holes, and properly painted.  Patch and repaint the bathroom walls/ceilings.
2. Caulk base of toilet leaving 1/2" in rear without caulk.
3. Caulk backsplash of sink.
4. Get electric permit for new exhaust fan being installed.

## INTERIOR ITEMS:
1. Patch all minor cracks and holes in interior walls and ceilings and repaint as needed.
2. Install a new smoke detector on all level(s) and in all sleeping rooms.
3. Repair and/or replace all missing or damaged interior doors, door frames, baseboard or any other wood moldings in the house.  Paint or stain to match existing woodwork.
4. Steam clean carpeting throughout.

THE CITY REQUIRES VERIFICATION THAT ALL ASSESSMENTS FROM THE CITY OF BEDFORD FINANCE DEPARTMENT (440-735-6504) HAVE BEEN ACKNOWLEDGED AND WILL BE **PAID**.  VERIFICATION MAY BE ACCOMPLISHED BY SHOWING THAT THE SPECIAL ASSESSMENT AMOUNT DUE IS BEING HELD IN AN ESCROW ACCOUNT.  **THIS IS REQUIRED PRIOR TO ISSUANCE OF THE C/O FOR TITLE TRANSFER**