UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **KENNETH PUND**, *et al* | : | Case No. 16-CV-1076 |
| Plaintiffs, | : | |
| | : | Judge Benita Y. Pearson |
| v. | : | |
| | : | |
| **CITY OF BEDFORD, OHIO**, *et al* | : | **PLAINTIFFS' MOTION FOR CLASS** |
| | : | **CERTIFICATION** |
| Defendants. | : | |
| | : | |
| | : | |
| | : | |

Named Plaintiffs respectfully move the Court, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for an order certifying the following class of plaintiffs in this action against Defendants City of Bedford, Ohio and City of Bedford Building Inspector Rob Brown (collectively, "the Defendants"): All individuals and businesses that have (1) been subjected to Point of Sale Inspection Requirements and Rental Inspection Requirements by the City since September 10, 2014; and (2) paid Point of Sale or rental inspection fees to the City of Bedford. This class definition can easily be divided into two separate sub-classes focusing on Point of Sale Inspection Requirements and Rental Inspection Requirements, as follows:

> **Subclass A**: All individuals and businesses that have (1) been subjected to Point of Sale Inspections since September 10, 2014; and (2) paid Points of Sale Inspection fees to the City of Bedford in conjunction with the aforesaid inspection(s).

> **Subclass B**: All individuals and businesses that have (1) been subjected to rental inspections since September 10, 2014; and (2) paid Rental Inspection fees to the City of Bedford in conjunction with the aforesaid inspection(s).

This class and these subclasses should be certified for the reasons below.

**I. BACKGROUND**

Plaintiffs originally filed this lawsuit seeking facial invalidation of the City of Bedford's Point of Sale Inspection Requirements (warrantless inspections and mandatory fees funding the inspections) on May 4, 2016. In response to Plaintiffs' Motion for Permanent Injunction, filed May 12, 2016, the City indicated on August 5 that it had amended its point-of-sale inspection regulations. Doc 17-1.

1

On January 30, 2017, Plaintiffs amended their Complaint to include the facial and as-applied challenges to the mandatory rental inspection program and to add class allegations (Plaintiffs moved for leave to amend and originally submitted filed their Amended Complaint as an Exhibit on September 1, 2016; the Court granted Leave on January 30, 2017).  Those class allegations culminate in, *inter alia*, the following requests for class-wide relief:

> *Declare that the existence of the Point of Sale Inspection Requirements or Rental Inspection Requirements is an insufficient basis, without more, to obtain a warrant to search a private residential home;*
>
> *Declare that through the imposition of monetary assessments on Plaintiffs and others, precipitated by the City's desire to fund the costs of the Point of Sale Inspection Requirements and Rental Inspection Requirements, Defendant City of Bedford has been and continues to be unjustly enriched;*
>
> *Enjoin Defendants from directly enforcing the warrantless rental search requirement;*
>
> *Mandate the return of Point of Sale Inspection and Rental Inspection fees paid by Plaintiffs and others to Defendant City of Bedford;*
>
> *Certify the Class(es) of Bedford homeowners specified herein and return inspection fees to all class members.*

Through this motion, the aforementioned request for certification made in Plaintiffs' Amended Complaint is now squarely before the Court.

## II.  LAW AND ANALYSIS

In ruling on this Motion, the Court should avoid ruling on the merits, and must instead examine only whether Plaintiffs have satisfied the class action requirements expounded by Fed. R. Civ. P. 23. *Einsen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974).  There are seven such prerequisites to class certification.  The first six address the relationship between the class and named plaintiffs pursuant to Fed. R. Civ. P. 23(a); the seventh addresses the suitability of the claim under Fed. R. Civ. P. 23(b).

*First*, a class certified under Rule 23(a) must be "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537-38 (6th Cir. 2012).  *Second*, the named plaintiff must be a member of the class and "possess the same interest and suffer the same injury as the class." *East Tex.*

2

*Motor Freight Sys. v. Rodriguez*, 431 U.S. 395, 403 (1977).  *Third*, the class must be "so numerous that joinder of all members is impracticable."  *In re American Medical Sys.*, 75 F.3d 1069, 1079 (6th. Cir. 1996).  *Fourth*, the action must raise questions of law and fact common to members of the class.  *Id*. at 1080.  *Fifth*, the claims of the Named Plaintiffs must be typical of the claims of the class.  *Id*. at 1082.  *Sixth*, the representative parties and legal counsel must fairly represent the interests of the class.  *Id*. at 1083.  *Seventh*, the action must fall within one of the categories enumerated in Fed. R. Civ. P. 23(b).  *Id*. at 1079.

Accordingly, this motion should be granted for the following reasons:  (1) the members of the class likely number in the thousands, and involve many claims as low as $50, such that joinder of all members of the class in this action is impracticable; (2) claims of the Named Plaintiffs are typical of the claims of all members of the class described above; (3) there are common questions of law and fact affecting rights of each member of the class, as against Defendants, as is set forth more fully in the Amended Complaint in this action; (4) the prosecution of separate actions by or against individual members of the class described above would create a risk of inconsistent or varying adjudications with respect to individual members of the classes which would establish incompatible standards of conduct for any parties opposing the class; (5) certification is appropriate in this case under Fed. R. Civ. P 23(b)(2) because, by illegally coercing consent to point-of-sale and rental inspection searches and fees, Defendants have "acted on grounds generally applicable to the class and injunctive or declaratory relief is appropriate;" and (6) common questions of law and fact are the only questions presented in this case, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy between the classes described above and the Defendants.

### A.  Plaintiffs meet all Fed. R. Civ. P. 23(a) criteria for class certification.

#### i.      *An identifiable class exists and the definition of the proposed class is unambiguous.*

Fed. R. Civ. P 23 first requires that the class be a "discrete, easily defined class of individuals. *Romberio v. UNUM Provident Corp*., 385 Fed. Appx. at 430-431, citing *Forbush v. J.C. Penney Co, Inc*., 994 F.2d 1101 (5th Cir. 1993).  Members do not need to be identified at the time certification is sought, so

3

long as membership is defined "based on objective criteria so that class members may be identified without individualized fact finding." *Romberio v. UNUM Provident Corp.*, 385 Fed. Appx. 423, 431 (6th Cir. 2009) (citing *Crosby v. Social Sec. Admin.*, 796 F.2d 576, 580 (1st Cir. 1986). In other words, at the time of certification, the members of the class need only be "*identifiable*" – that is, *capable of being identified*. *Warner*, 36 Ohio St. 3d at 96; *Planned Parenthood v. Project Jericho*, 52 Ohio St. 3d 57, 63 (1990). "Identifiability" simply means that the definition of the class must be "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." *Hamilton v. Ohio Savings Bank*, 82 Ohio St. 3d 67, 71-72 (1998) (citation omitted). Thus, the class definition must be precise enough "to permit identification within a reasonable effort." *Hamilton*, at 71-72.

For example, "classes such as 'all poor people' are too amorphous to permit identification with a reasonable effort." *Estate of Reed v. Hadley*, 163 Ohio App. 3d 464, 471 (2005). Likewise, an example of a class that is not easily defined because it is ambiguous is one composed of "all people who have been or may be harassed by police." *Warner v. Waste Management, Inc.*, 36 Ohio St. 3d 91, 96 (1985).

Conversely, classes such as "all persons whose funds were confiscated before conviction under the Hamilton County Pay–to–Stay Program" are sufficiently precise to be identifiable. *Allen v. Leis*, 204 F.R.D. 401, 401–10 (S.D. Ohio 2001). Likewise, in a case involving a class defined as "[p]ersons picketing between the South curb of Louis Avenue and the North curb of Shields Avenue and on both sides of Vine Street from Louis Avenue to Shields Avenue," the Ohio Supreme Court held that this definition sufficiently provided "the means to identify the class" because, although the picketers' identities were not yet known, the court could later determine whether a particular individual was or was not a member of the class:

> Civ. R. 23 does not require a class certification to identify the specific individuals who are members as long as the certification provides a means to identify such persons. The fact that members may be added or dropped during the course of the action is not controlling. The test is whether the means is specified at the time of certification to determine whether a particular individual is a member of the class.

*Planned Parenthood*, 52 Ohio St. 3d at 63. Here, Plaintiffs' proposed class is readily identifiable. As Plaintiffs allege in their Amended Complaint, these individuals are easily identifiable through public

4

records maintained by the City of Bedford. As just one example, the City's point-of-sale inspection application (attached as an exhibit to Plaintiffs' Complaint) requires the property owner undergoing the inspection to identify themselves. Through already-posited discovery requests, Plaintiffs have requested these forms, as well of the identities of those who have been searched and paid fees and those who may have been searched pursuant to an exception of the warrant requirement.[1] Accordingly, the requirement of *identifiableness* is satisfied.

> ii.      *The named representatives are members of the class.*

Fed. R. Civ. P. 23(a) further requires that the named representatives be members of the class. *See East Tex. Motor Freight Sys., supra.,* at 403. The plaintiff must "possess the same interest and suffer the same injury" as the class. *Id.*

Here, the class is as follows: "**All individuals and businesses that have (1) been subjected to Point of Sale Inspection Requirements and Rental Inspection Requirements by the City since September 10, 2014; and (2) paid pre-sale or rental inspection fees to the City of Bedford.**" Plaintiff Kenneth Pund owns 27 properties, consisting of 44 separate addresses, within the city limits of Bedford. Mr. Pund's properties are primarily single family homes, and/or duplexes or triplexes, other than 91 Solon Road, which is a twelve unit apartment building. Mr. Pund has been subjected to at least seven coerced warrantless rental inspections of his properties since September 10, 2014, at a total cost of $550. Plaintiff John Diezic has been subjected to several point of sale inspections by Defendants City of Bedford and Rob Brown. Pursuant to Point of Sale Inspection Requirements, coercively and without a warrant, Defendants searched Mr. Diezic's houses at 261 Columbus Road and 56 Charles Street, both in Bedford, Ohio, in 2015. In 2015, Mr. Diezic paid inspection fees to the City of Bedford, pursuant to the City's point of sale search mandates. Finally, Plaintiffs Scott and Stephanie Jowers own and occupy a home located at 90 Berwyn Drive in Bedford, Ohio. The Jowers' home was searched, without the Jowers' voluntary consent and

---

[1]     See Plaintiffs' January 30, 2016 Discovery Requests to Defendants, attached hereto as Plaintiffs' Exhibit N.

without a warrant, and pursuant to the City's point of sale inspection program, on April 24, 2015. The Jowers were coerced into paying the mandatory inspection fee as well.

Defendants do not appear to contest these facts (nor could they seriously do so). As such, the Named Plaintiffs are clearly members of the proposed class.[2] Thus, Plaintiffs satisfy the second requirement of Fed. R. Civ. P 23.

### iii. *The proposed class is so numerous that joinder of all members is impracticable.*

Fed. R. Civ. P. 23(a)(1) requires "numerosity," in that "the class is so numerous that joinder of all members is impracticable." "'Impracticable' does not mean 'impossible.'" *Iron Workers Local Union No.17 Ins. Fund v. Philip Morris, Inc.*, 182 F.R.D. 523, 531 (N.D. Ohio 1998); *see also Planned Parenthood*, 52 Ohio St. 3d at 64. A trial court is permitted to rely on "general knowledge and common sense" in order to find support for numerosity. *Young v. Nationwide Mut. Ins. Co.,* 693 F.3d 532, 541 (6th Cir. 2012), quoting *Garrision v. Asotin Cnty.,* 251 F.R.D. 566, 569 (E.D. Wash. 2008). In *Iron Workers*, the Court held the difficulty of joining 100 nonmember plaintiffs to the case outweighed any convenience arising from plaintiffs living in the same state. 182 F.R.D. at 531. Courts to have summarized the law on numerosity have established "the 'rule of thumb' that forty plaintiffs is enough to make joinder impracticable." *Allen,* supra., citing *Richter v. Bowen,* 669 F.Supp. 275, 281 n. 4 (N.D.Iowa 1987).

Here, the City of Bedford performs as many as 284 point-of-sale inspections and 535 rental inspections every year, meaning the class likely consists of over 1,000 different property owners. This is more than sufficient to support finding numerosity.

Moreover, joinder is impracticable when the monetary injuries suffered by class members are less than the cost of litigating a constitutional challenge. See *Putnam v. Davies*, 169 F.R.D. 89, 93 (S.D. Ohio 1996). The class in *Putnam* stood to recover the cost of renting a car for a few days - - hardly an amount great enough, the Court acknowledged, to warrant individualized lawsuits. *Id*. Here, members of the proposed class were subject to fees as low as $50 per inspection. This amount is below the filing fees alone

---

[2] *See Plaintiffs' Amended Complaint at paragraphs 7-25*.

in state and federal courts. As the Court noted in *Putnam*, "the financial disincentives to initiating a lawsuit such as this one create a significant hardship for prospective plaintiffs and warrant the conclusion that the questioned statutes would go unchallenged were a class not certified." *Putnam*, 169 F.R.D. at 93, quoting *Kutschbach v. Davies*, 885 F. Supp. 1079, 1084 (S.D. Ohio 1995). Consequently, the class is sufficiently numerous, and joinder of all individually aggrieved parties is impractical.

> iv. *Questions of law and fact are common to the class.*

Fed. R. Civ. P. 23(a)(2) requires the presence of "questions of law or fact common to the class." If there is a common nucleus of operative facts, or a common liability issue, the rule is satisfied. *Marks v. C.P. Chemical Co.* (1987), 31 Ohio St. 3d 200, 202. Even one common issue of law or fact suffices to satisfy "commonality." *Id.*; see also *In re Whirlpool Corp. Front-Loading Washer Products Liab. Litig.*, Case No. 10-4188, 2013 WL 3746205, at p. 10 (6th Cir., July 18, 2013) ("there need be only one common question to certify a class"); *Sterling v. Velsicol Chemical Corp.,* 855 F.2d 1188, 1197 (6th Cir.1988)("[T]he mere fact that questions peculiar to each individual member of the class remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible."). As such, in *Allen,* the Court concluded that "given the fact that every pretrial detainee is subject to deprivation of the book-in-fee upon arrival, there is at least one common question of law and fact at issue. The Court therefore finds Plaintiff's argument to be persuasive and concludes that the requirement of commonality has been met." *Allen,* supra., at 407.

Here, there are no individualized issues unique to the Named Plaintiffs. Instead, Plaintiffs contend that the City of Bedford's Point-of-Sale and Rental Inspection Requirements are unconstitutional on their face, i.e. as applied to all Bedford property owners subjected to such inspections. Further, Plaintiffs contend that the law of restitution demands that funds collected to underwrite the unconstitutional inspections must be returned to those who paid them to the City. Finally, have sought to enjoin the City's

7

warrantless searches as against all, and further, to enjoin Defendants from misappropriating or misapplying class-member property owners' yet-to-be-returned funds.[3]

None of these claims feature issues unique to Plaintiffs, their properties, or the City of Bedford's conduct towards Plaintiffs and their properties - - all facts thus far confirm that the City enforced these inspection requirements against Plaintiffs in accordance with City policy, and therefore in the same manner as enforced against the remainder of the class.

This reality is true not just as a matter of fact, but also as a matter of law. The Supreme Court affirms that "[w]hen a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given. This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority." *Bumper v. North Carolina*, 391 U.S. 543 (1968); see also *State v. Taylor* 77 Ohio App.3d 223, at 226 (1991)("when the state attempts to justify a warrantless search on the basis of consent, the state must demonstrate that the consent was freely and voluntarily given and not the result of coercion, express or implied.")

Applying these principles to a search requirement identical to the one *here*, the Ohio Supreme Court explained, "A valid consent involves a waiver of constitutional rights and cannot be lightly inferred; hence, it must be 'voluntary and uncoerced, either physically or psychologically.'" *Wilson v. City of Cincinnati,* 46 Ohio St.2d 138, at 141 (1976), citing *United States v. Fike* (5th Cir., 1972), 449 F.2d 191, 193. Therefore, "where a municipal ordinance requires the owner of real property to tender a certificate of housing inspection to a prospective buyer, and such certificate may be obtained only by allowing a warrantless inspection of the property, the imposition of a criminal penalty upon the owner's *failure to tender the certificate* [separate and apart from his refusal to permit the inspection] violates the owner's rights under the Fourth Amendment to the United States Constitution." *Id*. Thus, the inspections and inspection fees of each member of the class were *coercively* extracted, *unless* the City can demonstrate otherwise as to certain individuals (those individuals may then be excluded from the class). These legal

---

[3] *See Plaintiffs' Amended Complaint, Prayer For Relief, paragraphs 5-11.*

8

issues exist for all members of the proposed class, and therefore Plaintiffs easily meet the commonality requirement

### v. *The claims of the Named Plaintiff are typical of the claims of the rest of the class.*

Pursuant to Fed. R. Civ. P. 23(a)(3), typicality exists if the representative's claim arises from the same practice that gave rise to the claims of other class members and if his or her claims and the other class members' claims are based on the same legal theory. *Baughman v. State Farm Mut. Auto. Ins. Co.*, 88 Ohio St.3d 480, 485 (2000). And "a representative's claim need not always involve the same facts or law to be typical, provided there is a common element of fact or law." *Allen,* supra. Rather, "[t]he typicality requirement ensures that the representative's interests will be aligned with those of the represented group and that the named plaintiff will also advance the interests of the class members." *Id,* citing *In re AMS,* 75 F.3d at 1082 ("[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.")

Here, the Named Plaintiffs' claims meet the typicality requirement for the same reasons that they meet the commonality requirement discussed directly above: they bring a facial Fourth Amendment claim and restitution claim that is by no means unique to them, their property, or the City's treatment of them or their property. Plaintiffs' legal theory applies with equal force to *all* City of Bedford Point-of-Sale and Rental Inspections.[4] In proving their claims, the Named Plaintiffs prove the claims of members of the proposed class as well, and the "typicality" requirement is therefore satisfied.

### vi. *The Named Plaintiff and legal counsel will fairly and adequately protect the interests of the class.*

Fed. R. Civ. P. 23(a)(4) requires that the class representatives "will fairly and adequately protect the interests of the class." This "adequacy" prerequisite is divided into two sub-parts: (1) adequacy of the

---

[4] *See Plaintiffs' Amended Complaint, Prayer for Relief, paragraphs 5-11.*

9

named plaintiffs; and (2) adequacy of counsel for the putative class.  *Warner*, 36 Ohio St. 3d at 98.  Both sub-parts of the Civ. R. 23(a)(4) adequacy prerequisite are satisfied here.

First, a class representative is adequate "so long as his interest is not antagonistic to that of other class members."  *Warner*, 36 Ohio St. 3d at 98.  Here, the Named Plaintiffs' individual claims are representative and typical of those of the class.  Indeed, the Plaintiffs' Amended Complaint focuses entirely on class-wide claims.

The Named Plaintiffs are committed to the vigorous prosecution of this action on behalf of all members of the class, as proven by their willingness to risk criminal prosecution and/or the loss of their property rights as a consequence of challenging the regulations.  Their commitment is further evidenced by the fact that they have sought declaratory and injunctive relief for *all* affected by the Point of Sale and Rental Inspection Requirements, rather than self-gain.  Finally, Named Plaintiffs are representative of the class because they have owned homes and rental properties in Bedford and are intent on continuing to make properties available for both sale and rent in Bedford in the future.

Named Plaintiff's legal counsel is likewise situated: the 1851 Center for Constitutional Law is a public charity and public interest law firm, organized under Section 501(c)(3) of the Internal Revenue Code, with a mission of protecting and advancing the constitutional rights of Ohioans.  As such, the 1851 Center's mission is not served by simply advancing the Named Plaintiffs' narrow pecuniary interests (were they divergent from those of the proposed class).  And the 1851 Center is prohibited by law from factoring any pecuniary benefit to it or its clients into any litigation decision.  Moreover, the 1851 Center has vindicated the property rights and Fourth Amendment rights of many Ohioans, each time carefully conducting the litigation so as to obtain broad relief.  *See, e.g.*, *Baker v. City of Portsmouth*, No. 1:14cv512 (S.D. Ohio Sep. 30, 2015); *Liberty Coins v. Goodman,* No. 2:12-CV-998 (S.D. Ohio May 31, 2016).  Likewise, the 1851 Center has more than adequately represented larger and more complex classes of taxpayers.  See *Sanborn v. Board of Education for the Indian Hill Ex Village School District* (Hamilton Co. Case No. A1200126, class action recovery of unlawful property taxes).


Thus, Fed. R. Civ. P 23(a)(2) is satisfied here. And with that, each of the Fed. R. Civ. P. 23(a) factors is satisfied beyond dispute.

### B. Plaintiffs meet at least one of the Fed. R. Civ. P. 23(b) requirements for class certification.

In addition to the prerequisite set forth in Fed. R. Civ. P. 23(a), a party seeking class certification must also satisfy *just one* of the requirements listed in Fed. R. Civ. P. 23(b). That section provides as follows:

> **(b) Types of Class Actions**. A class action may be maintained if Rule 23(a) is satisfied and if:
>
> **(1) prosecuting separate actions by or against individual class members would create a risk of:**
> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
>
> **(2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole;** *or*
>
> **(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:**
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; *and*
> (D) the likely difficulties in managing a class action.

A class action is proper in this case under each of these subsections of Fed. R. Civ. P. 23(b). Plaintiffs and their proposed class meet not just one, but *each and every one* of these requirements.

### i. *This case qualifies for class certification under Fed. R. Civ. P. 23(b)(1).*

Separate litigation in multiple cases made by the numerous members of the class presents the risk that various rulings could create incompatible standards of conduct for Defendants. Fed. R. Civ. P. 23(b)(1)(A) is triggered when "the party is obliged by law to treat the members of the class alike (a utility

11

acting toward customers; a government imposing a tax)…" *Amchem Prods. v. Windsor*, 521 U.S. 591, 614 (1997). The Ohio Supreme Court has also provided examples when interpreting a parallel provision of state law:

> This subsection applies, for example, to situations where a class may challenge the validity of a lease, the constitutionality of a term within a municipal bond or a voting rights statute. In the first example, if separate actions were pursued, a lease could be found valid in one action but invalid in another. This would lead to incompatible standards of conduct for the defendant. In the second example, the terms in the bond could be found valid and enforceable for some people but unenforceable for others in separate lawsuits, thereby resulting in incompatible standards of conduct. The same could easily occur if separate actions in a voting registration dispute resulted in different verdicts. The rationale of the rule, therefore, is to avoid creating judgments calling for incompatible standards of conduct.

*Warner*, supra., at 95 n. 2. Here, there are hundreds, if not thousands, of property owners who may receive inconsistent Fourth Amendment protection and inconsistent amounts of restitution (if any at all) if forced to litigate their claims separately. Constitutional protections are a quintessential example of an obligation to treat members of a class alike. Moreover, because the pre-sale and rental inspection fees were collected uniformly (much like a tax), all parties should receive uniform relief.

Next, this action falls within the category of "adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Most evidently, if Plaintiffs prevail on their facial Fourth Amendment challenge, this decision will have the impact of enjoining the Rental Inspections Requirements for all present and future renters of Bedford properties while affirming that the Fourth Amendment rights of those previously subject to Point-of-Sale and Rental Inspection Requirements were violated.

### ii.     *This case qualifies for class certification under Fed. R. Civ. P. 23(b)(2).*

Even if Plaintiffs' proposed class were not certifiable pursuant to Rule 23(b)(1), it is certifiable pursuant to Rule 23(b)(2). The key to the (b)(2) class is "the indivisible nature of the injunctive or declaratory remedy warranted--the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart Stores, Inc. v. Dukes*, 564

12

U.S. 338, 360-61 (2011). Thus, to qualify for certification as a "Rule 23(b)(2)" class, the class must demonstrate that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." *Allen,* supra., at 408. "Civil rights cases against parties charged with unlawful, class-based discrimination are prime examples" of what (b)(2) is meant to capture. *Wal-Mart Stores,* supra., citing *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613. (1997).

The above passages directly apply to this action. Plaintiffs seek declaratory and equitable relief, as against the City's ordinances, applicable to all current and past Bedford homeowners. This is more concisely demonstrated by the first four requests in the Prayer for Relief in Plaintiffs' Amended Complaint:

> *(1) Declare that the City of Bedford's Point of Sale and Rental Search Requirements, as existed on May 4, 2016, authorizing warrantless searches without probable cause, is unconstitutional, both facially and as applied to Plaintiffs;*
>
> *(2) Declare that provisions of the Point of Sale and Rental Search Requirements schemes wholly reliant upon the unconstitutional search, including but not limited to the monetary extraction for inspections and the permit requirement, violated Plaintiffs' Fourth Amendment rights;*
>
> *(3) Declare that the existence of the Point of Sale or Rental Search Scheme is an insufficient basis, without more, to obtain a warrant to search a private residential home;*
>
> *(4) Declare that through the imposition of monetary assessments on Plaintiffs and others, precipitated by the City's desire to fund the costs of the Point of Sale and Rental Search Requirements, Defendant City of Bedford has been and continues to be unjustly enriched;*

Named Plaintiffs here are asserting rights and entitlements common to all proposed class members: the result of this Court's order on Plaintiffs' request for declaratory and injunctive relief will be to bar the City from imposing unconstitutional searches and exactions on *all* residents, not just the named Plaintiffs. Conversely, Plaintiffs maintain no unique entitlement to relief. Meanwhile, the fact that Plaintiffs seek restitution for themselves and the class does not prevent certification as a "Rule 23(b)(2)" class. *Allen,* supra., at 409, citing *Broussard v. Foti,* No. 00–2318, 2001 WL 699525 (E.D.La.2001); *Ballard v. Equifax Check Services Inc.,* 186 F.R.D. 589 (E.D.Cal.1999); *Coleman v. Pension Benefit Guaranty Corp.,* 196 F.R.D. 193 (D.D.C.2000); *Mertens v. Hewitt Associates,* 508 U.S. 248, 255 (1993); *Golden v. Kelsey–Hayes Company,* 73 F.3d 648, 661 (1996), *Tull v. United States,* 481 U.S. 412, 424, 107 S.Ct. 1831, 95

L.Ed.2d 365 (1987); *Equal Employment Opportunity Commission v. Detroit Edison Company,* 515 F.2d 301, 308 (6th Cir. 1975) ("restitution is an equitable remedy")(overruled on other grounds).  As such, the requirements of Fed. R. Civ. P. 23(b)(2) are satisfied.

### iii.   *This case qualifies for class certification under Fed. R. Civ. P. 23(b)(3).*

Even if not certified pursuant to Rule 23(b)(1) or (b)(2), Plaintiffs proposed class must be certified pursuant to Rule 23(b)(3).  There are two requirements to certifying a class under Fed. R. Civ. P. 23(b)(3): (1) Common questions must "predominate over any questions affecting only individual members"; and (2) class resolution must be "superior to other available methods for the fair and efficient adjudication of the controversy." *Amchem Prods. v. Windsor*, 521 U.S. 591, 615 (1997).

"Common issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir. 2008).  Thus, the predominance requirement of Fed. R. Civ. P. 23(b)(3) is satisfied where the common issues of law or fact "represent a significant aspect of the case" and are "able to be resolved for all members of the class in a single adjudication."  *Schmidt v. AVCO Corp.* (1984), 15 Ohio St. 3d 310, 313.

Here, Plaintiffs satisfy the requirement of "commonality" for the reasons articulated in Section (A)(iv) of this Motion, as questions of law and fact are common to the class.

Meanwhile, the "superiority" requirement of Civ. R. 23(b)(3) is satisfied when "a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results."  *Amchem Prods. v. Windsor*, 521 U.S. 591, 615 (1997) (citations omitted).  These concerns support finding superiority when "[r]epeatedly litigating the same issues in individual suits would produce duplicate efforts, unnecessarily increase litigation costs, impose an unwarranted burden on this Court and other courts, and create a risk of inconsistent results." *In re Foundry Resins Antitrust Litig.*, 242 F.R.D. 393, 411-12 (S.D. Ohio 2007).

Here, class certification will permit class-wide adjudication of all issues bearing upon Plaintiffs' claims. A class action is "the ideal means of adjudicating in a single proceeding what otherwise would become three thousand to six thousand separate administrative actions." *Ojalvo*, 12 Ohio St. 3d at 235. Similar benefits will accrue to Defendants through avoidance of multiple suits and multiple judicial rulings because "[c]lass action treatment would eliminate any potential danger of varying or inconsistent judgments." *Cope v. Metropolitan Life Ins. Co.*, 182 Ohio St. 3d 426, 431 (1998). Furthermore, "Given the small amount of money of which Defendants deprived each individual class member, it is unlikely that any one individual plaintiff would find it useful to pursue litigation. Thus, a class action is perhaps the only and clearly the superior method for pursuing a fair and efficient litigation of the controversy at hand." *Allen,* supra., at 410, citing *Coleman v. County of Kane,* 196 F.R.D. 505 (N.D.Ill.2000)(certification of class to recover $11 "sheriff's fee."). Indeed, if class members were required to pursue their legal claims individually, the potential for recovery would be outweighed by the relatively high cost of filing fees and the unlikelihood of the economical retention of counsel for claims usually amounting to $50. Presenting such claims in a class action will ensure that there is a forum for the vindication of rights that is economical to pursue. Therefore, this case is clearly one in which "a class action is superior to other available methods for the fair and efficient adjudication of the controversy," and it thus satisfies the superiority requirement of Fed. R. Civ. P. 23(b)(3).

### III. CONCLUSION

For the aforementioned reasons, Named Plaintiffs request this Court to grant their Motion for Class Certification. As discussed above, all requirements of Federal Rule of Civil Procedure 23 have been satisfied, and the goal of judicial economy will be well-served by resolving these claims in a single action, rather than encouraging many later duplicative actions.

Respectfully submitted,

*/s/ Maurice A. Thompson*
Maurice A. Thompson (0078548)
1851 Center for Constitutional Law
122 E. Main Street
Columbus, Ohio 43215
Tel: (614) 340-9817
*MThompson@OhioConstitution.org*

Sheldon Berns (0000140)
Gary Werner (0070591)
Berns, Ockner & Greenberger, LLC
3733 Park East Drive, Suite 200
Beachwood, Ohio 44122
Tel: (216) 831-8838, Ext. 205
Fax: (216) 464-4489
*SBerns@BernsOckner.com*
*GWerner@BernsOckner.com*

Christopher Finney (0038998)
Finney Law Firm, LLC
4270 Ivy Pointe Boulevard, Suite 225
Cincinnati, Ohio 45245
(513) 943-6660 phone
(513) 943-6669 fax
*Chris @FinneyLawFirm.com*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served on Defendants' Counsel on February 17, 2017.

Respectfully submitted,
/s/ Maurice A. Thompson
Maurice A. Thompson (0078548)

16