UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **KENNETH PUND,** *et al.* | ) Case No. 16-CV-1076 |
| | ) |
| **Plaintiffs,** | ) Judge Benita Y. Pearson |
| | ) |
| v. | ) **DEFENDANTS' BRIEF IN** |
| | ) **OPPOSITION TO PLAINTIFFS'** |
| **CITY OF BEDFORD, OHIO,** *et al.* | ) **MOTION FOR PARTIAL** |
| | ) **SUMMARY JUDGMENT** |
| **Defendants.** | ) |
| | ) |

Now come Defendants, the City of Bedford ("Bedford"), Rob Brown and Richard Hickman, by and through undersigned counsel, and submits this Brief in Opposition to Plaintiffs' Motion for Partial Summary Judgment. Genuine issues of material fact exist preventing this Court from granting summary judgment in favor of Plaintiffs on any claim moved upon in Plaintiffs' motion. Plaintiffs' request for declaratory judgment on the constitutionality of Bedford's Point of Sale Ordinance and Rental Inspection Ordinance is moot. Additionally, Bedford's Rental Inspection Ordinance is constitutional both facially and as applied to Plaintiffs. Finally, Bedford has not been unjustly enriched through operation of the point of sale inspections or the rental inspections. Thus, Plaintiffs are not entitled to equitable relief in the form of restitution. For these reasons, which are more adequately addressed below, this Court should deny Plaintiffs' Motion for Partial Summary Judgment.

**I.   STATEMENT OF THE CASE**

Plaintiffs filed this action on May 4, 2016 followed by a Motion for Temporary Restraining Order and Preliminary Injunction and Memorandum in Support on May 5, 2016.[1] On May 12,

---

[1] *See Docket of Case. No. 16-CV-1076.*

2016, Plaintiffs and Bedford agreed to a temporary restraining order and a preliminary injunction, agreed to convert Plaintiffs' motion to a Motion for Permanent Injunction, and agreed to a consolidated briefing schedule.[2]

Within a week of the filing of the Complaint, Bedford agreed to stipulate to a restraining order, rather than utilizing this Court's time and resources in conducting a hearing. As a result of the temporary restraining order, Bedford voluntarily agreed to cease its point of sale inspections throughout the city.

On August 1, 2016, at a meeting of the Bedford City Council, Bedford amended Section 1311.18 of the Bedford Building Code ("Point of Sale Ordinance"), which Plaintiffs allege violated the Fourth Amendment. The amended section of the code now includes a process for administrative warrants, and eliminates any criminal penalty for not consenting to a point of sale inspection.[3]

On January 30, 2017, Plaintiffs filed their First Amended Complaint.[4] Subsequently, Plaintiff Pund filed a Motion for Temporary Restraining Order and Preliminary Injunction on February 10, 2017, seeking to enjoin Bedford's "unconstitutional" rental inspection requirements.[5] However, on October 3, 2016, almost four months prior to Plaintiffs filing their Amended Complaint, the Bedford City Counsel amended Section 1311.29 ("Rental Inspection Ordinance"). This amendment included a process for administrative warrants and removed criminal penalties for a landlord's refusal to consent to inspection. Notably, each version of the Rental Inspection Ordinance did not include a criminal penalty if a tenant refused an rental inspection. On February

---

[2] *See id.*
[3] *See Exhibit 1 attached to Exhibit A at Section (f).*
[4] *See Docket of Case No. 16-CV-1076.*
[5] *See Pund's Motion for Temporary Restraining Order and Preliminary Injunction.*

14, 2017, this Court denied Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction as it was originally put before the Court.[6]

## II. LAW AND ARGUMENT

### A. Plaintiffs' Request for Declaratory Judgment on the Constitutionality of Bedford's Point of Sale Inspections and Rental Inspections as of May 4, 2016 Is Moot.

Plaintiffs' Motion for Summary Judgment requests that this Court declare Bedford's Point of Sale Inspection Requirements and Rental Inspection Requirements, as they existed on May 4, 2016, unconstitutional both facially and as applied to Plaintiffs.[7] Additionally, Plaintiffs request this Court declare that the provisions of the original Point of Sale Inspection Requirements and Rental Inspection Requirements violated Plaintiffs' Fourth Amendment Rights.[8] However, the Sixth Circuit has held that constitutional challenges are rendered moot when amended and are subsequently constitutionally compliant.[9]

In *Brandywine, Inc. v. City of Richmond* (2004), 359 F.3d 830, the Sixth Circuit affirmed the district court's dismissal of a constitutional challenge to the City of Richmond's zoning scheme on the basis that the plaintiffs' requests for declaratory relief were rendered moot.[10] In *Brandywine*, the City of Richmond revoked plaintiffs' license to operate their adult bookstore based upon Richmond's zoning ordinance.[11] The license revocation resulted in plaintiffs' bookstore closing.[12] Plaintiffs then brought their action for declaratory, injunctive, and monetary relief, alleging the

---

[6] *See Docket of Case No. 16-CV-1076.*
[7] *See Plaintiffs' Motion for Summary Judgment*, p. 1.
[8] *See id.*
[9] *Kentucky Right to Life v. Terry* (1997), 108 F.3d 637, 644-45.
[10] *See Brandywine, Inc. v. City of Richmond* (2004), 359 F.3d 830, generally.
[11] *See id.* at 833.
[12] *See id.*

3

zoning ordinance restricted the exercise of their First Amendment Rights.[13] Plaintiffs requested a declaration that the City of Richmond's zoning ordinance was unconstitutional.[14]

Less than one month after plaintiffs filed their action, the City of Richmond amended its ordinance, which plaintiffs did not subsequently challenge as unconstitutional.[15] The district court held that based upon this amendment, plaintiffs' challenge to the original zoning ordinance was moot.[16]

The plaintiffs appealed the district court's dismissal of their constitutional challenge, and the Sixth Circuit affirmed the district court's holding.[17] "Claims become moot 'when the issues presented are no longer 'live' or parties lack a legally cognizable interest in the outcome.'"[18] "Plaintiffs ask this court to declare unconstitutional the zoning scheme as it existed when their license was revoked and to enjoin Richmond from enforcing that scheme. We can neither declare unconstitutional nor enjoin the enforcement of such a provision that is no longer in effect."[19]

It is important to note that in *Brandywine*, as in the present case, plaintiffs did bring claims for both declaratory relief and monetary damages. The Sixth Circuit held that the declaratory relief was rendered moot by the amendment of the zoning ordinance even though there was still a claim for monetary damages.[20] The court stated that the plaintiffs' damages were not properly dismissed as moot, since "an award of monetary damages would compensate plaintiffs for the loss of the opportunity to engage in protected expression caused by the enforcement of the zoning scheme."[21]

---

[13] *See id.*
[14] *See id.*
[15] *See id.*
[16] *See id.* at 834.
[17] *See id.* at 835.
[18] *See id.* at 836, citing *County of Los Angeles v. Davis* (1975), 440 U.S. 625, 631.
[19] *See id.*
[20] *See id.*, generally.
[21] *See id*, at 836.

4

Ultimately, plaintiffs claim for monetary damages was dismissed for failure to state a claim.[22] However, the Sixth Circuit clearly found that the constitutional challenge to the municipal zoning ordinance could be rendered moot due to the ordinance's amendment despite the fact that plaintiffs also alleged monetary damages.

In the present case, the filing of this action was Bedford's first notice of any complaint concerning the implementation of the point of sale inspections. Within a week following the filing of the Complaint, Bedford agreed to a temporary restraining order, voluntarily suspending these inspections. Then, even though the Bedford City Council was in summer session, Bedford proposed, and its City Council passed, an amended ordinance on an emergency basis. By virtue of this amendment, the ordinance now contains a process for seeking a warrant when a property owner does not consent to a pre-sale inspection and removes any criminal or civil penalties for failing to comply with the pre-sale inspections. As a result, the need for declaratory relief as it pertains to the Point of Sale Ordinance is moot.

Additionally, Bedford amended its Rental Inspection Ordinance nearly four months prior to Plaintiffs filing their Amended Complaint, which only then included a constitutional challenge to the Rental Inspection Ordinance. Bedford contends in this brief that rental inspection which are the subject of Plaintiffs' request for restitution were not unconstitutional. However, Bedford amended its ordinance in a dearth of caution and to more completely clarify its process for constitutional rental inspections. The amended ordinance contains a process for seeking a warrant when a tenant/landlord does not consent to a rental inspection and removes any criminal or civil penalties assessed against the landlord for failing to comply with the rental inspections. As a result, the need for declaratory relief as it pertains to the Rental Inspection Ordinance is also moot.

---

[22] *See id.*

5

Plaintiffs have previously made the argument that "cases and claims are not rendered moot where a governmental actor changes its policy, so long as a claim for damages or restitution is made."[23] However as shown above in *Brandywine*, this statement is untrue. In that case, the Sixth Circuit determined that a declaration that a municipal zoning ordinance was unconstitutional was moot even though the plaintiffs in that case had also request monetary damages.

Additionally, Plaintiffs have cited *Ermold v. Davis* in support of their claim that their request for declaratory relief is not moot.[24] However, *Ermold*, is distinguishable since the plaintiffs in that case did not challenge the constitutionality of Kentucky's definition of marriage but rather the conduct of the Rowan County Clerk after the Governor of Kentucky had ordered all county clerks to begin issuing same-sex marriage licenses.[25] An action seeking declaratory and injunctive relief from Kentucky's definition of marriage was filed one week prior to *Ermold*.[26] In reaction to this previously filed case, Kentucky Governor Matthew Bevin signed an executive order to amend Kentucky's definition of marriage.[27] Once this executive order was signed, all constitutional challenges to Kentucky's definition of marriage were rendered moot.[28]

However, it was determined that the Governor's executive order did not render moot the request made by the plaintiffs in *Ermold* which sought monetary relief based upon Kim Davis's conduct both personally and as the Clerk of Rowan County.[29] The case preceding *Ermold* that challenged the Kentucky Constitution's definition of marriage was rendered moot by the Governor's executive order; however, Kim Davis' conduct, which is at the center of *Ermold*,

---

[23] *See Plaintiffs' Notice of Supplemental Authority*, p. 1.
[24] *See id.*
[25] *See Ermold v. Davis* (2017), 2017 WL 1573313, generally.
[26] *See id.* at 717.
[27] *See id.*
[28] *See id.*
[29] *See id.* at 716.

6

denying the *Ermold* plaintiffs a marriage license after being ordered to issue same-sex marriage licenses was still a "live" issue to be litigated.

Similarly, in the present matter, any constitutional challenges to Bedford's Point of Sale Ordinance and Rental Inspection Ordinance as they existed on May 4, 2016 are rendered moot by Bedford's amendment to those ordinances despite the fact that Plaintiffs request monetary restitution for inspection fees that were paid in relation to inspections that Plaintiffs contend were unconstitutional. Plaintiffs claim for restitution stems from the conduct of inspectors not from the constitutionality of the ordinances themselves.

Also of note, Plaintiffs seek restitution under a theory of unjust enrichment, a theory which does not require a finding that the defendant has acted improperly.[30] Based upon this theory of recovery, Plaintiffs' assertion that their request for declaratory relief has not been rendered moot due to their requests for monetary relief fails entirely. Accordingly, this Court should not grant summary judgment on Plaintiffs' declaratory claims of municipal ordinance unconstitutionality.

**B. Plaintiffs Are Not Entitled To Summary Judgment As Evidence Demonstrates Bedford's Rental Inspection Program Is Not Unconstitutional, Both Facially And As Applied To Plaintiffs.**

Plaintiffs argue in their Motion for Partial Summary Judgment that Bedford's Rental Inspection Ordinance, contained in Sections 1311.29-1311.36 of Bedford's Codified Ordinances is unconstitutional both facially and as applied to Plaintiffs as it violates Plaintiffs' Fourth Amendment rights. An analysis, however, of the Rental Inspection Ordinance reveals that it is constitutional, both facially and as applied to Plaintiffs.

The Rental Inspection Ordinance imposes duties upon the owners of dwelling units or structures leased or rented for occupancy in the City of Bedford. It requires that owners or their

---

[30] *See Advantage Renovations, Inc. v. Maui Sands Resort, Co., LLC*, 2012-Ohio-1866 at *P33 (6th Dist., Apr. 27, 2012).

agents must apply for and obtain a Certificate of Rental License.[31] The Rental Inspection Ordinance states that single or multi-family dwelling units not occupied by the owner are subject to inspection by Bedford's officials.[32] Failure to apply for Certificate of Rental License, which triggers the inspection, would subject the *owner* to legal action or penalty as a violation of Bedford's Building Code.[33] There are no requirements for a tenant to comply or participate in the Rental Inspection Ordinance, and more importantly, no penalties or legal action that could be imposed on tenants of these properties.

Plaintiffs argue at length in their Motion for Partial Summary Judgment that the Rental Inspection Ordinance is unconstitutional as it imposes penalties on non-compliant owners, and subjects the owners to warrantless searches in violation of the Fourth Amendment. Bedford's building inspectors, however, routinely obtain consent from the tenant occupying the unit or dwelling prior to making the inspection.[34] In fact, Bedford has never encountered a situation where a tenant has not consented to an inspector's entry into a dwelling or unit subject to the Rental Inspection Ordinance.[35] Tenants, having a greater privacy right than owners of the dwelling or unit, remove any constitutional issues by virtue of their consent.

Unlike the tenants who reside in the dwellings to be inspected by Bedford, the Plaintiffs have a diminished right of privacy in the premises they rent to others. These Plaintiffs do not live in the dwellings or units, store items or otherwise reside there. In contrast, Plaintiffs' rental units are the tenants' homes, not the Plaintiff landlords'. The "capacity to claim the protection of the Fourth Amendment depends . . . upon whether the person who claims the protection of the

---

[31] Bedford Codified Ordinance 1131.29, 1131.31, attached as Exhibit F to Plaintiffs' First Amended Complaint [Doc. #21, Page Id. #202].
[32] *See* Ordinance 1311.31 and 1311.32.
[33] *See* Ordinance 1311.31 (Emphasis added).
[34] Affidavit of Calvin Beverly at paragraph 6 (attached as Exhibit B).
[35] *Id.*

Amendment has a legitimate expectation of privacy in the invaded place."[36] The Plaintiff landlords do not have a reasonable expectation of privacy in the dwellings to be inspected by Bedford solely due to their ownership of the apartment or dwelling.

Persuasive precedent from outside the Sixth Circuit Court of Appeals holds "that a landlord does not have a reasonable expectation of privacy with respect to individual apartments leased to third parties, simply on the basis that the landlord owns the apartments."[37]  Because the landlord turned over possession and use of an apartment to a tenant, the landlord does not have a protected, reasonable expectation of privacy to the rented apartment.[38]  Plaintiffs' tenants have a greater expectation of privacy, and their Fourth Amendment rights are the paramount consideration.

The evidence demonstrated by Bedford is that in all situations where a tenant occupies the premises, Bedford obtains an uncoerced consent to inspect the dwelling.[39]  "Where a tenant has consented to an inspection by a housing inspector of the common areas of a building in the tenant's leased premises, the landlord's Fourth Amendment rights are not violated."[40]  Case law from the Second Circuit Court of Appeals demonstrates a well-established rule that "consent to a search by one with access to the area searched, and either common authority over it, a substantial interest in it or permission to exercise that access, express or implied, alone validates the search."[41]  When a tenant permits an inspector into the premises and consents to the inspection, there is no deprivation of the landlord's rights against unreasonable searches.

---

[36] *Rakas v. Illinois*, 439 U.S. 128, 143 (1978).  See also *Minnesota v. Carter*, 525 U.S. 83, 88-89 (1988), *Rawlings v. Kentucky*, 448 U.S. 98, 106 (1980).
[37] *Marcavage v. Borough of Landsdown*, 826 F. Supp. 2d 732, 740.
[38] See *Mangino, Inc. v. Vill. of Patchogue*, 739 F. Supp. 2d 204, 234 (E.D.N.Y., 2010), *Reversed in Part on Reconsideration*, 814 F.Supp. 2d 242 (E.D.N.Y. 2011).
[39] *See* Affidavit of Calvin Beverley at paragraph 6 (Attached as Exhibit B).
[40] *Kraebel v. Micheti* (1994) U.S. Dist. LEXIS 11796 in * 28 (S.D. N.Y. August 19, 1994) citing *United States v. Buettner-Janusch,* 646 F.2d 759 (2nd Cir., 1981), *cert. denied* 454 U.S. 830 (1981).
[41] *United States v. Buettner-Janusch*, 646 F. 2d 759, 765 (2nd Cir., 1981), *cert. denied*, 454 U.S. 830 (1981), citing *United States v. Gradowski*, 502 F. 2d 563, 564 (2nd Cir., 1974) (per curiam),

This reasoning distinguishes the present case from *Camara v. Municipal Court*, 387 U.S. 523 (1967) and *Baker v. City of Portsmouth*, 2015 U.S. Dist. LEXIS 132759 (S.D. Ohio, September 30, 2015), upon which Plaintiffs base their arguments. In *Camara*, the tenant was subject to criminal penalties for failing to allow access or an inspection of the rented premises under the inspection ordinance, and therefore the court held the tenant's consent was coerced and the inspection violated the Fourth Amendment.[42] Here, Plaintiffs cannot argue that there is any "coerced" consent by tenants as the Rental Inspection Ordinance (as of May 4, 2016) did not impose any penalties upon tenants, just the owners of the property.

*Baker* relied upon *Camara* and decided "the owners *and/or tenants* of rental properties in Portsmouth are thus faced with the choice of consenting to the warrantless inspection or facing criminal charges, a result the Supreme Court has expressly disallowed under the Fourth Amendment."[43] The cornerstone of the holdings in *Camara* and *Baker* is that the tenant would be subjected to criminal penalties and/or fines if he/she did not consent to the search. This "coercive" element is absent from the Rental Inspection Ordinance. The tenants, who have a greater privacy interest than the Plaintiffs, are not subject to penalty, and therefore their consent cannot be considered coerced.

Plaintiffs will likely argue that situations where there is no tenant occupying the premises, or when the premises are vacant, violate Plaintiffs' Fourth Amendment rights, as there is no tenant to consent to the search. Courts, however, have relied upon the idea that a landlord has a diminished interest of privacy to uphold rental inspection ordinances. In *Dome Realty, Inc. v. The City of Paterson* (1980), 83 N.J. 212, the New Jersey Supreme Court distinguished a municipal inspection ordinance from the Supreme Court's ruling in *Camara* by holding that a landlord had a

---

[42] *Camara* at 531-532.
[43] *Baker* at *15. (emphasis added).

diminished privacy interest in an apartment made available for rent because the apartments were vacant. The inspections would occur at a time when the landlord is "not using the dwelling as his residence or place of business," and therefore, the "landlords' expectation of privacy regarding one of his vacant properties would necessarily be attenuated."[44]

Plaintiffs' facial challenge to the Rental Inspection Ordinance is the "most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances existed under which [the ordinance] would be valid."[45] Because Bedford demonstrates that there are constitutional circumstances under which the rental inspections occurred, Plaintiffs' challenge of the Rental Inspection Ordinance must fail. Similarly, Plaintiffs have provided no evidence to this Court that the ordinance, "as applied" to them is unconstitutional. While Plaintiffs state they - as owners - have objected to the rental inspections, Plaintiffs cannot demonstrate the tenants refused entry to Bedford's inspectors. Accordingly, this Court should not grant summary judgment to Plaintiffs concerning Bedford's Rental Inspection Ordinance.

### C. **Because Bedford Has Not Been Unjustly Enriched, It Is Not Equitable For Bedford To Pay Restitution.**

The United States Supreme Court has stated "[t]here is unanimous agreement among those most familiar with this field that the only effective way to seek universal compliance with the minimum standards required by municipal codes is through routine periodic inspections of all structures."[46] Additionally, "'[t]ime and experience have forcefully taught that the power to inspect dwelling places, either as a matter of systematic area-by-area search or . . . to treat a specific problem, is of indispensable importance to the maintenance of community health . . .'"[47] In the

---

[44] *Dome Realty* at 241.
[45] *United States v. Salerno*, 481 U.S. 739, 745 (1987).
[46] *Camara v. Municipal Court of San Francisco* (1967), 387 U.S. 523, 535-36.
[47] *See id.* at 537, citing *Frank v. Maryland* (1959), 359 U.S. 360, 372.

11

pursuit of community health, safety, and good welfare of the citizens of Bedford, the Point of Sale Inspection and Rental Inspection programs were implemented to maintain good standards in Bedford's housing stock.[48]

Bedford was struck hard by the foreclosure crisis and recession in 2008, and its housing stock is much older than other communities in the Greater Cleveland area.[49] For these reasons, Bedford has used its Point of Sale Inspection program to try to prevent a decline in the health and safety of Bedford citizens and to maintain Bedford's citizens' property values. In order to provide these point-of-sale inspection services, Bedford absorbs the majority of the cost of the inspections.

On average, Bedford spends $100 for the inspection of a one-family dwelling, $150 for the inspection of a two-family dwelling, and $300 for the inspection of a commercial building.[50] These costs only include the hourly wages paid to Bedford's building inspectors and Bedford's administrative clerks who handle the processing and filing of the inspections. The cost per inspection is ultimately much higher since Bedford takes on the cost of maintenance and repair of city vehicles, supplies used during inspections, and training provided to building inspectors.[51] While the point-of-sale service provided to the Bedford Community certainly costs the city money, it is an important service necessary for the preservation of the citizen's health, safety, and welfare.

Bedford requires owners pay only $50 for the inspection of a one-family dwelling, $75 for the inspection of a two-family dwelling, and at most $200 for the inspection of a commercial building. While these fees are meant to offset the total cost the city takes on in its attempts to preserve the safety and welfare of the Bedford Community, Bedford ultimately pays much more for these inspections than it collects from the owners of the properties inspected.

---

[48] *See Affidavit of Michael Mallis* (Attached as Exhibit A).
[49] *See id.*
[50] *See Affidavit of Calvin Beverly* (Attached as Exhibit B)..
[51] *See id.*

Plaintiffs have alleged Bedford has been unjustly enriched by the fees Plaintiffs paid through the Point of Sale Inspection program. In order to be unjustly enriched, (1) a plaintiff must confer a benefit upon defendant, (2) the defendant must have knowledge of the benefit, and (3) the defendant must retain the benefit under circumstances where it would be unjust to do so without payment.[52] "Unjust enrichment also results from a failure to make restitution where it is equitable to do so. That may arise when a person has passively received a benefit which it would be unconscionable for him to retain."[53]

In the present case, a weighing of the equities indicates that it is not equitable for Bedford to make restitution. At first blush, it may seem that Bedford has derived a benefit from the fees Plaintiffs paid for point of sale inspections. However, Bedford absorbs the majority of the cost of these inspections in order to maintain the point-of-sale service it provides to its community. Additionally, Bedford divested the Plaintiffs' fees to the salaries of its employees who conducted and administrated the point-of-sale inspections. Without these inspections, not only would the Plaintiffs have retained the fees they paid, but Bedford too would have retained the funds it paid in excess of the Plaintiffs fees to its building inspectors and administrative staff for their time spent on point-of-sale inspections. Since the cost of the point-of-sale inspections was in excess to what Plaintiffs paid in fees, Bedford does not retain a benefit conferred to it by Plaintiffs, and it would be unconscionable now, since Bedford holds no benefit, for this Court to find that the equities demand restitution to Plaintiffs.

Regarding point-of-sale inspection fees, a genuine issue of material fact exists as to whether Bedford has retained any benefit from the point-of-sale inspections. Regarding rental inspection fees, as discussed at length above, the rental inspections were constitutional, and thus,

---

[52] *Advantage Renovations, Inc. v. Maui Sands Resort, Co., LLC*, 2012-Ohio-1866 at *P33 (6th Dist., Apr. 27, 2012)
[53] *Reisenfeld & Co. v. Network Group, Inc.*, 277 F.3d 856, 860-61 (6th Cir., Jan, 18, 2002).

13

Bedford does not unjustly retain the fees collected. Accordingly, this Court should decline to grant Plaintiffs' Partial Motion for Summary Judgment on their claims for unjust enrichment.

### D. If Plaintiffs Are Entitled To Restitution For Fees Collected For Point Of Sale Inspections, There Is A Genuine Issue of Material Fact As To The Amount.

Even should this Court find that Bedford was unjustly enriched through its point-of-sale inspections, there is a question of fact as to the amount by which Bedford was unjustly enriched. Plaintiffs have argued that the point-of-sale inspections were unconstitutional and that Bedford has been unjustly enriched by retaining the fees Plaintiffs paid for point-of-sale inspections. Supposing the inspections of the interior of the properties were unconstitutional, which Bedford expressly denies, the inspections of the exterior of the properties were constitutional, and any fee collected in connection to the exterior inspections do not unjustly enrich Bedford.

In *Conrad v. City of Berea,* 243 F.Supp 3d 896, the Northern District of Ohio stated that "[i]n the Sixth Circuit, a city employee 'does not conduct a Fourth Amendment search by entering the curtilage for the purpose of naked-eye observations of the houses' plainly visible exterior attributes . . . all without touching, entering or looking into the house during an 'administrative inspection.'"[54] In *Conrad*, the plaintiffs argued that the exterior searches were unconstitutional, citing *Camara*.[55] However, the district court distinguished the exterior search in *Conrad* from those searches found to be unconstitutional in *Camara*, stating that the *Camara* holding presumes an entry into a structure, not the naked-eye observations of the structure's exterior.[56]

In the present case, Bedford building inspectors spent on average one-third of the inspection time doing a naked-eye inspection of the exterior of the property.[57] This inspection was

---

[54] *Conrad v. City of Berea*, 243 F.Supp 3d 896, *906 (N.D. Ohio, March 20, 2017).
[55] *See id*. at 907.
[56] *See id*.
[57] *See Affidavit of Calvin Beverly* (Attached as Exhibit B).

not a violation of Plaintiffs' Fourth Amendment rights, and as such one-third of the inspection fees are related to constitutional administrative searches. Because Bedford was entitled to conduct these naked-eye inspections of the exterior of the properties, it should not be required to pay restitution of the full fee Plaintiffs paid for the point-of-sale inspections. A genuine issue of material fact exists as to the amount Plaintiffs are entitled to in restitution, if they are indeed entitled to any restitution. This Court should deny Plaintiffs' Motion for Partial Summary Judgement as it pertains to Plaintiffs' claims for unjust enrichment concerning point-of-sale inspections.

### E. If Plaintiffs Are Entitled To Restitution For Fees Collected For Rental Inspections, There Is A Genuine Issue of Material Fact As To The Amount.

Even if this Court should determine Bedford's Rental Inspection Ordinance is unconstitutional, it should not grant summary judgment to Plaintiffs for the funds Plaintiffs claim Bedford should reimburse them. Conceivably, this Court could hold the Rental Inspection Ordinance constitutional as applied to those situations where tenants consented to an inspection of their dwelling. In this case, summary judgment is inappropriate as a case-by-case analysis of each of the inspections would need to be conducted to determine if Plaintiffs' rental units were occupied at the time of inspection. There are facts to be determined, which prevent judgment for Plaintiffs on the amounts claimed in their Motion for Partial Summary Judgment.

Additionally, the Affidavit of Brandy Fitch, which contained Plaintiffs' evidence of the amounts collected by Bedford for Point-of-Sale and Rental Inspections, is inaccurate as to the amount of fees collected for Rental Inspections. Peggy Zelasko, Bedford's Building Department Clerk, compared Ms. Fitch's findings to Bedford's records. Ms. Zelasko found 12 instances where Bedford did not collect a fee, or there was a duplication of inspections or fees noted by the Plaintiffs.[58] Specifically, Ms. Zelasko determined eight instances where Bedford did not charge

---

[58] Affidavit of Peggy Zelasko at paragraphs 4 and 5 (attached as Exhibit C).

15

the owner as Bedford recently performed a Point of Sale inspection, and two of these eight instances were duplicate records contained in Ms. Fitch's findings.[59]  Additionally, Ms. Zelasko located two other records for which no inspection occurred and therefore Bedford collected no fee.[60]  Finally, a review of Ms. Fitch's spreadsheet found there to be two other duplicate entries.[61]  Accordingly, even if this Court rules that Bedford must return fees collected to Plaintiffs, there is an issue of fact as to the amount of fees Plaintiffs claim should be returned, and summary judgment is inappropriate.

### III. CONCLUSION

Plaintiffs are not entitled to partial summary judgment.  Plaintiffs' request for a declaration of the constitutionality of the ordinances is moot.  Additionally, evidence demonstrates that the Rental Inspection Ordinance was constitutional both facially and as applied to Plaintiffs.  Finally, genuine issues of material fact exist regarding Plaintiffs' claims that Bedford was unjustly enriched by collecting fees for the inspections. For these reasons, Defendants request this Honorable Court deny Plaintiff's Motion for Partial Summary Judgment.

Respectfully submitted,

/s/ Kallen L. Boyer
R. Eric Smearman (0062132)
Kallen L. Boyer (0093608)
**Smith Marshall, LLP**
7251 Engle Road, Suite 404
Middleburg Heights, Ohio 44130
(440) 243-4994   Fax: (440) 243-6598
E-mail: res@smithmarshall.com
kld@smithmarshall.com
Attorneys for Defendants,
City of Bedford, Ohio, Rob Brown and Richard Hickman

---

[59] *Id.* at paragraph 4.
[60] *Id.*
[61] *Id.* at paragraph 5.

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of November, 2017 the foregoing Defendants' Brief in Opposition to Plaintiffs' Motion for Partial Summary was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's electronic filing system.

/s/ Kallen L. Boyer
Kallen L. Boyer