UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **KENNETH PUND,** *et al* | : | Case No. 16-CV-1076 |
| | : | |
|     **Plaintiffs,** | : | Judge Benita Y. Pearson |
| | : | |
| **v.** | : | |
| | : | **PLAINTIFFS' SUPPLEMENTAL** |
| **CITY OF BEDFORD, OHIO,** *et al* | : | **MOTION FOR SUMMARY JUDGMENT** |
| | : | |
|     **Defendants.** | | |

Now come Plaintiffs and respectfully request that this Court order the City of Bedford to return $60,400, or in the alternative $40,667, to Plaintiff Class Members within 45 days of the date of the Court's final order in response to this Motion.[1]

**I.  Additional Facts**

In its September 10, 2018 Order on Summary Judgment, this Court held "that fees resulting from searches under those Ordinances [declared unconstitutional] resulted in unjust enrichment and that Plaintiffs are entitled to compensation."  Doc. 50, PageID 583.  The Court deferred its holding on the *total amount* of restitution owed pending further action, primarily in the form of Plaintiffs providing Class Members an opportunity to opt out:

> Under the circumstances, however, the amount of compensation to which Plaintiffs are entitled can only be resolved on a class-wide basis if Plaintiffs' class is certified under Rule 23(b)(3). The Court therefore denies Prayers 9 and 13 without prejudice to a later filing after absent members of the (b)(3) class have received notice of the litigation and have been afforded the opportunity to opt out.

---

[1] Through discussion with Plaintiffs, Defendants have consented to the following:  (1) Payment of $40,667 in Restitution to Class Members; (2) payment of Incentive Awards to named Plaintiffs, though the parties differ as to the amount of the awards; (3) payment into a special fund or to a third-party administrator within 20 days of this Court's final order, and payment of restitution to Class Members within 45 days of the Court's final order.  Other issues, i.e. determination of whether greater restitution is owed, determination of whether larger incentive awards are warranted, determination of whether to appoint a third-party administrator, and determination of whether the parties agreed-upon schedule suffices are now before this Court.  Further, Defendants have indicated a preference that this Court decide Plaintiffs' attorneys fees claim through Motion.

*Id.*, at PageID 584. Accordingly, Plaintiffs submitted the "Opt-Out" Notice approved by this Court to the best-known address for each class member on or about November 1, 2018. That Notice included an "opt-out" deadline of December 1, 2018. In response, the following class members opted out of the Class[2]:

1. *Michael Yalch, in relation to inspection of 366 Kenyon Ave.*

2. *Sohan S. Mangat, in relation to inspection of (a) 617 W. Glendale Street; and (b) 45 E. Grace Street.*

3. *AKH Investment LLC, in relation to inspection of (a) 16 Brown Lane ("down"); (b) 493 Belle Road; and (c) 55 Palmetto Ave.*

4. *Chamkaur S. Hans, in relation to inspection of (a) 16 Brown Lane ("up"); (b) 61 Palmetto Street ("down"); and (c) 61 Palmetto Street ("up").*

5. *Donald E. Petak, in relation to inspection of 110 Avalon Drive.*

6. *Tim and Lana McCartney, in relation to inspection of 26 Gould Ave.*

In addition, the City filed a Notice on behalf of one of its employees, John J. Moncello, in relation to inspections of 526 Flick/Belle Court, 775 Lincoln, and 166 Woodrow. Doc. 60. Plaintiffs have received no other "opt-outs" subsequent to December 1, 2018 as of December 11, 2018. Thus, **seven** individuals are no longer members of the Class, and restitution is no longer owed for **fourteen** inspections.

Accordingly, the Class(es) now consists of a total of **563 members** who were subject to a total of **1,208 qualifying[3] inspections**. At the full rate of $50 per inspection, the class is entitled to a total of $60,400; while at the reduced rate of $33.33 proposed by Defendants (which excludes time spend on exterior portions of the inspections), the Class is entitled to a total of **$40,667.**

## II. Law and Analysis

This Court should order the City of Bedford to return $60,400, or in the alternative $40,667, to Plaintiff Class Members within 45 days of the date of the Court's final order in response to this Motion.

---

[2] Each street address specified is a City of Bedford address. Each Opt-Out Form is filed in an attached Exhibit.

[3] Plaintiffs stipulated to the accuracy the City's claim that Plaintiffs identified "12 instances where Bedford did not collect a fee, or there was a duplication of inspections or fees noted by the Plaintiffs." Doc. 46, PageID 498. This reduced the original number of inspections from 1,234 to 1,222.

*First*, Plaintiffs reiterate that Plaintiff Class Members are entitled to a full rate of restitution of $50 per inspection for the reasons articulated in their Motion for Summary Judgment. Doc. 45, PageID 414-415. Admittedly, in their Memorandum in Reply, Plaintiffs conceded that while the exterior portion of the City's searches occured within curtilage, the determination of whether any particular exterior location is protected curtilage was a fact-intensive inquiry. Doc. 47, PageID 541-542, citing *United States v. Dunn*, 480 U.S. 294, 300–01, 107 S. Ct. 1134, 1139–40 (1987)("Drawing upon the Court's own cases and the cumulative experience of the lower courts that have grappled with the task of defining the extent of a home's curtilage, we believe that curtilage questions should be resolved with particular reference to four factors: the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by"). Plaintiffs conceded that such an amorphous inquiry was impractical if not entirely incapable of meaningful resolution given the many home searches at issue here and the inadequacy of the City's records. Id. These concession were predicated upon Plaintiffs' good-faith understanding of Fourth Amendment jurisprudence at the time of the Plaintiffs' Motion and Reply (October 12, 2017 and November 16, 2017, respectively).

However, Plaintiffs maintain a fiduciary obligation to Class Members bring to the Court's attention new and potentially-governing precedent in support of the position established in their Motion for Summary Judgment; and on May 29, 2018, the Supreme Court decided *Collins v. Virginia*, suggesting clearer and broader Fourth Amendment protection for curtilage.

> [T]he Fourth Amendment's protection of curtilage has long been black letter law. "[W]hen it comes to the Fourth Amendment, the home is first among equals." "At the Amendment's 'very core' stands 'the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.'" To give full practical effect to that right, the Court considers curtilage— "the area 'immediately surrounding and associated with the home'"—to be "'part of the home itself for Fourth Amendment purposes.'" "The protection afforded the curtilage is essentially a protection of families and personal privacy in an area intimately linked to the home, both physically and psychologically, where privacy expectations are most heightened." When a law enforcement officer physically intrudes on the curtilage to gather evidence, a search within the meaning of the Fourth Amendment has occurred. Such conduct thus is presumptively unreasonable absent a warrant.

*Collins v. Virginia*, 138 S. Ct. 1663, 1670–71 (2018)(internal citations omitted).[4]  More specifically, in *Collins,* the Supreme Court deemed to be curtilage spaces that are very similar to those forcibly searched by the City of Bedford here:

> According to photographs in the record, the driveway runs alongside the front lawn and up a few yards past the front perimeter of the house. The top portion of the driveway that sits behind the front perimeter of the house is enclosed on two sides by a brick wall about the height of a car and on a third side by the house. A side door provides direct access between this partially enclosed section of the driveway and the house. A visitor endeavoring to reach the front door of the house would have to walk partway up the driveway, but would turn off before entering the enclosure and instead proceed up a set of steps leading to the front porch. * * * <u>Just like the front porch, side garden, or area outside the front window,  the driveway enclosure where Officer Rhodes searched the motorcycle constitutes "an area adjacent to the home and 'to which the activity of home life extends,'" and so is properly considered curtilage</u> * * * The ability to observe inside curtilage from a lawful vantage point is not the same as the right to enter curtilage without a warrant for the purpose of conducting a search to obtain information not otherwise accessible. So long as it is curtilage, a parking patio or carport into which an officer can see from the street is no less entitled to protection from trespass and a warrantless search than a fully enclosed garage.

*Collins v. Virginia,* 138 S. Ct. 1663, 1675 (2018)(internal citations omitted).   In other words, entering the curtilage to inspect spaces violates the Fourth Amendment's limits *even when* those spaces can be seen from a public vantage point, and such spaces include all of those near the home and other structures at the residence.  Consequently, this Court should order the City of Bedford to return $60,400, or in the alternative $40,667, to Plaintiff Class Members.

*Second*, this Court should order the payment of incentive awards of $1,000 to Plaintiff Kenneth Pund and another $1,000 to Plaintiffs Scott and Stephanie Jowers.  "Incentive awards are relatively recent but increasingly popular phenomena that have been justified by some courts as a means of compensating named plaintiffs for the services they provide and the risks they incur in leading class action litigation."  *In re S. Ohio Corr. Facility,* 24 F. App'x 520, 526–27 (6th Cir. 2001).  District courts in the Sixth Circuit have

---

[4]  See also *Collins v. Virginia*, 138 S. Ct. 1663, 1676 (2018)(Thomas, Concurring)("At the founding, curtilage was considered part of the "hous[e]" itself. See 4 W. Blackstone, Commentaries on the Laws of England 225 (1769) ("[T]he capital house protects and privileges all its branches and appurtenants, if within the curtilage"). And except in circumstances not present here, house searches required a specific warrant. See W. Cuddihy, The Fourth Amendment: Origins and Original Meaning 602–1791, p. 743 (2009) (Cuddihy); Donahue, The Original Fourth Amendment, 83 U. Chi. L. Rev. 1181, 1237–1240 (2016); Davies, Recovering the Original Fourth Amendment, 98 Mich. L. Rev. 547, 643–646 (1999)).

considered the following factors in determining the propriety of incentive awards in class action cases: (1) the action taken by the Class Representatives to protect the interest of Class Members and others and whether these actions resulted in a substantial benefit to Class Members; (2) whether the Class Representatives assumed substantial direct and indirect financial risk; and (3) the amount of time and effort spent by the Class Representatives pursuing the litigation." *In re UnumProvident Corp. Derivative Litig.*, No. 1:02-CV-386, 2010 WL 289179, at 7–9 (E.D. Tenn. Jan. 20, 2010). Here, Named Plaintiffs Ken Pund and Stephanie Jowers were particularly helpful. Mr. Pund owns numerous houses within the City of Bedford, and volunteered to serve as a plaintiff despite the risk of retaliation, which can occur through vague and arbitrary code enforcement or through a myriad of other ways. Likewise, Ms. Jowers volunteered to serve as the Named Plaintiff for those challenging past point of sale inspections, despite still needing to sell her home. Plaintiffs' Counsel estimates that each Plaintiff spend approximately 40 hours on the case. Without these two Plaintiffs, this lawsuit would not have been possible, and no homeowners would have received restitution. Further, each homeowner meticulously kept class counsel informed of the City's enforcement policies. It was this meticulousness that led to the discovery in February of 2017 that the City was likely violating the preliminary injunction and continuing to force both rental and point-of-sale inspections. Due to this discovery, Plaintiffs were able to immediately further enjoin these practices, allowing many homeowners and citizens to peacefully buy, sell, lease, and occupy homes in a manner not otherwise possible.

*Third*, this Court should order that the City pay restitution to the Class Members identified in Doc. 45-1 who have not opted out within 45 days of the date of the Court's final order in response to this Motion, in a manner consistent with Fed. R. Civ. P. 23.

The foregoing Rule provides District Court's considerable discretion and leniency in ordering payment from Defendants to Class Members. Meanwhile, Defendants have now had over 90 days to prepare for the reality that they will need to pay restitution to Class Members. Accordingly, Plaintiffs' respectfully suggest the following:

1. Order Defendants to, within 20 days of the date of this Court's final order on the amount of restitution owed to class members, deposit the amount of restitution owed (a) with a third-party administrator; or (b) into a transparent account subject to oversight, supervision, and/or audit by the Court and the parties.

2. Pursuant to Fed. R. Civ. P. 23(e), order the City to issue notice to all class members, by mail, of forthcoming checks by mail.

3. Order Defendants to, within 45 days of the date of this Court's final order on the amount of restitution owed to class members, provide (directly or through a third-party administrator) through ordinary mail, a check for the proper amount owed to each class member, payable to the class member.

4. Order that all notices and payments shall be reasonably calculated to appear as something other than "junk mail," by, for instance, including the name of the class member and name of the sender on the face of the envelope.

5. Order the City to pay all reasonable fees and costs of class notice and settlement administration, including costs associated with issuing notice and refunds, to class members.

The foregoing steps are compliant with Fed. R. Civ. P. 23 and will provide for an efficient and transparent refund to Class Members. Accordingly, Plaintiffs respectfully request that this Court order a refund substantially consistent with the foregoing steps.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs request that this Court (1) order the City of Bedford to return $60,400, or in the alternative $40,667, to Plaintiff Class Members identified in Doc. 45-1; (2) order the payment of such restitution to take place in a manner substantially similar to that chronicled herein; (3) order Plaintiffs' Motion for Attorneys Fees to be submitted within 45 days of the date of this Court's final ruling on this Motion.

Respectfully submitted,

*/s/ Maurice A. Thompson*
Maurice A. Thompson (0078548)
1851 Center for Constitutional Law
122 E. Main Street
Columbus, Ohio 43215
Tel: (614) 340-9817
MThompson@OhioConstitution.org

Christopher Finney (0038998)
Finney Law Firm, LLC
4270 Ivy Pointe Boulevard, Suite 225
Cincinnati, Ohio  45245
(513) 943-6660 phone
*Chris @Finneylawfirm.com*

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has been served on Defendants, through the Court's filing system email on December 13, 2018

Respectfully submitted,

/s/ _Maurice A. Thompson
Maurice Thompson