UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KENNETH PUND, *et al.* | : | Case No. 16-CV-1076 |
| | : | |
| Plaintiffs, | : | Judge Benita Y. Pearson |
| | : | |
| v. | : | |
| | : | **MEMORANDUM IN REPLY TO** |
| CITY OF BEDFORD, OHIO, *et al.* | : | **DEFENDANTS BRIEF IN OPPOSITION** |
| | : | **TO PLAINTIFFS' SUPPLEMENTAL** |
| Defendants. | : | **MOTION FOR SUMMARY JUDGMENT** |

Plaintiffs are entitled to restitution in excess of the "two-third" amount the City insists upon, and nothing in the City's January 14, 2019 Opposition demonstrates otherwise.

**I. Issues**

The parties have made significant progress on *most* fronts, and concur on *most* remaining issues. See Doc. 63, PageID 785, Footnote 1.  However, the parties appear unable to bridge a relatively minor gap with respect to the amount of restitution owed to the Plaintiffs' Class.  That is the issue now before the Court.  And the parties appear to concur that the outcome of this sole issue depends primarily on how the Supreme Court's 2018 decision in *Collins v. Virginia* impacts the justification for exterior searches imposed by the City.

On this front, the City begins by presenting a concern that "Plaintiffs now attempt to backtrack . . . and argue Plaintiffs are entitled to full restitution."  Doc. 63, PageID 786.  In fairness, this is somewhat accurate:  Plaintiffs indicated as much in their Supplemental Motion for Summary Judgment and during the December 23, 2018 conference call with the Court.  However, this "backtracking" is not flippant:  rather it is driven by intervening United States Supreme Court precedent subsequent to the parties' briefs.  While Defendants maintain otherwise, this precedent warrants the Court's attention and, for the reasons below, quite likely entitles Plaintiffs' Class to full restitution.

1

## II. Law and Analysis

Plaintiffs' Class(es) are entitled to full restitution because (1) *Collins* enhanced protection for the very type of curtilage that the City authorized itself to enter and inspect; (2) the City has failed to demonstrate with specificity that the plain view exception to the warrant requirement applied to all searches of all curtilage here; and (3) the City has failed to demonstrate that it abstained from undertaking "searches" when inspecting the type of curtilage protected by *Collins*.

### A. *Collins v. Virginia* enhanced protection for curtilage.

On May 29, 2018, subsequent to the parties' summary judgment briefs, the Supreme Court decided *Collins v. Virginia*, suggesting clearer and broader Fourth Amendment protection for curtilage. *Collins v. Virginia*, 138 S. Ct. 1663, 1670–71 (2018). More specifically, in *Collins,* the Supreme Court deemed to be curtilage spaces that are very similar to those forcibly searched by the City of Bedford here:

> According to photographs in the record, the driveway runs alongside the front lawn and up a few yards past the front perimeter of the house. The top portion of the driveway that sits behind the front perimeter of the house is enclosed on two sides by a brick wall about the height of a car and on a third side by the house. A side door provides direct access between this partially enclosed section of the driveway and the house. A visitor endeavoring to reach the front door of the house would have to walk partway up the driveway, but would turn off before entering the enclosure and instead proceed up a set of steps leading to the front porch. * * * <u>Just like the front porch, side garden, or area outside the front window, the driveway enclosure where Officer Rhodes searched the motorcycle constitutes "an area adjacent to the home and 'to which the activity of home life extends,'" and so is properly considered curtilage</u> * * * The ability to observe inside curtilage from a lawful vantage point is not the same as the right to enter curtilage without a warrant for the purpose of conducting a search to obtain information not otherwise accessible. So long as it is curtilage, a parking patio or carport into which an officer can see from the street is no less entitled to protection from trespass and a warrantless search than a fully enclosed garage.

*Id.,* at 1675 (internal citations omitted). In other words, entering the curtilage to inspect spaces violates the Fourth Amendment's limits *even when* those spaces can be seen from a public vantage point, and such spaces include all of those near the home and other structures at the residence.

Courts have decided very view reported Fourth Amendment curtilage cases since *Collins*. But those that have done so appear to acknowledge that *Collins* simplified the determination of what constitutes curtilage while enhancing its protections. See *Morgan v. Fairfield County, Ohio,* 903 F.3d 553 (6th Cir. 2018)(acknowledging that *Collins* enhanced protection for curtilage because it "made clear that . . . if the

government wants to ener one's curtilage it needs to secure a warrant or to satisfy one of the exceptions to the warrant requirement."); *Brennan v. Dawson,* No. 17-2210, 2018 WL 4961332 (6th Cir. Oct. 15, 2018)(*Collins* "overruled" prior decisions permitting public officials to linger on curtilage); *Rowley v. McArthur*, No. 2:13-CV-00959, 2018 WL 6788528 (D. Utah Dec. 26, 2018)(the identification of curtilage benefited from "clarifying guidance in *Collins.*"). Meanwhile, Fourth Amendment scholar Orin Kerr has opined that "the most interesting aspect of *Collins* concerns a brief preliminary part of the decision, the Court's identification of curtilage . . . I wonder if curtilage is as easy as the Court suggests."[1]

Thus, what now seems clear is that, in the wake of *Collins,* exterior locations searched by the City pursuant to its Point of Sale and Rental Inspection programs were, *contrary to the City's initial arguments and Plaintiffs' reluctant acquiescence thereto,* protected by the Fourth Amendment. The City appears to acknowledge this, and therefore instead attempts to distinguish its searches from those in *Collins*, urging "contrary to the Plaintiffs' assertion, the Supreme Court's holding [in *Collins v. Virginia*] concerning searches in the curtilage are not similar to the exterior inspections conducted by Bedford in this case." Doc. 63, PageID 786. Consequently, the sole issue before the Court is no longer whether the curtilage at issue is constitutionally protected, but rather, whether the City has demonstrated any basis upon which the examination of these spaces warrants discounting Plaintiffs' restitution. It has not.

**B. The City's original argument for lesser restitution no longer applies.**

In its Opposition to Plaintiffs' original Motion for Summary Judgment, the City posited just one basis to support the contention that less than full restitution was warranted: the exterior property searched was *not protected* by the Fourth Amendment. See Doc. 46, PageID 497 ("[T]he inspections of the exterior of the properties were constitutional, and any fee collected in connection to the exterior inspections do not unjustly enrich Bedford" because "a city employee 'does not conduct a Fourth Amendment search <u>by entering the curtilage</u> for the purpose of naked-eye observations of the houses' plainly visible exterior

---

[1] See *Collins v. Virginia and the Conception Defining Curtilage*, May 29, 2018, by Orin Kerr, available online at https://reason.com/volokh/2018/05/29/collins-v-virginia-and-a-thought-on-curt

attributes . . . all without touching, entering or looking into the house during an 'administrative inspection' . . . Because Bedford was entitled to conduct *these* naked-eye inspections of the exterior of the properties, it should not be required to pay restitution of the full fee Plaintiffs paid for the point-of-sale inspections." *Id* (Emphasis added). Thus, the City conceded earlier in this litigation that exterior searches of curtilage took place, operating under the presumption that such curtilage was *unprotected*. In the wake of *Collins,* this argument is no longer viable.

### C. The City's search authorizations *encouraged* rather than *limited* searches of curtilage.

The City now claims for the first time that it limited its searches of exterior features of homes to observation from public-rights-of-way such as streets and sidewalks, i.e. that either no Fourth Amendment "searches" took place or that such searches were protected by the plain view exception to the warrant requirement. Both the text of the invalid ordinances and the evidentiary record dictate otherwise.

*First*, the challenged search authorizations contained <u>no statutory or textual limitation</u> preventing searches of protected curtilage, but *did* contain numerous provisions *authorizing and encouraging* searches of protected curtilage. See Doc. 1-3, PageID 25-27.

The point-of-sale and rental searches that Class Members endured arose from ordinances broadly authorizing the City to both enter and inspect curtilage. Section 1311.05, entitled "Authority to Enter" provided "Upon presentation of proper credentials, the building official or his duly authorized representatives <u>may enter</u> at reasonable times any building, structure <u>or premises</u> in the jurisdiction to perform any duty imposed upon him by this code." (Emphasis added). Section 1311.13(a) proclaimed "the building official is authorized to make or to cause to be made <u>inspection of all structures or premises</u> used for dwelling purposes and <u>all secondary or accessory structures</u> to determine whether such structures <u>or premises</u> conform to the provisions of this code." *Id.* Section 1311.21(b) insisted that "the <u>general inspection shall</u> include the review of two general types of violations: (1) Conditions, usually found inside the dwelling or structure . . . [and] (2) <u>Conditions which can be found either inside or out and which deal with property and building maintenance</u>

issues . . ." *Id.* See also Doc. 1-5. As described on the City's website, the effect of these provisions was to require an inspection of both the "interior <u>and exterior.</u>" Doc. 21, PageID 201-204.

Thus, no statutory or other textual limit required the City to abstain from entering private property when searching curtilage. To the contrary, the face of the ordinance(s) repeatedly authorized and encouraged the City to enter and inspect such curtilage. And the City's mere argument that some of the locations it searched "*can* be seen from the street, public sidewalks, or adjoining properties" (Doc. 63, PageID 787) fails to alter this reality.

*Second,* the City has failed to demonstrate with specificity that, as a matter of policy, it voluntarily refrained from utilizing its own curtilage search authorizations and instead remained on public property at all times when conducting such searches. Indeed, the *only* evidence provided during discovery proved that the City utterly failed to track such conduct.

The City's original affidavit on this subject specified *only* the following: "During a point-of-sale inspection of a property, the inspector spends about one-third of his time inspecting the exterior of the property." Doc. 46-2, PageID 507. This lone observation is made irrelevant by *Collins'* observation that those exterior features are entitled to full constitutional protection.

Further, Plaintiffs' Interrogatory No. 14 prompted Defendants to "identify with detail and specificity as to each individualized situation, any and all exceptions to the warrant requirement that you believe applied" to the City's inspections. Doc. 45-1, PageID 423. In response, the City failed to identify the plain view exception to the warrant requirement or any indicia that it abstained from utilizing its own authorizations to enter curtilage. *Id.* Instead, the City simply conceded that it could not answer such an inquiry because composing such an answer "would require a case by case analysis of every inspection completed since September 1, 2014." *Id.* In other words, the City neither recalls nor tracks whether it entered protected curtilage to examine.

However, upon Summary Judgment, "the nonmoving party must present 'significant probative evidence' that will reveal that there is more than 'some metaphysical doubt as to the material facts.'" *Moore*

*v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993).  Meanwhile, "when a warrantless search has been conducted, <u>the state bears the burden</u> to establish that the search falls within one of the exceptions to the warrant requirement." *Coolidge v. New Hampshire* (1971), 403 U.S. 443, 454–455; *State v. Kessler* (1978), 53 Ohio St.2d 204.  Thus, to prevail, the City must demonstrate that some exception saves the constitutionality of its original warrantless search authorizations; but it has failed to do so.

Consequently, given that *Collins* appears to establish that all exterior features at issue here were entitled to Fourth Amendment protection, given he broad text of the City's prior search mandates, given the inexistence of any written policy or records limiting the City to the curbside, and given the City's failure to track or recall its search procedures, policies, and conduct, there can be little doubt that the City coercively and without a warrant entered and searched protected curtilage.  As such, Plaintiffs are entitled to full rather than discounted restitution.

### D.  This Court's Order supports full restitution.

In light of the parties' concurrence that *Collins* entitles *all searched locations* to Fourth Amendment protection, this Court's prior holding suggest that full restitution is warranted.  In its prior Order, this Court held that Bedford "obtain[ed] its ill-gotten gains by threatening noncompliant plaintiffs with criminal prosecution," and "for Bedford to retain the funds it received would be even more unjust than in [other cases]."  Doc. 50, PageID 571.  And in fact, the City extracted money, by law, *for the very purpose of entering and searching* the protected curtilages as well as the protected interiors of private homes.  With all such spaces entitled to protection, the City simply cannot be entitled to now counterfactually re-create a law that never existed:  had the text of the City's enactment provided for a $33 charge for entry and inspection and a separate $17 charge for observation of exterior issues from the curbside, perhaps the City's arguments would be more convincing.  However, it was the City who conflated interior and exterior entry and inspection under the auspices of one single indivisible monetary exaction, and then failed to meaningfully track its own conduct.  Accordingly, this Court's holdings, amplified by *Collins'* indication that all locations

subject to inspection here were entitled to Fourth Amendment protection, suggest that full restitution is warranted.

    **E. The City's checklists fail to alter the realities above.**

The City presents its Point of Sale and Rental Inspection Checklists in an attempt to display that many of the locations searched are exterior and could *conceivably* be viewed from public property. See Doc. 63-2 and Doc. 63-3 (filed by Plaintiffs earlier in this case). However, these checklists' descriptions of the property to be searched fail to establish that this property *was in fact* searched only through curbside observation, particularly when the face of the search authorizations at issue authorized warrantless entries and intrusions to more closely examine all such property. And indeed, common sense alone dictates that many of the locations on the checklist *could not* be examined for compliance with the City's thorough criteria from a great distance. Indeed, the City fails to present specific evidence of even one example where it searched one of the exterior items on either checklist from a public right-of-way. Accordingly, the fact that some exterior defects could conceivably be observed from a public space does not alone negate the lack of evidence or text of the warrantless search authorizations.

    **III. CONCLUSION**

For the foregoing reasons, Plaintiffs request that this Court (1) order the City of Bedford to return $60,400, or in the alternative $40,667, to Plaintiff Class Members identified in Doc. 45-1; (2) order the payment of such restitution to take place in a manner substantially similar to that chronicled in Plaintiffs' Supplemental Motion for Summary Judgment (and echoed by Defendants); and (3) order Plaintiffs' Motion for Attorneys Fees to be submitted within 45 days of the date of this Court's final ruling on this Motion.

    Respectfully submitted,

    */s/ Maurice A. Thompson*
    Maurice A. Thompson (0078548)
    1851 Center for Constitutional Law
    122 E. Main Street
    Columbus, Ohio 43215
    Tel: (614) 340-9817
    MThompson@OhioConstitution.org

>Christopher Finney (0038998)
>Finney Law Firm, LLC
>4270 Ivy Pointe Boulevard, Suite 225
>Cincinnati, Ohio  45245
>(513) 943-6660 phone
>*Chris @Finneylawfirm.com*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served on Defendants, through the Court's filing system email on January 24, 2019.

>Respectfully submitted,
>
>/s/ _Maurice A. Thompson
>Maurice Thompson