PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KENNETH PUND, *et al.*, | ) | |
| | ) | CASE NO. 1:16CV1076 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| CITY OF BEDFORD, OHIO, *et al.*, | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Defendants. | ) | **ORDER** [Resolving ECF No. 62] |

Plaintiff Class moves for summary judgment on the remaining issue: Precisely what amount of money is the Class entitled to as a result of Defendant City of Bedford's unconstitutional point-of-sale inspections and rental inspections?[1] ECF No. 62; *see* ECF No. 50. The Class submits that there is no genuine dispute of material fact that it is entitled to a total of $60,400, or, in the alternative, $40,667, to be distributed proportionally to the class members. ECF No. 62. The City responded, stipulating to a figure of $40,667 in restitution but disputing the balance of the Class's request. ECF No. 63. The Class replied. ECF No. 64.

The Court has been advised, having reviewed the parties' briefs, the record, and the applicable law. For the reasons provided below, summary judgment is granted in favor of the Class for restitution in the amount of $40,667, to be distributed proportionally to the class members.

---

[1] The Court invited the Class to resubmit its motions for summary judgment as to the amount of restitution, both as against the City (Complaint, Prayer for Relief 9) and as against the individual Defendants (Complaint, Prayer for Relief 13). ECF No. 50 at PageID#: 578, 584. The Class's renewed motion asks for relief only as against the City, not as against the individual Defendants. ECF No. 62 at PageID#: 770.

## I. Procedural Background and Summary of the Class's Request

Relevant factual background is outlined in the Court's prior Order at ECF No. 50. In that Order, the Court granted summary judgment in favor of the Class on its allegations that the City's Point of Sale Inspection Ordinance and Rental Inspection Ordinance (as they existed between 2014 and 2017) were unconstitutional, ECF No. 50 at PageID# 563, 568, and that the City had been unjustly enriched by inspections that occurred pursuant to those ordinances, *id.* at PageID#: 572. The Court denied summary judgment (without prejudice to later filing) on the Class's request for restitution and instead certified the class pursuant to Fed. R. Civ. P. 23(b)(3). ECF No. 50 at PageID#: 582.

The Class disseminated notice of a pending class action. ECF No. 56. After the opt-out period concluded, the Class renewed its motion for summary judgment as to the amount of restitution. ECF No. 62. In its motion, the Class asks the Court (1) to order the City "to return $60,400, or in the alternative $40,667" for distribution among the class members. *Id.* at PageID#: 770, 775. The Class also asks the Court (2) to order the City to pay $1,000 "incentive awards" to named Plaintiffs, and (3) to order that all restitution payments be made to a third-party administrator within 20 days of the Court's final Order and to class members within 45 days of the date of the Court's final Order. ECF No. 62 at PageID#: 773-75.

In a status conference on December 21, 2018, the Court advised Class Counsel that incentive awards are a matter of contract and that, unless persuaded of its authority to do so, it would not grant such awards on a summary-judgment motion. *See In re Southern Ohio Correctional Facility*, 24 F. App'x 520, 529 (6th Cir. 2001) ("However incentive awards may be

conceptualized in the absence of a settlement agreement, payment of [such awards] can only be sustained if authorized by the parties' contract."). Class Counsel did not protest, nor did he raise the issue in his reply brief in support of summary judgment. *See* ECF No. 64. The Court perceives, therefore, that the Class has abandoned its request for incentive awards as part of its summary-judgment motion.

In its opposition brief, the City states that it agrees with the Class about the manner and timing of restitution: it will make "[p]ayment of funds to a third-party administrator within 20 days of this Court's final order, and payment to Class Members within 45 days of the Court's final order." ECF No. 63 at PageID#: 785 n.1. Because the parties agree on the manner and timing of restitution payments, it is unnecessary for the Court to address those matters in this Order.

The only issue remaining, then, is the amount of restitution that the City owes the Class. The Class has equivocated on its request. *See* ECF No. 64 at PageID#: 801. In its initial motion for summary judgment, the Class asked for $61,700 in restitution ($23,575 for point-of-sale inspection fees and $38,125 for rental inspection fees). ECF No. 45 at PageID#: 398. In its reply brief pertaining to that motion, the Class stipulated to a one-third reduction of that figure, to $41,134, because it acknowledged that some portion of each inspection was conducted on property that was not constitutionally protected (that is, property outside the house and curtilage). ECF No. 47 at PageID#: 541-42. After accounting for small clerical errors, the Class advanced a request for $40,734. *Id.* at PageID#: 542.

In its renewed motion for summary judgment and corresponding briefs, the Class argues that a recent development in case law has rendered the one-third stipulated reduction inappropriate. ECF No. 62 at PageID#: 772-73 (citing *Collins v. Virginia*, 138 S. Ct. 1663, 1670-71 (2018)). It submits that *Collins v. Virginia* clarified the meaning of "curtilage," and according to that clarification, class members are entitled to the return of their entire inspection fees. *Id.* Accounting for opt-outs, the Class requests a total figure of $60,400 in restitution.[2] Despite the Class's insistence that *Collins* strengthened its hand, however, it repeats its request ("in the alternative") for $40,667 in its initial brief and its reply.[3] ECF No. 62 at PageID#: 770, 773, 775; ECF No. 64 at PageID#: 807.

Thus, despite its equivocation, the Class does not renounce its "alternative" request for restitution amounting to $40,667. For its part, the City "is willing to pay restitution in the amount of $40,667 . . . ." ECF No. 63 at PageID#: 785.

## II. Legal Standard

Summary judgment is appropriately granted when the pleadings, the discovery and disclosure materials on file, and any affidavits show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a);

---

[2] According to the Class, 563 class members endured 1,208 unlawful inspections. "At the full rate of $50 per inspection, the class is entitled to a total of $60,400." ECF No. 62 at PageID#: 771.

[3] The Class's brief explains that 563 class members endured 1,208 unlawful inspections. "[A]t the reduced rate of $33.33 [note: probably should read "$33.67"] proposed by Defendants (which excludes time spend [sic] on exterior portions of the inspections), the Class is entitled to a total of $40,667." ECF No. 62 at PageID#: 771.

*see also* Johnson v. Karnes, 398 F.3d 868, 873 (6th Cir. 2005). The moving party is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party must "show that the non-moving party has failed to establish an essential element of his case upon which he would bear the ultimate burden of proof at trial." *Guarino v. Brookfield Twp. Trustees.*, 980 F.2d 399, 403 (6th Cir. 1992).

Once the movant makes a properly supported motion, the burden shifts to the non-moving party to demonstrate the existence of a genuine dispute. An opposing party may not simply rely on its pleadings; rather, it must "produce evidence that results in a conflict of material fact" to be resolved by the factfinder. *Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). To defeat the motion, the non-moving party must "show that there is doubt as to the material facts and that the record, taken as a whole, does not lead to a judgment for the movant." *Guarino*, 980 F.2d at 403. In reviewing a motion for summary judgment, the Court views the evidence in the light most favorable to the non-moving party when deciding whether a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970).

"The mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). The fact under dispute must be "material," and the dispute itself must be "genuine." A fact is "material"

only if its resolution will affect the outcome of the lawsuit. *Scott*, 550 U.S. at 380. In determining whether a factual issue is "genuine," the Court assesses whether the evidence is such that a reasonable factfinder could find that the non-moving party is entitled to a verdict. *Id.*

## III. Analysis and Further Proceedings

### A. *Collins v. Virginia* and the Extent of Curtilage

As the Class describes it, the Supreme Court's recent decision in *Collins v. Virginia*, 138 S. Ct. 1663 (2018), is all that stands between the parties in resolving this matter. Because the Class believes that *Collins v. Virginia* expanded the protection of the Fourth Amendment, it has declined to settle with the City for anything less than full restitution ($60,400), ECF No. 63 at PageID#: 785 n.1; ECF No. 62 at PageID#: 770 n.1, and it has only hesitantly reiterated its prior request for summary judgment on a reduced figure ($40,667). *Collins*, therefore, merits discussion.

In *Collins v. Virginia*, a police officer parked his vehicle on the street, looked into a suspect's driveway, and observed a motorcycle covered by a tarp. 138 S. Ct. at 1668. The officer believed that motorcycle to be stolen. *Id.* The officer walked onto the property up to a semi-enclosed recess at the "top of the driveway," pulled off the tarp, took a photograph of the uncovered motorcycle, then replaced the tarp and returned to his car. *Id.* Based on that photograph, the officer confirmed that the motorcycle was stolen, and the suspect was subsequently arrested, indicted, and convicted for receiving stolen property. *Id.* at PageID#: 1668-69.

The defendant argued that the officer had breached the curtilage of his home when he wandered on to the "top of the driveway" and removed the tarp from the motorcycle. *See id.* at PageID#: 1670. As the Court described the space at issue, it "sits behind the front perimeter of the house [and] is enclosed on two sides by a brick wall about the height of a car and on a third side by the house." *Id.* "A side door provides direct access between this partially enclosed section of the driveway and the house. A visitor endeavoring to reach the front door of the house would have to walk partway up the driveway, but would turn off before entering the enclosure . . . ." *Id.* at 1670-71.

The Court concluded that the partial enclosure at the top of the driveway was curtilage despite the fact that, unlike a closed garage, the officer could see into the space from a public vantage point. *Id.* at PageID#: 1675. Observation is one thing; trespass is another.

In this case, the Class suggests that *Collins* moved the curtilage line all the way back to the sidewalk, thus amplifying the Fourth Amendment's protection of areas "adjacent to the home and to which the activity of home life extends . . . ." ECF No. 62 at PageID#: 773 (quoting *Collins*, 138 S. Ct. at 1675 (internal quotation marks omitted)); ECF No. 64 at PageID#: 802 (same). But the Supreme Court in *Collins* did no such thing. Rather, the Court clarified that "the ability visually to observe an area protected by the Fourth Amendment does not give officers the green light physically to intrude on it." 138 S. Ct. at 1673 n.3. *Collins* most naturally applies Fourth-Amendment protection to, say, an open garage, an unfenced side yard, or perhaps a gated courtyard, visible from a lawful vantage point and only partially enclosed, but obviously intimate nevertheless.

The Court in *Collins* repeatedly acknowledged that some portions of one's private property qualify as neither house nor curtilage. Explaining why the partial enclosure in the driveway merited constitutional protection, the Court explained, "A visitor endeavoring to reach the front door of the house would have to walk partway up the driveway, but would turn off before entering the enclosure and instead proceed up a set of steps leading to the front porch." 138 S. Ct. at 1671. That partial enclosure was distinct from other portions of the driveway and front yard because it was located "beyond where a neighbor would venture, in an area intimately linked to the home . . . ." *Id.* at 1673 n.3. If an ordinary neighbor would feel no compunction about wandering along a given portion of one's property, the Fourth Amendment likely offers no protection from an officer's inspection of that spot.

Cases applying *Collins* do not suggest otherwise. *Morgan v. Fairfield Cnty., Ohio*, 903 F.3d 553, 565 (6th Cir. 2018) ("[I]f the government wants to enter one's curtilage it needs to secure a warrant or to satisfy one of the exceptions to the warrant requirement.") has nothing to say about where curtilage begins and ends. Nor does *Brennan v. Dawson*, 752 F. App'x 276, 283, 2018 WL 4961332, at *5 (6th Cir. 2018 Oct. 15, 2018) ("[L]aw enforcement officials cannot linger on the curtilage . . . ."). And *Rowley v. McArthur*, 2018 WL 6788528, at *4 (D. Utah Dec. 26, 2018) says no more than *Collins* itself: a given area need not be entirely enclosed in order to merit the protection of the Fourth Amendment.

By contrast, the Class's reading of *Collins* is expansive. According to the Class, the City's inspections were only lawful to the extent the were conducted "from a great distance," while inspectors were standing on "a public right-of-way." ECF No. 64 at PageID#: 807; *cf.*,

*e.g.*, ECF No. 63-2 at PageID#: 792-93 (inspection checklist concerning, for example, fences, driveways, sidewalks, and other "exterior items," all of which the Class considers protected curtilage). That reading vastly exaggerates the idea of curtilage. Not every portion of one's property is "adjacent to the home . . . to which the activity of home life extends." *See Jardines*, 569 U.S. at 6. There is an entire body of constitutional law (and common law before it) known as the open-fields doctrine, pursuant to which officers may enter on and observe private property without violating the Fourth Amendment so long as they steer clear of the house and its curtilage. *See United States v. Dunn*, 480 U.S. 294, 300 (1987); *Oliver v. United States*, 466 U.S. 170, 176-77, 176 n.6 (1984); *Hester v. United States*, 265 U.S. 57, 59 (1924); 4 Bl. Comm. 223, 225-26; Black's Law Dictionary (10th ed. 2014). The Class's suggestion that the point-of-sale and rental inspections were constitutional only to the extent they were conducted from a street or sidewalk would obviate the centuries-old distinction between curtilage and open field.

The Class's theory, then, that *Collins* prohibits a government official from putting a single toe on private property is incorrect. *Collins* did not move the curtilage boundaries forward or backward, and it does not apply to this case in the way the Class suggests.

**B. Class's Effort to Rescind Stipulation to Reduction**

Based on its reading of *Collins v. Virginia*, the Class has endeavored to rescind its stipulation to a reduced restitution figure. *See, e.g.*, ECF No. 64 at PageID#: 801 ("Plaintiffs are entitled to restitution in excess of the 'two-third' amount the City insists upon . . . ."). That change in position reflects not a cynical attempt to change the Class's narrative but rather a good-faith argument about a purported development in the relevant law. Nevertheless, as explained

above, *Collins* does not operate to expand class members' curtilage. Whatever was protected before *Collins* remains protected, and whatever was unprotected before *Collins* remains unprotected. *Collins* operates only to foreclose the City from arguing that a given area was unprotected merely because it was visible from the street. The City does not employ any such argument in its opposition to summary judgment, so *Collins* has no apparent effect on the motion before the Court.

Because *Collins* has no such effect, it cannot serve to justify the Class's attempt to rescind its stipulation to reduced recovery. The Class makes clear in its brief that *Collins* forms the entire basis for its effort to rescind its prior stipulation. ECF No. 62 at PageID#: 772; ECF No. 64 at PageID#: 801 ("[T]his 'backtracking' is not flippant: rather it is driven by intervening United States Supreme Court precedent subsequent to the parties' briefs."). Without *Collins* to rely on, the Class's stipulation to a two-thirds fee recovery remains effective.

Moreover, a two-thirds recovery is grounded in law and fact. As Class Counsel acknowledged prior to class certification and reiterated afterward, "an amorphous inquiry" into the extent of the City's intrusions "was impractical if not entirely incapable of meaningful resolution given the many home searches at issue here and the inadequacy of the City's records." ECF No. 62 at PageID#: 772 (citing ECF No. 47 at PageID#: 541-42 ("Plaintiffs stipulate that restitution owed to the Plaintiffs' classes may be reduced by one-third on a *pro rata* basis . . . .")). The Court disagrees with the contention that the factual question is "incapable of meaningful resolution," but it agrees that a one-third reduction of the entire fee amount is a fair and

reasonable assessment of the City's unjust enrichment.[4] *See* ECF Nos. 63-1 (affidavit), 63-2 (point-of-sale inspection checklist), 63-3 (rental inspection checklist).

The Class is entitled to restitution only to the extent that the City was unjustly enriched by its coerced intrusions on class members' houses and curtilage. ECF No. 50. As it stands, the certified Class has reiterated its stipulation that roughly one third of the City's inspections were not unconstitutionally intrusive.[5] Honoring that stipulation, there is no genuine dispute that the Class is entitled to recover $40,667, to be distributed proportionally to the class members. The Court's decision to honor the parties' stipulation is not a finding of fact concerning the intrusiveness of the City's inspections[6] but rather a recognition that the parties themselves do not genuinely dispute the point.

The Class is apparently prepared for such a ruling. Despite its zealous argument that, since *Collins*, it is entitled to complete restitution, the Class repeatedly reiterates its alternative

---

[4] The factual stipulation is not a settlement, and it is not subject to the rigors of a fairness inquiry under Fed. R. Civ. P. 23(e). The factual stipulation binds the Class because the Court has confirmed the adequacy of Plaintiffs' and Class Counsel's representation, *see* Fed. R. Civ. P. 23(a)(4), and because class members have received notice and an opportunity to opt out of the action, *see* Fed. R. Civ. P. 23(c).

[5] Class members were made aware at the opt-out stage of proceedings that they might recover only two thirds of the amount they paid to the City. ECF No. 51-1 at PageID#: 588.

[6] *Taylor v. Ford Motor Co.*, 866 F.2d 895, 899 (6th Cir. 1989) ("[G]enuinely disputed material facts may not be resolved by the trial judge within the context of a summary judgment motion."); *Med. Inst. of Minn. v. Nat'l Ass'n of Trade and Technical Schs.*, 817 F.2d 1310, 1315 (8th Cir. 1987) ("A judge does not sit as a trier of fact when deciding a motion for summary judgment even if the case is scheduled to be heard without a jury.").

request for $40,667, a one-third reduction of the entire amount of fees paid. ECF No. 62 at PageID#: 770, 771, 773, 775; ECF No. 64 at PageID#: 807. Because *Collins* does not have the effect the Class suggests, the Court is left with no reason not to honor the parties' factual stipulation as to the intrusiveness of the City's inspections.

**IV. Conclusion**

For the foregoing reasons, summary judgment is granted in favor of the Class for restitution in the amount of $40,667, to be distributed proportionally to the class members in the manner described and agreed to in ECF Nos. 62 and 63. The Class's request for incentive awards for named Plaintiffs is denied.

All allegations of liability and restitution are resolved. The parties agree that the Class is the prevailing party. ECF No. 55. Class Counsel shall file an Application for Attorney Fees, together with supporting exhibits and affidavits, no later than 21 days from the date of this Order. Defendants shall respond no later than 14 days from the date of the filing of that Application.

IT IS SO ORDERED.

May 8, 2019
Date

*/s/ Benita Y. Pearson*
Benita Y. Pearson
United States District Judge